## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN HILL, LLC, | § | |
| | § | |
| Plaintiff, and Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| SFR EQUITIES, LLC | § | |
| | § | Case No. 2:18-cv-01228-HB |
| Defendant, and Counter-Plaintiff | § | |
| | § | |
| | § | |
| VENDOR ASSISTANCE PROGRAM, LLC, | § | |
| | § | |
| Third Party Respondent | § | |
| | § | |

## <u>ORDER</u>

**NOW**, on this ___ day of _____, 2018, upon consideration of Third Party Respondent Vendor Assistance Program, LLC's Motion to Quash Subpoena and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED** and Plaintiff Warren Hill, LLC's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action is **QUASHED**.

_____
Harvey Bartle III
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WARREN HILL, LLC, §<br>§<br>Plaintiff, and Counter-Defendant §<br>§<br>v. §<br>§<br>SFR EQUITIES, LLC §<br>§<br>Defendant, and Counter-Plaintiff §<br>———————————————————§<br>§<br>VENDOR ASSISTANCE PROGRAM, LLC, §<br>§<br>Third Party Respondent §<br>§ | Case No. 2:18-cv-01228-HB |

**THIRD PARTY RESPONDENT VENDOR ASSISTANCE PROGRAM, LLC'S
MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

Vendor Assistance Program, LLC ("VAP"), by its undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A) and Federal Rule of Civil Procedure 26(c), moves this Court to quash Plaintiff Warren Hill, LLC's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action served on VAP, a third party respondent to the litigation (the "Subpoena"), or to enter a protective order limiting the scope of the Subpoena.

WHEREFORE, VAP, a third party to this litigation, requests that this Court quash the Subpoena—and to the extent that this Court does not quash the Subpoena—VAP respectfully asks this Court order Warren Hill, LLC to reimburse VAP for costs of compliance; and (2) issue a protective order limiting the scope of the Subpoena, or any other relief this Court deems just and proper.

2

Dated:  July 27, 2018                              Respectfully submitted,


                                                  ___ /s/ Daniel S. Rubin

                                                  Daniel S. Rubin, IL ARDC #6293669
                                                  *Admitted Pro Hac Vice*
                                                  Howard & Howard Attorneys PLLC
                                                  200 S. Michigan Ave. Suite 1100
                                                  Chicago, IL 60604
                                                  312-456-3448 (phone)
                                                  312-939-5617
                                                  drubin@howardandhoward.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WARREN HILL, LLC, | § | |
| | § | |
| Plaintiff, and Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| SFR EQUITIES, LLC | § | |
| | § | Case No. 2:18-cv-01228-HB |
| Defendant, and Counter-Plaintiff | § | |
| | § | |
| | § | |
| VENDOR ASSISTANCE PROGRAM, LLC, | § | |
| | § | |
| Third Party Respondent | § | |
| | § | |

**THIRD PARTY RESPONDENT VENDOR ASSISTANCE PROGRAM, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER**

VAP, by its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Quash the Subpoena and for Protective Order.

## I.      INTRODUCTION

The Court should quash the Subpoena to VAP because it is procedurally deficient, requires the disclosure of privileged and highly confidential data, and imposes an undue burden and expense. In addition, VAP, as a third party to the underlying lawsuit, should not be required to produce the documentation requested by the Subpoena. This documentation is readily available through other and more appropriate avenues, and Warren Hill, LLC ("Plaintiff") asserted as much in its initial Complaint.

## II.      BACKGROUND

On June 28, 2018, Plaintiff served VAP with the Subpoena. **Exhibit A**. A cursory review of the Subpoena reveals it is procedurally deficient—it fails to "state the court from which it

issued." Fed. R. Civ. P. 45(a)(1)(A)(i); **Ex. A**, p. 1. The Subpoena proceeds to request that VAP, a third party, produce a vast amount of documentation with essentially no time limitations. **Ex. A**, pp. 5-7. Counsel for Plaintiff agreed to give VAP until July 27, 2018 to file objections or respond to the Subpoena.

