## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | § |
| | § |
| Plaintiff, and Counter-Defendant | § |
| | § |
| v. | § |
| | § |
| SFR EQUITIES, LLC | § |
| | §   Case No. 2:18-cv-01228-HB |
| Defendant, and Counter-Plaintiff | § |
| | § |
| BLUE STONE FINANCE, LLC, | § |
| | § |
| Third Party Respondent | § |
| | § |

## ORDER

**NOW**, on this ___ day of _____, 2018, upon consideration of Third Party Respondent Blue Stone Finance, LLC's Motion to Quash Subpoena and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED** and Plaintiff Warren Hill, LLC's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action is **QUASHED**.

_____
Harvey Bartle III
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WARREN HILL, LLC, §<br>§<br>Plaintiff, and Counter-Defendant §<br>§<br>v. §<br>§<br>SFR EQUITIES, LLC §<br>§<br>Defendant, and Counter-Plaintiff §<br>───────────────────────── §<br>§<br>BLUE STONE FINANCE, LLC, §<br>§<br>Third Party Respondent §<br>§ | Case No. 2:18-cv-01228-HB |

**THIRD PARTY RESPONDENT BLUE STONE FINANCE, LLC'S
MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

Blue Stone Finance, LLC ("Blue Stone Finance"), by its undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A) and Federal Rule of Civil Procedure 26(c), moves this Court to quash Plaintiff Warren Hill, LLC's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action served on Blue Stone Finance, a third party respondent to the litigation (the "Subpoena"), or to enter a protective order limiting the scope of the Subpoena.

WHEREFORE, Blue Stone Finance, a third party to this litigation, requests that this Court quash the Subpoena—and to the extent that this Court does not quash the Subpoena—Blue Stone Finance respectfully asks this Court order Warren Hill, LLC to reimburse Blue Stone Finance for costs of compliance; and (2) issue a protective order limiting the scope of the Subpoena, or any other relief this Court deems just and proper.

2

Dated:  July 27, 2018                          Respectfully submitted,

        */s/ Daniel S. Rubin*

Daniel S. Rubin, IL ARDC#6293669
*Admitted Pro Hac Vice*
Howard & Howard Attorneys PLLC
200 South Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: drubin@howardandhoward.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WARREN HILL, LLC, | § | |
| | § | |
| Plaintiff, and Counter-Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| SFR EQUITIES, LLC | § | |
| | § | Case No. 2:18-cv-01228-HB |
| Defendant, and Counter-Plaintiff | § | |
| | § | |
| | § | |
| BLUE STONE FINANCE, LLC, | § | |
| | § | |
| Third Party Respondent | § | |
| | § | |

**THIRD PARTY RESPONDENT BLUE STONE FINANCE, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER**

Blue Stone Finance, by its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Quash the Subpoena and for Protective Order.

**I.      INTRODUCTION**

The Court should quash the Subpoena to Blue Stone Finance because it requires the disclosure of privileged and highly confidential data, imposes an undue burden and expense, and Blue Stone Finance is located outside the geographical limits specified in Federal Rule of Civil Procedure 45. In addition, Blue Stone Finance, as a third party to the underlying lawsuit, should not be required to produce the documentation requested by the Subpoena. This requested documentation is readily available through other and more appropriate avenues, and Warren Hill, LLC ("Plaintiff") asserted as much in its initial Complaint.

**II.      BACKGROUND**

4

On July 12, 2018, Plaintiff served Blue Stone Finance with the Subpoena. **Exhibit A**. The Subpoena proceeds to request that Blue Stone Finance, a third party, produce a vast amount of documentation with essentially no time limitations. **Ex. A**, pp. 5-6. Counsel for Plaintiff agreed to give Blue Stone Finance until July 27, 2018 to file objections or respond to the Subpoena.

Blue Stone Finance is not a party to this litigation, nor is it a signatory to the Membership Interest Purchase Agreement entered into between SFR Equities, LLC and Warren Hill, LLC (the "Agreement"). **Exhibit B**. Blue Stone Finance has never been involved in the Agreement in any way, and did not agree to be bound by any provision of the Agreement. Blue Stone Finance is a Puerto Rico limited liability company with its principal place of business in Puerto Rico.

