# EXHIBIT 1

# EXHIBIT 1 – Categories of Information at Issue

| | CATEGORY OF DOCUMENTS | DOCUMENT REQUESTS | RELEVANCE TO DISPUTE |
|---|---|---|---|
| 1 | Audited and/or unaudited financial statements from VAP and the Bluestone entities 2016 and 2017 | 1-4, 11, 12 | These financial statements will provide a thorough description of the financial performance and operation of the business, including revenue, expenses, and affiliate transactions (including transfers between VAP and Bluestone). Warren Hill contends that VAP is improperly sending/booking revenue to Bluestone—funds that should properly be included as "Net Income" under Section 1.2(d) of the MIPA. The financial statements, including the notes thereto, should also describe whether funds have been released from any "Reserve Account" (as defined in the MIPA) under circumstances that would trigger additional payment obligations on the part of SFR pursuant to Section 1.2(e) of the MIPA. |
| 2 | Tax returns for VAP and the Bluestone entities for 2016 and 2017 | 1, 2, 4-6 | The tax returns will provide further information about the financial performance, transactions, and interactions of VAP and the Bluestone entities, as submitted to the applicable taxing authorities. |
| 3 | All "confirmation requests" sent by VAP or Bluestone to US Bank for 2016-2018 | 1-2, 4, 10, 16 | US Bank was (and continues to be) the trustee of all the trusts that VAP manages in its business. At the beginning of each calendar year, VAP will send US Bank a request for confirmation of fees VAP earned from the prior year in a 1-2 page summary document. In 2017, VAP would have requested confirmation of 2016 fees earned. In 2018, VAP would have requested confirmation of 2017 fees earned. The details on VAP's request include: Total Note Balances as of December 31st, 2016/2017, Vendor Receivables Outstanding as of December 31, 2016/2017, Total Fees earned during the year ended December 31, 2016/2017, Management Fees owed to VAP as of December 31, 2016/2017, all Closing Fees earned at Trust Origination for 2016/2017. This information goes right to the heart of the MIPA earn-out calculation. |
| 4 | Noteholder reports or summaries | 1-2, 4, 16 | US Bank (the trustee) delivers noteholder reports to VAP. These reports include information about: revenues received/accrued by VAP (*e.g.*, senior fees, junior fees, reserve accounts, and trust certificate residuals). SFR's obligations to make earnout payments to Warren Hill under the MIPA relate directly to the information summarized in these reports. Indeed, Schedule 1.2(d) to the Agreement, which illustrates the method by which SFR's earnout payments to Warren Hill are to be calculated, states that it "WILL BE UPDATED TO ACTUAL PER REPORT TO SECURITY HOLDERS". |
| 5 | Transfer pricing studies | 1-2, 4, 7, 16 | Transfer pricing studies (also known as "benchmarking" studies) are commercial analyses commonly undertaken by an enterprise to determine appropriate monetary values to attribute to transactions with the enterprise's affiliates. Because VAP and the Bluestone entities are affiliates of each other under common control, VAP, the Bluestone entities, or SFR may have commissioned or completed transfer pricing studies to determine valuations to be used to account for revenues and costs recognized with respect to their inter-affiliate transactions. If so, such studies may inform the propriety or impropriety of SFR's payment(s) to Warren Hill under Section 1.2(d) of the Agreement. |
| 6 | Operating/Servicing Agreements for VAP/Bluestone | 15 | These documents will show: the membership of the companies, the purposes of the companies, the type(s) of business conducted, relationships between the affiliated companies, and any changes or amendments thereto. Warren Hill believes that the Bluestone entities were created to receive revenue improperly funneled from (and properly attributable to) VAP, and these documents relate to that. |
| 7 | The Qualified | 17 | The principal line of business of VAP (the operating company for which Warren Hill sold its ownership interest to SFR |

# EXHIBIT 1 – Categories of Information at Issue

| | | | |
|---|---|---|---|
| | Purchaser Designations, Applications, or Checklist Requirements from Illinois | | pursuant to the MIPA) involves financial transactions that are part of the State of Illinois's Vendor Payment Program/Vendor Support Initiative. A key requirement for VAP to operate such business is that VAP has been designated as a "Qualified Purchaser" by Illinois.  To be designated as a Qualified Purchaser, an entity must satisfy rigorous state requirements for financial capabilities, systems management, and more. Based on publicly available information, Warren Hill understands that neither of the Bluestone entities have been designated as Qualified Purchasers.  These documents will show that VAP is the only entity truly operating under the Vendor Payment Program, which will support Warren Hill's position that VAP is earning the revenue at issue, not Bluestone. |
| 8 | Documents relating to customer contacts with VAP, such as documents relating to Blue Cross and United arrangement | 4, 10, 11, 16 | In addition to the dispute concerning what revenue (and therefore, "Net Income") should be included in the earnout calculation, the parties also dispute certain deductions that SFR took when calculating the amounts it owed Warren Hill.  The dispute centers on payments made to attorney (and co-beneficial owner of VAP and the Bluestone entities) Brian Hynes for "new" business he allegedly generated for VAP.  Despite the fact that certain customers (particularly Blue Cross Blue Shield of Illinois) were recruited years ago, SFR is taking the position that certain customers are "new" business.  Documents—such as emails and files stored on VAPs "CRM" system—will show that these customers were recruited years ago and that no related deductions are permitted by the plain terms of the MIPA. |
| 9 | All lender agreements between VAP and Bank of America, Citi or any other bank or lending institution re: funding the purchase of receivables | 8-9, 14 | VAP has entered into agreements with a variety of funding sources, including without limitation, Bank of America and Citi, relating to the borrowing of money to fund the purchase of receivables that represent the core of VAP's business.  As a former member of VAP, Warren Hill believes that these lender agreements will show that: VAP is the manager of applicable trusts, VAP has indemnification obligations to noteholders, and opinions of counsel as to what entity can manage trusts.  These facts that will support Warren Hill's position that VAP is earning the revenue at issue, not Bluestone. |