VAP is not a party to this litigation. Instead, VAP, an Illinois limited liability company, is a signatory to discrete sections of the Membership Interest Purchase Agreement entered into between SFR Equities, LLC and Warren Hill, LLC (the "Agreement"). **Exhibit B**. VAP is a signatory to the Agreement solely with respect to Sections 4.1(b), 4.4(b), 4.5, 4.7 and 5.4. **Ex. B**, p. 1. Therefore, VAP agreed to be bound by certain sections under the Agreement, which govern waiver and release (**Ex. B**, p. 6, §4.1(b)), non-disparagement (**Ex. B**, p. 7, §4.4(b)), indemnification (**Ex. B**, pp. 7-8, §4.5), unreimbursed expenses (**Ex. B**, p. 8, §4.7), and closing deliveries (**Ex. B**, p. 9, §5.4).

The Subpoena, on the other hand, requests documents wholly irrelevant to the Agreement, and other documents arguably relevant to specific sections of the Agreement—particularly Section 1.2(d) (the "Earnout Section"). **Ex. B**, pp. 2-3, §1.2(d). The Complaint filed by Plaintiff in this litigation (the "Complaint") contains two counts against SFR Equities, LLC ("SFR"), the sole defendant. **Exhibit C**, pp. 8-10, ¶¶30-41. Both of these counts, for breach of contract and accounting, deal directly with allegedly improper calculations of earnout amounts due to Plaintiff under the Earnout Section. **Ex. C**, p. 9, ¶¶34, 38. Importantly, the Complaint asserts that SFR has "access to all of VAP's financial records." **Ex. C**, p. 2, ¶3; *see also* **Ex. C**, p. 9, ¶39 ("SFR is in possession of, or has access to, records and documents needed to confirm the amounts owed to Warren Hill under the Agreement."). VAP did not agree to be bound by the Earnout Section, nor did it take part in the drafting and negotiating which resulted in the final language of this section.

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While discovery is broadly available, it "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Courts must balance the relevance and necessity of the requested discovery with the potential hardship that might be incurred in producing it. *Barry v. Medtronic, Inc.*, No. 16-47, 2016 WL 1056783, at *1 (E.D. Pa. Mar. 17, 2016). A party seeking discovery by subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

With regard to a subpoena issued to a third party, the third party may seek protection from the subpoena under the provisions of Federal Rules of Civil Procedure 26 and 45. *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012) (citation omitted). Relevance, need, confidentiality, and harm are factors to consider in analyzing the subpoena and requested documents. *Id.* "The determination of relevance is within the district court's discretion." *Gardella v. Prodex Int'l, Inc.*, No. 06-1821, 2007 WL 710289, at *3 (E.D. Pa. Mar. 5, 2007) (citation omitted). "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *In re Mushroom Direct Purchaser*, 2012 WL 298480, at *3 (citation omitted). Federal Rule of Civil Procedure 45, which controls subpoenas issued to third parties, provides:

(A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The "undue burden" category "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a [third party] to incur excessive expenditure of time or money." *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (per curiam). The court "must limit the… extent of discovery" where it is duplicative, where it can be obtained from another source that is "more convenient, less burdensome, or less expensive," where the party seeking discovery has had ample opportunity to obtain the discovery, or where the burden or expense outweighs any perceived benefit of the discovery. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order in the court where the action is pending, and upon a showing of "good cause," the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense… [by] forbidding the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(A), or by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," Fed. R. Civ. P. 26(c)(1)(D). The party seeking a protective order bears the burden of showing that good cause exists to limit or foreclose discovery, and must demonstrate a particular need for protection. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

This is particularly so in a situation involving discovery sought from a third party. *See Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015). Therefore, when

discovery is sought from a third party, "[b]roader restrictions may be necessary to prevent a [third party] from suffering harassment or inconvenience." *Id.* (citing *Frank v. Honeywell Int'l Inc.*, No. 15-172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015)).

Additionally, procedural deficiencies may be a factor in the ultimate determination of whether a subpoena will be quashed. *See Havens v. Mar. Commc'ns/Land Mobile, LLC*, No. 11-993, 2014 WL 2094035, at *3 (D.N.J. May 20, 2014) ("The procedural deficiencies to which [Defendant] points reinforce the Court's conclusion that the subpoenas must be quashed… the subpoenas issued… do not state the issuing court…").

Finally, if a third party objects to a subpoena, and the court orders the third party to comply with the subpoena, the court must protect the third party from significant expenses resulting from compliance. Fed. R. Civ. P. 45(d)(2)(B); *see also In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 250 (E.D. Pa. 2014) ("[Third party respondent] is entitled to compensation for time expended and expenses incurred in complying with the subpoena.") (citation omitted).