The Subpoena requests documents wholly irrelevant to the Agreement, and other documents arguably relevant to specific sections of the Agreement that are at issue in this litigation—particularly Section 1.2(d) (the "Earnout Section"). **Ex. B**, pp. 2-3, §1.2(d).

The Complaint filed by Plaintiff in this litigation (the "Complaint") contains two counts against SFR Equities, LLC ("SFR"), the sole defendant. **Exhibit C**, pp. 8-10, ¶¶30-41. Both of these counts, for breach of contract and accounting, deal directly with allegedly improper calculations of earnout amounts due to Plaintiff under the Section 1.2(d) (the "Earnout Section"). **Ex. B**, pp. 2-3, §1.2(d); **Ex. C**, p. 9, ¶¶34, 38. Importantly, the Complaint asserts that SFR has access to the financial records that Plaintiff requires in order to litigate its claims. **Ex. C**, p. 9, ¶39 ("SFR is in possession of, or has access to, records and documents needed to confirm the amounts owed to Warren Hill under the Agreement."). Blue Stone Finance is never mentioned in the Complaint. *See generally* **Ex. C**. Blue Stone Finance did not agree to be bound by any section of the Agreement, as Blue Stone Finance is not a signatory to the Agreement. *See e.g.* **Ex. B**, p. 1. Blue Stone Finance did not take part in the drafting and negotiating which resulted in the final

language of the Agreement. Finally, Blue Stone Finance is never mentioned in the Agreement, nor is Blue Stone Finance a member of the Vendor Assistance Program ("VAP"). *See generally* **Ex. B**; **Ex. B**, p. 36.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While discovery is broadly available, it "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Courts must balance the relevance and necessity of the requested discovery with the potential hardship that might be incurred in producing it. *Barry v. Medtronic, Inc.*, No. 16-47, 2016 WL 1056783, at *1 (E.D. Pa. Mar. 17, 2016). A party seeking discovery by subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

With regard to a subpoena issued to a third party, the third party may seek protection from the subpoena under the provisions of Federal Rules of Civil Procedure 26 and 45. *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012) (citation omitted). Relevance, need, confidentiality, and harm are factors to consider in analyzing the subpoena and requested documents. *Id.* "The determination of relevance is within the district court's discretion." *Gardella v. Prodex Int'l, Inc.*, No. 06-1821, 2007 WL 710289, at *3 (E.D. Pa. Mar. 5, 2007) (citation omitted). "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *In re Mushroom Direct*

*Purchaser*, 2012 WL 298480, at *3 (citation omitted). Federal Rule of Civil Procedure 45, which controls subpoenas issued to third parties, provides:

> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The "undue burden" category "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a [third party] to incur excessive expenditure of time or money." *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (per curiam). The court "must limit the… extent of discovery" where it is duplicative, where it can be obtained from another source that is "more convenient, less burdensome, or less expensive," where the party seeking discovery has had ample opportunity to obtain the discovery, or where the burden or expense outweighs any perceived benefit of the discovery. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order in the court where the action is pending, and upon a showing of "good cause," the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense… [by] forbidding the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(A), or by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," Fed. R. Civ. P. 26(c)(1)(D). The party seeking a protective order bears the burden of showing that good cause exists to limit or foreclose discovery, and must

demonstrate a particular need for protection. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

This is particularly so in a situation involving discovery sought from a third party. *See Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015). Therefore, when discovery is sought from a third party, "[b]roader restrictions may be necessary to prevent a [third party] from suffering harassment or inconvenience." *Id.* (citing *Frank v. Honeywell Int'l Inc.*, No. 15-172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015)).

Under Federal Rule of Civil Procedure 45, a subpoena may command production of documents at a place within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(2). A third party served with a subpoena may respond as requested, serve objections, or timely file a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(d). A court must quash or modify a subpoena that requires a person to comply beyond the geographical limits specified in the Rule. Fed. R. Civ. P. 45(c)(3).