## IV.   ARGUMENT

VAP maintains it should not be required to produce any documents in response to the Subpoena. However, if this Court disagrees—and orders VAP to produce documents—VAP requests reimbursement for the cost of compliance with the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B). The cost of compliance will include, but is not limited to, attorneys' fees and costs, reasonable e-discovery service costs and fees, and other fees and costs incurred in complying with the Court's order to produce documents.

> **Request No. 1:** All of Your audited and/or unaudited financial statements from Your inception to the present, including any audited and/or unaudited financial statements from any of your affiliates, such as the affiliates referenced on Your public website.

**Request No. 2:** All documents relating to Your financial performance, such as documents relating to Your revenue from Your inception to the present.

**Request No. 3:** All drafts of Your audited and/or unaudited financial statements from Your inception to the present, including drafts of any audited and/or unaudited financial statements from any of your affiliates, such as the affiliates referenced on Your public website.

**Request No. 4:** All documents relating to Your tax returns, including all of Your tax returns from Your inception to the present.

**Request No. 15:** All documents relating to amounts of money held in trusts relating to Your business, including all documents relating to the schedule of amounts held in such trusts.

**Request No. 18:** All documents provided to Your investors relating to Your financial performance or the financial performance of any "[a]ffiliate," including financial projections, presentations, meeting minutes, board minutes, and/or documents relating to monetary distributions.

**VAP's Response:**

Plaintiff's claims in this litigation stem from the allegedly improper calculations of payments under the Earnout Section of the Agreement. These requests are seeking documentation related to VAP's financial information—purportedly to correct any improper calculations conducted with that financial information as a basis. While these documents are arguably relevant to Plaintiff's claims, VAP should not be required to produce documentation related to its finances for a number of reasons.

First, and most importantly, Plaintiff has already conceded that "SFR is in possession of, or has access to, records and documents needed to confirm the amounts owed to Warren Hill under the Agreement." **Ex. C**, p. 9, ¶39. SFR is a party to this litigation, and can produce the financial information of VAP that was used in calculating the payments made under the Earnout Section. VAP had no hand in drafting the language in the Earnout Section, and it made no calculations with respect to any payments made pursuant to the Agreement. There is no need for VAP to produce

its financial information since SFR is already in possession of the information they would have needed to calculate the payments made under the Earnout Section—VAP's production of that same information would be duplicative.

Additionally, if SFR is somehow no longer in possession of the VAP information necessary for calculations made pursuant to the Earnout Section, there are more appropriate ways for SFR to obtain this information. Under VAP's Operating Agreement, members are entitled to the following:

7.11    Records, Audits and Reports. At the expense of the Company, the Managers shall maintain records and accounts of the operations and expenditures of the Company. At a minimum the Company shall (i) update Exhibit A as necessary to accurately reflect any changes or modifications which have been made in accordance with this Operating Agreement and (ii) keep at its principal place of business or the office of the registered agent of the Company the following records:

(a) A current list of the full name and last known address of each Interest Holder setting forth the amount of cash each Interest Holder has contributed, a description and statement of the agreed value of the other property or services each Interest Holder has contributed or has agreed to contribute in the future, and the date on which each became an Interest Holder;

(b) A current list of the full name and business address of each of the Managers;

(c) A copy of the Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(d) Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three (3) most recent years;

(e) Copies of the Company's currently effective written Operating Agreement, and copies of any financial statements of the Company for the three (3) most recent years;

(f) Minutes of every meeting of Members or Managers;

(g) Any written consents obtained from Members or Managers for actions taken by Members or Managers without a meeting;

(h) Unless contained in the Articles of Organization or this Operating Agreement, a writing prepared by the Managers setting out the following:

1) The times at which or events on the happening of which any additional contributions agreed to be made by each Member are to be made.

2) Any right of an Interest Holder to receive distributions that include a return of all or any part of the Interest Holder's contributions.

3) Any power of an Interest Holder to grant the right to become an assignee of any part of the Interest Holder's Interest, and the terms and conditions of the power.