Finally, if a third party objects to a subpoena, and the court orders the third party to comply with the subpoena, the court must protect the third party from significant expenses resulting from compliance. Fed. R. Civ. P. 45(d)(2)(B); *see also In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 250 (E.D. Pa. 2014) ("[Third party respondent] is entitled to compensation for time expended and expenses incurred in complying with the subpoena.") (citation omitted).

## IV.   ARGUMENT

The Subpoena calls for Blue Stone Finance to produce documents in the Eastern District of Pennsylvania. Blue Stone Finance is a Puerto Rico limited liability company with its principal place of business in Puerto Rico. The Eastern District of Pennsylvania is more than 100 miles from Puerto Rico. As such, the Court should quash the Subpoena as it requires Blue Stone Finance to

comply beyond the geographical limits specified in Federal Rule of Civil Procedure 45(c)(2)(A). *See Kiker v. SmithKline Beecham Corp.*, No. 14-1445, 2014 WL 4948624, at *6 (E.D. Pa. Oct. 01, 2014) ("Pursuant to Federal Rule of Civil Procedure 45(c)(2)(A), Plaintiff can… file a motion in a federal court to compel the production of 'documents, electronically stored information, or other tangible things' at a place *within 100 miles* of where the person resides, is employed, or regularly transacts business.") (emphasis added).

Blue Stone Finance maintains it should not be required to produce any documents in response to the Subpoena. However, if this Court disagrees—and orders Blue Stone Finance to produce documents—Blue Stone Finance requests reimbursement for the cost of compliance with the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B). The cost of compliance will include, but is not limited to, attorneys' fees and costs, reasonable e-discovery service costs and fees, and other fees and costs incurred in complying with the Court's order to produce documents.

> **Request No. 1:** All documents relating to Your direct or indirect participation in, or involvement with, the Illinois Vendor Payment Program and/or the Vendor Support Initiative Program.
>
> **Request No. 2:** All documents relating to Your creation and/or formation, including documents relating to why You were created, whether You would be involved in the Illinois Vendor Payment Program and/or the Vendor Support Initiative Program, and whether You would need approval or qualification to participate (either directly or indirectly) in the Vendor Payment Program and/or the Vendor Support Initiative Program.
>
> **Request No. 3:** All agreements or contracts, including any servicing agreements, relating to the Vendor Payment Program and/or the Vendor Support Initiative Program.
>
> **Request No. 15:** All documents relating to Your financial performance from inception to the present, including communications relating to the Illinois Vendor Payment Program and/or the Vendor Support Initiative Program, financial and profit projections, pro formas, presentations, meeting minutes, and reports.

**Blue Stone Finance's Response:**

These requests are wholly irrelevant and will cause great inconvenience if Blue Stone Finance is required to produce responsive documentation. These requests seek documentation related to either the Illinois Vendor Payment Program or the Vendor Support Initiative Program (collectively, the "Programs"). Plaintiff has made no showing of why documents related to these requests are necessary for it to litigate its claims.

Documents responsive to these requests will have no connection to the calculations called for in the Agreement—the calculations which form the basis of Plaintiff's Complaint. There is not a single mention of the Programs in the entirety of Section 1.2 of the Agreement. **Ex. B**, pp. 1-3, §1.2. There is only one mention of the Illinois Vendor Payment Program in Plaintiff's Complaint. **Ex. C**, p. 4, ¶11. Therefore, it is unclear why Plaintiff is in need of documentation related to Blue Stone Finance's involvement in the Programs. Any involvement that Blue Stone Finance has with the Programs is not relevant to any section of the Agreement, as Blue Stone Finance is not a party to the Agreement.

Plaintiff has made no showing as to why the documentation called for by these requests is essential to its claims. Plaintiff has made no showing as to why these requests are even *relevant* to its claims. Finally, as with all of Plaintiff's requests, these requests will subject Blue Stone Finance to an undue burden, being nearly limitless in time and scope. These requests ask for "all" documents related to the Programs, and financial performance documents from Blue Stone Finance's "inception to the present."