7.14    <u>Financial Statements and Information</u>. At the end of each Fiscal Year, the books of the Company shall be closed and examined and statements reflecting the financial condition of the Company and its Net Profits or Net Losses shall be prepared, and a report thereon shall be issued by the Company's certified public accountants. Copies of the financial statements shall be given to all Members. In addition, all Members shall receive not less frequently than at the end of each calendar quarter, copies of such financial statements regarding the previous calendar quarter, as may be prepared in the ordinary course of business, by the Managers or accountants selected by the Managers. The Chief Financial Officer shall deliver to each Member, within 120 days after the end of the Fiscal Year, or as soon as practicable thereafter, a financial statement that shall include:

(a) A balance sheet and income statement, and a statement of changes in the financial position of the Company as of the close of the Fiscal Year;
(b) A statement showing the Capital Account of each Member at the close of the Fiscal Year and the distributions, if any, made to each Member during the Fiscal Year. Members may request interim balance sheets and income statements, and may, at their own discretion and expense, obtain an audit of the Company books, by certified public accountants selected by them; provided, however, that not more than one such audit shall be made during any fiscal year of the Company, unless discrepancies of more than five percent (5%) are found on any audit.

Additionally, as an Illinois limited liability company, VAP is governed by the Illinois Limited Liability Company Act (the "Act"). Under the Act, SFR is entitled to request certain information, financial and otherwise, from VAP that will be sufficient to calculate payments under the Earnout Section. *See generally* 805 ILCS 180/1-40; 805 ILCS 180/10-15. SFR already has the information it used to calculate the payments made under the Earnout Section. However, if any additional information is required of VAP, SFR may request it through the proper channels—either through its rights in the VAP Operating Agreement or pursuant to Illinois law.

Not only will VAP providing its financial information be unnecessary and duplicative, the requests are also practically limitless in their breadth. Request Nos. 1-4 ask for "audited" and "unaudited" financial statements and tax returns from VAP's "inception to the present." Request No. 15 asks for "all" documentation related to money held in trust. Request No. 18 asks for "all" documents provided to investors relating to the financial performance of VAP or "any" affiliate of

VAP. The compilation of this information is unduly burdensome and will require VAP to incur excessive expenditure of time and money. It is also unclear why this amount of information is required in order for Plaintiff to litigate its claims.

If the Court determines that some financial documents relevant to the calculation under the Earnout Section are required to be produced, VAP respectfully asks that a protective order be entered limiting the scope of the financial documents that must be produced to the years 2016 and 2017—as the parties are disputing calculations based on VAP's financial performance for those years. (**Ex. C**, p. 5, ¶19). Additionally, for the reasons stated below, the remaining subpoena requests are wholly irrelevant to this litigation.

> **Request No. 5:** All documents relating to the statement, appearing on Your public website, that You "ha[ve] financed $3.5 billion of Illinois receivables and ha[ve] been repaid $2.5 billion by the State[,]" including all documents relating to the location, distribution, and/or transfer of the "2.5 billion" that Illinois "repaid" to You or any of Your affiliates. A true and accurate copy of the statement relating to these repayments, as reflected on Your website (https://www.vendorassistance.com/), is attached hereto as Exhibit 2.

> **Request No. 6:** All documents relating to the offices and/or "[a]ffiliates" located, according to Your website, in "Chicago, Philadelphia, Orlando, and San Juan, Puerto Rico[,]" including all documents relating to: (a) Your business and/or financial relationship with any such "[a]ffiliate[]"; (b) any involvement, whether direct or indirect, of any "[a]ffiliate[]" in the Illinois Vendor Payment Program; and/or (c) receipt by any of your "[a]ffiliates", whether directly or indirectly, of any of the "$2.5 billion" that Your website represents You to have been repaid by Illinois.

> **Request No. 7:** All documents related to the financial performance of the "[a]ffiliates" You reference on your public website, see Exhibit 2, including all documents that would show whether any of the "Affiliates" had any involvement in the Illinois Vendor Payment Program and/or the Vendor Support Initiative Program, such as Your affiliates' tax returns from inception to the present.

> **Request No. 8:** All documents relating to the creation and/or formation of Your affiliates, including documents relating to why the affiliates were created, whether they would be involved in the Illinois Vendor Payment Program, and whether they would need approval or qualification to participate (either directly or indirectly) in the Vendor Payment Program and/or the Vendor Support Initiative Program.

**Request No. 9:** All documents relating to federal or state tax savings or benefits that an office or affiliate located in Puerto Rico would achieve for You, Your affiliates, Your members, and/or Your investors, including Brian Hynes, concerning money generated or earned through Your participation in the Vendor Payment Program and/or the Vendor Support Initiative Program.

**Request No. 19:** All documents relating to Your financial performance from inception to the present, including communications relating to the Illinois Vendor Payment Program, financial and profit projections, pro formas, presentations, meeting minutes, and reports.