> **Request No. 4:** All of Your audited and/or unaudited financial statements from Your inception to the present.
>
> **Request No. 5:** All drafts of Your audited and/or unaudited financial statements from Your inception to the present.
>
> **Request No. 6:** All documents relating to Your financial performance, such as documents relating to Your revenue from Your inception to the present.

**Request No. 7:** All transfer pricing studies or reports, including all communications and other documents relating thereto, concerning Your [sic] or Your affiliates' revenue or business.

**Request No. 8:** All documents relating to the allocation, attribution, and/or sourcing of revenue among You and Your affiliates.

**Request No. 10:** All documents relating to Your tax returns, including all of Your tax returns from Your inception to the present.

**Request No. 14:** All documents provided to Your investors, members, or shareholders relating to Your financial performance, including financial projections, presentations, meeting minutes, board minutes, and/or documents relating to monetary distributions.

**Blue Stone Finance's Response:**

Plaintiff's claims in this litigation stem from the allegedly improper calculations of payments under the Earnout Section of the Agreement. These requests are seeking documentation related to Blue Stone Finance's financial information—purportedly to correct any improper calculations conducted with that financial information as a basis. Documents responsive to these requests are entirely irrelevant as there has been no showing that Blue Stone Finance's financial information is used in the calculation of the payments under the Earnout Section.

Furthermore, Plaintiff has already conceded that "SFR is in possession of, or has access to, records and documents needed to confirm the amounts owed to Warren Hill under the Agreement." **Ex. C**, p. 9, ¶39. SFR is a party to this litigation, and can produce the financial information that was used in calculating the payments made under the Earnout Section. Blue Stone Finance had no hand in drafting the language in the Earnout Section, and it made no calculations with respect to any payments made pursuant to the Agreement. There is no need for Blue Stone Finance to produce its financial information since SFR is already in possession of the information they would have needed to calculate any payments made under the Earnout Section.

Not only will Blue Stone Finance providing its financial information be irrelevant and unnecessary, these requests are also practically limitless in their breadth. Request Nos. 4-6 and 10 ask for "audited" and "unaudited" financial statements, documents related to financial performance, and tax returns from Blue Stone Finance's "inception to the present." Request Nos. 7, 8, and 14 ask for "all" documents related to pricing studies or reports, allocation of revenue, and financial performance. The compilation of this information is unduly burdensome and will require Blue Stone Finance to incur excessive expenditure of time and money. It is also unclear why this amount of information is required in order for Plaintiff to litigate its claims. These requests call for unnecessary and irrelevant information.

> **Request No. 9:** All documents, including communications, relating to Blue Cross Blue Shield of Illinois (or any affiliate thereof), Health Care Service Corporation (or any affiliate thereof). United Health (or any affiliate thereof), such as agreements with such entities or concerning such entities.

> **Request No. 12:** All documents, including communications, exchanged between You and SFR relating to the [Agreement] (*see* Ex. 1), the calculation of payments due to Warren Hill under the terms of the [Agreement], and/or this lawsuit.

> **Request No. 13:** All documents, including communications, exchanged between You and VAP relating to the [Agreement] (*see* Ex. 1), the calculation of payments due to Warren Hill under the terms of the [Agreement], and/or this lawsuit.

**Blue Stone Finance's Response:**

Again, these requests are irrelevant to this litigation and will cause great inconvenience if Blue Stone Finance is required to produce responsive documents. These requests call for confidential or otherwise protected communications. Initially, it is important to note that Request No. 9 calls for documents and communications protected by the Health Insurance Portability and Accountability Act ("HIPPA") enacted in order to safeguard medical information. There is no nexus between communications regarding medical information and the breach of contract and

accounting claims that Plaintiff asserts in this litigation. Why Plaintiff would request these documents is a mystery.

Requests Nos. 12 and 13 seek communications related to the Agreement. As previously stated, Blue Stone Finance is not a signatory to the Agreement, nor has it ever taken part in any payment calculations under the Agreement. Blue Stone Finance was never involved in the negotiation of the Agreement language. As such, Blue Stone Finance has no communications with respect to such payment calculations. Furthermore, any communications Blue Stone Finance has had with respect to the Agreement are subject to attorney-client privilege.