**Request No. 20:** All documents related to any testimony, statements, and/or information provided by You or Your representative(s), including Brian Hynes, to any state or federal legislative, regulatory, administrative, or investigatory body concerning the Vendor Payment Program and/or the Vendor Support Initiative Program.

**Request No. 21:** All documents relating to Your decision to amend Your public website to include reference to "[a]ffiliates" in locations other than Illinois, as opposed to simply "offices" in other locations. A copy of Your website, prior to such amendment, including reference to only "offices" is attached hereto as Exhibit 3.

**Request No. 24:** All agreements or contracts, including any servicing agreements, with any of Your affiliates relating to the Vendor Payment Program or funds received through the program.

## VAP's Response:

These requests are wholly irrelevant and will cause great inconvenience if VAP is required to produce responsive documentation. Request Nos. 5-7 and 21 seek documentation related to language on VAP's website. Request Nos. 6-8, 19, 20, and 24 seek documentation related to either the Illinois Vendor Payment Program or the Vendor Support Initiative Program (collectively, the "Programs"). Plaintiff has made no showing of why documents related to these requests are necessary for it to litigate its claims.

Documents responsive to these requests will have no connection to the calculations called for in the Agreement. The statements made on VAP's website are not related in any way to

Agreement. If Request Nos. 5-7 and 21 are seeking VAP financial information, this issue is addressed above and these requests are merely duplicative. There is not a single mention of the Programs in the entirety of Section 1.2 of the Agreement. **Ex. B**, pp. 1-3, §1.2. There is only a single mention of the Illinois Vendor Payment Program in Plaintiff's Complaint. **Ex. C**, p. 4, ¶11. Therefore, it is unclear why Plaintiff is in need of documentation related to VAP's involvement in the Programs. Any involvement that VAP has with the Programs is not relevant to calculations under the Earnout Section as evidenced by the plain language of the Agreement. Additionally, any information provided to state or federal legislative, regulatory, administrative, or investigatory bodies concerning the Programs should be properly requested from the federal or state entity, as VAP would not retain documents or records of this variety.

Plaintiff has made no showing as to why the documentation called for by these requests is essential to its claims. Plaintiff has made no showing as to why these requests are even *relevant* to its claims. Finally, as with all of Plaintiff's requests, these requests will subject VAP to an undue burden, being limitless in time and scope.

> **Request No. 10:** All documents relating to the payoff of all loans: (a) to or by You, (b) between or among You or Your members relating to You business, and (c) between or among You or Your affiliates, if any, relating to Your business.
>
> **Request No. 11:** All documents reflecting and/or relating to the identity of Your members, owners, shareholders, or directors, including documents reflecting the relative percentage of ownership of each.
>
> **Request No. 12:** All documents reflecting and/or relating to the identify of Your affiliates' members, owners, shareholders, or directors, including documents reflecting the relative percentage of ownership of each.
>
> **Request No. 14:** All documents relating to any agreements between You and Brian Hynes and/or affiliates of Brian Hynes, including alleged consulting agreements.
> **Request No. 16:** All documents relating to "Reserve Amounts" and/or "Reserve Accounts," each as defined in Section 1.2(e) of the [Agreement], *see* Exhibit 1, including all account statements for all Reserve Accounts from January 1, 2016 to the present.

**VAP's Response:**

Again, these requests are irrelevant to this litigation and will cause great inconvenience if VAP is required to produce responsive documents. Request Nos. 10-12 seek documentation related to the payoff of various loans and the ownership structure of VAP. Request No. 14 seeks documentation relating to VAP's relationship with Brian Hynes. Request No. 16 seeks documentation related to Section 1.2(e) of the Agreement. Plaintiff has made no showing of why documents related to these requests are necessary for it to litigate its claims.

The payment calculation under the Earnout Section is tied to VAP's financial performance. **Ex. C**, p. 1, ¶1. It is not tied to any specific loan entered into between VAP and its members of affiliates, or to the ownership structure of VAP. To the extent that Requests Nos. 10-12 seek VAP's financial information, this issue is addressed above and these requests are merely duplicative. Similarly, Request No. 16 seems to seek financial information. Furthermore, VAP is not a signatory to Section 1.2(e) of the Agreement and has no relevant documentation regarding that section. Plaintiff contends that a payment from SFR to Brian Hynes resulted in a lower payment under the Earnout Section for 2017. **Ex. C**, pp. 6-7, ¶23. Any information with respect to a payment from SFR to Brian Hynes can be obtained from SFR, the defendant in this litigation. The need for VAP to provide documentation on this alleged payment is lost on VAP.