**Request No. 11:** All documents reflecting and/or relating to the identify of Your members, owners, shareholders, members, or directors, including documents reflecting the relative percentage of ownership of each.

**Request No. 16:** All documents reflecting the names of individuals You consider to be employees, agents, or contractors, including any agreements with such individuals.

**Request No. 17:** All documents relating to Your operations, such as any operating agreements.

**Blue Stone Finance's Response:**

At the risk of excessive repetition, these requests are irrelevant, and will cause great inconvenience to Blue Stone Finance. These requests seek documentation related to the ownership structure of Blue Stone Finance. Plaintiff has made no showing of why documents related to these requests are necessary for it to litigate its claims.

The payment calculation under the Earnout Section is tied to VAP's financial performance. **Ex. C**, p. 1, ¶1. It is not tied in any way to the ownership structure of Blue Stone Finance. Blue Stone Finance, a third party to this litigation, need not provide documents related to its ownership structure called for in the Subpoena. Blue Stone Finance neither signed the

Agreement, nor was its ownership structure used in the calculation of payments made under the Earnout Section.

Blue Stone Finance maintains it should not be required to produce any documents in response to the Subpoena. However, if this Court disagrees—and orders Blue Stone Finance to produce documents—Blue Stone Finance requests reimbursement for the cost of compliance with the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B). The cost of compliance will include, but is not limited to, attorneys' fees and costs, reasonable e-discovery service costs and fees, and other fees and costs incurred in complying with the Court's order to produce documents.

## V.   CONCLUSION

The requests for documents to be produced in the Subpoena border on harassment. Plaintiff's own Complaint argues that this lawsuit is about improper calculations of payments governed by the Earnout Section of the Agreement, which in turn is tied to VAP's financial performance. The requests are in no way relevant to this lawsuit or to the Agreement at issue in this lawsuit—Blue Stone Finance is not a party to the Agreement and has no involvement with the Agreement whatsoever. The requests also subject Blue Stone Finance to an undue burden by being nearly limitless in time and scope, and will require Blue Stone Finance to incur excessive expenditure of time and money. The Complaint filed by Plaintiff in this litigation states that any relevant financial information is in the possession of SFR, the defendant. There is no need for Blue Stone Finance to provide documentation responsive to the Subpoena as it is clearly irrelevant to the underlying lawsuit, and if such documentation is relevant it will already be in the possession of SFR. Therefore, SFR as the defendant can provide the financial information of VAP it used in calculating the payments made under the Earnout Section.

For the forgoing reasons, Blue Stone Finance respectfully requests that the Court grant its Motion to Quash Plaintiff's Subpoena and for Protective Order.


Dated:  July 27, 2018                              Respectfully submitted,

                                                          ___ /s/ Daniel S. Rubin

                                                          Daniel S. Rubin, IL ARDC#6293669
                                                          *Admitted Pro Hac Vice*
                                                          Howard & Howard Attorneys PLLC
                                                          200 South Michigan Ave., Suite 1100
                                                          Chicago, IL 60604
                                                          Telephone: (312) 456-3641
                                                          Facsimile: (312) 939-5617
                                                          Email: drubin@howardandhoward.com

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel S. Rubin, an attorney of record in this matter, certify that on July 27, 2018, I caused a copy of the foregoing to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania by electronic (ECF) filing, which provides service upon each attorney of record:

GREGORY S. VOSHELL
THOMAS B. HELBIG, JR
Elliott Greenleaf, P.C.
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
gsv@elliottgreenleaf.com
tbh@elliottgreenleaf.com

THOMAS M. PINNEY
MICHAEL N. ONUFRAK
White and Williams, LLP
1800 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
pinneyt@whiteandwilliams.com
onufrakm@whiteandwilliams.com

Dated: July 27, 2018                          ____ */s/ Daniel S. Rubin*
                                              Daniel S. Rubin

4836-7858-2126, v. 1