> **Request No. 13:** All documents, including communications, relating to Blue Cross Blue Shield of Illinois (or any affiliate thereof), Health Care Service Corporation (or any affiliate thereof), United Health (or any affiliate thereof), and their respective affiliates, including all records recorded on or stored within Your CRM system.

> **Request No. 17:** All documents, including communications, exchanged between You and SFR relating to the [Agreement], the calculation of payments due to Warren Hill under the terms of the [Agreement], and/or this lawsuit.

**Request No. 22:** All documents, including communications, exchanged between You and SFR relating to this lawsuit.

**Request No. 23:** All documents, including communications exchanged between You and Brian Hynes relating to the [Agreement], this lawsuit, or payments made by You or an affiliate to Brian Hynes, including the calculation of any such payments.

**VAP's Response:**

At the risk of excessive repetition, these requests are irrelevant, and will cause great inconvenience to VAP. These requests also call for confidential or otherwise protected communications. Initially, it is important to note that Request No. 13 calls for documents and communications protected by the Health Insurance Portability and Accountability Act ("HIPPA") enacted in order to safeguard medical information. There is no nexus between communications regarding medical information and the breach of contract and accounting claims that Plaintiff asserts in this litigation. Why Plaintiff would request these documents is a mystery.

Requests Nos. 17, 22, and 23 seek communications related to this lawsuit or the Agreement. As previously stated, VAP has never taken part in any payment calculations under the Earnout Section of the Agreement, nor did VAP take part in the negotiation of the Earnout Section language. As such, VAP has no communications with respect to such payment calculations. Furthermore, any communications VAP has had with respect to this lawsuit are subject to attorney-client privilege.

## V.   CONCLUSION

The requests for documents to be produced in the Subpoena border on harassment. Plaintiff's own Complaint argues that this lawsuit is about improper calculations of payments governed by the Earnout Section of the Agreement, which in turn is tied to VAP's financial performance. The vast majority of the requests are in no way relevant to this lawsuit or to the

16

Agreement at issue. The arguably relevant requests—those having to do with VAP's financial information—subject VAP to an undue burden by being limitless in time and scope, and will require VAP to incur excessive expenditure of time and money. The Complaint filed by Plaintiff in this litigation states that any relevant financial information is in the possession of SFR, the defendant. There is no need for VAP to provide the documentation already in the possession of SFR and forcing VAP to produce such documentation will be unnecessarily duplicative. If SFR is somehow not in possession of the documentation used to calculate the payments made under the Earnout Section, then VAP will provide such documentation to SFR pursuant to its Operating Agreement and Illinois law. Otherwise, SFR can provide the financial information of VAP it used in calculating the payments made under the Earnout Section.

For the forgoing reasons, VAP respectfully requests that the Court grant its Motion to Quash Plaintiff's Subpoena and for Protective Order.

Dated:  July 27, 2018

Respectfully submitted,

_____ /s/ Daniel S. Rubin_

Daniel S. Rubin, IL ARDC #6293669
*Admitted Pro Hac Vice*
Howard & Howard Attorneys PLLC
200 South Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: drubin@howardandhoward.com

## CERTIFICATE OF SERVICE

I, Daniel S. Rubin, an attorney of record in this matter, certify that on July 27, 2018, I caused a copy of the foregoing to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania by electronic (ECF) filing, which provides service upon each attorney of record:

> GREGORY S. VOSHELL
> THOMAS B. HELBIG, JR
> Elliott Greenleaf, P.C.
> Union Meeting Corporate Center V
> P.O. Box 3010
> 925 Harvest Drive, Suite 300
> Blue Bell, PA 19422
> gsv@elliottgreenleaf.com
> tbh@elliottgreenleaf.com

> THOMAS M. PINNEY
> MICHAEL N. ONUFRAK
> White and Williams, LLP
> 1800 One Liberty Place
> 1650 Market Street
> Philadelphia, PA 19103
> pinneyt@whiteandwilliams.com
> onufrakm@whiteandwilliams.com

Dated: July 27, 2018                                            _/s/ Daniel S. Rubin_
                                                                              Daniel S. Rubin

4847-9865-7902, v. 1

18