IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
| Plaintiff, | : 2:18-01228-HB |
| v. | : |
| SFR EQUITIES, LLC, | : |
| Defendant. | : |

## ORDER

AND NOW, this ____ day of _____, 2018, upon consideration of SFR Equities, LLC's Motion for Partial Summary Judgment, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is therefore **ORDERED** that:

The MIPA requires that the earn-out be paid according to a cash basis of accounting;

**AND**

The earn-out is based only on the revenue of Vendor Assistance Program, LLC, not Bluestone Capital Markets, LLC or Blue Stone Finance, LLC.

**IT IS SO ORDERED.**

**BY THE COURT:**

_____
**Bartle,    J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
| Plaintiff, | : 2:18-01228-HB |
| v. | : |
| SFR EQUITIES, LLC, | : |
| Defendant. | : |

**DEFENDANT SFR EQUITIES, LLC'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant SFR Equities, LLC ("SFR") hereby moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for entry of an order granting partial summary judgment in favor of SFR determining that the plain meaning of the language of the MIPA requires the calculation and payment of the earn out based (A) only on the revenue of Vendor Assistance Program, LLC, and not the revenues of its affiliates, Bluestone Capital Markets, LLC and Blue Stone Finance, LLC.; and (B) on the cash basis of accounting.

In support of this Motion for Summary Judgment, SFR relies upon and respectfully refers the Court to the accompanying Memorandum of Law, Statement of Undisputed Facts, Declaration of Gene Harris, Declaration of Brian Hynes and Exhibits attached thereto which are incorporated herein as though fully set forth at length.

WHITE AND WILLIAMS LLP

By: _/s/ Michael N. Onufrak_
Michael N. Onufrak
Thomas M. Pinney
1650 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 864-7174
Attorneys for Defendant
SFR Equities, Inc.

Dated: November 20, 2018

21843121v.2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
| Plaintiff, | : 2:18-01228-HB |
| v. | : |
| SFR EQUITIES, LLC, | : |
| Defendant. | : |

**DEFENDANT SFR EQUITIES, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

SFR Equities, LLC ("SFR") respectfully submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment.

I.  **SUMMARY OF ARGUMENT**

SFR seeks an Order granting partial summary judgment in favor of SFR determining;

First, that the proper calculation of "Revenue," as defined in the Membership Interest Purchase Agreement ("MIPA") by and between (among others) the Plaintiff, Warren Hill, LLC ("Warren Hill" and the Defendant, SFR, did not require the inclusion of the revenue of Blue Stone Finance, LLC ("BSF") or Bluestone Capital Markets, LLC ("BCM"), entities affiliated with the Vendor Assistance Program, LLC (VAP"), in the earn out calculation and

Second, that Section 1.2(d) of the MIPA required the calculation of the earn out payments on the cash basis method of accounting.

## II. SUMMARY OF UNDISPUTED FACTS

VAP was formed by Brian Hynes and others in 2010 to take advantage of the state of Illinois' vendor assistance program. Statement of Undisputed Facts, at ¶17. Warren Hill was an investor and lender to VAP. Statement of Undisputed Facts, at ¶5.

SFR was a lender to CHGO Real Estate Consulting Group, an entity formed by Hynes that was also a lender and investor in VAP. Effective January 1, 2016, SFR converted its loan to CHGO into equity. Around that same time, SFR entered into negotiations with Warren Hill to purchase Warren Hill's 33.33% interest in VAP. The SFR/Warren Hill negotiations started in 2015, but continued into early 2016. The result of these negotiations was the MIPA. Statement of Undisputed Facts, at ¶¶4 - 7.

As part of the consideration for purchase of the membership interests in VAP from Warren Hill, SFR agreed to pay an earn out, based on the revenue earned by VAP in 2016, 2017 and 2018, as follows:

> (d) Further, for each of the three years following the Closing Date, Purchaser shall, within 90 days of the end of such year, pay Seller an amount equal to 50% of VAP's Net Income (as defined below) allocable to the Interest for such year. **"Net Income"** is defined to mean (i) the sum of (A) any and all fees earned by VAP in its capacity as a manager or an administrator of (1) the Vendor Assistance Trust and/or (2) any other trust or account maintained in the course of VAP's business, (B) any and all interest income, (C) any and all fees earned from providing services to affiliates or third parties, and (D) any and all other revenues received by VAP other than the Reserve Amounts (as defined below), less (ii) the sum of (A) $50,000 per month for each month in which VAP's average outstanding receivables are greater than or equal to $50,000,000, (B) $25,000 per month for each month in which VAP's average outstanding receivables are less than $50,000,000, (C) interest paid by VAP on debt for which VAP is the debtor and any member of VAP is the lender solely to the extent that (1) such debt was outstanding as of the Closing Date, (2) the original principal of such debt, in the aggregate, does not exceed $4,000,000, and (3) the interest rate to which such debt is subject does not exceed 12% per annum, and (D) any consulting fees paid

to any member of VAP or any third party in exchange for introducing any new business opportunity to VAP, provided that such new business opportunities exclude any business involving any vendor, payee, program or party which VAP had previously investigated, transacted with or paid any consultant with respect to. Items (A) through (D) of clause (i) of the preceding sentence are herein defined as **"Revenue"**, and items (A) through (D) of clause (ii) of the preceding sentence are herein defined as **"Expenses"**. For purposes of this Agreement, all Revenues are recognized when they are received by VAP, and all Expenses are recognized when they are paid by VAP. For purposes of clarity, <u>Schedule 1.2(d)</u> illustrates examples of the calculation payment of VAP's Net Income allocable to the Interest.

<u>Statement of Undisputed Facts</u>, at ¶8.

In 2017, based in part on changes in the risk retention regulations applicable to asset securitizations and also to take advantage of favorable tax laws in Puerto Rico, the management of VAP decided to create two new affiliated entities to assist VAP in its business operations. The first, BCM, was created to hold trust certificates to foster compliance with the new risk retention regulations. The second, BSF, was created in Puerto Rico to provide certain management services to the securitization trusts through which VAP operates. BCM and BSF are not subsidiaries of VAP, but they both have ownership identical to or substantially in common with VAP. <u>Statement of Undisputed Facts</u>, at ¶¶20 - 24.

The result of these transactions – which were not prohibited by the terms of the MIPA – was that BSF provided services to the trusts that were previously provided by VAP; and BCM acquired trust certificates that were previously owned by VAP and would serve as the holder for any newly created trusts. BSF and BCM earned fees or revenue from the trusts for the services each provided. <u>Statement of Undisputed Facts</u>, at ¶¶29 - 31.

The plain terms of the MIPA do not require SFR to make an earn out payment to Warren Hill for revenue earned by BSF or BCM. Warren Hill was paid its earn out based on VAP's

revenue alone as specifically required by the MIPA. Statement of Undisputed Facts, at ¶¶14-16; and ¶33.

In early 2017, Warren Hill provided SFR with its calculation of the earn out on the cash basis – crediting revenue to VAP when it was received and deducting expenses when they were paid. These calculations were in compliance not only with the plain language of the MIPA, but also with the spreadsheet that Warren Hill's Jim Delaney produced and which was attached as an exhibit to the MIPA. Statement of Undisputed Facts, at ¶¶14-15.

For a full recitation of the Undisputed Facts, SFR incorporates by reference as though fully set forth at length its Statement of Undisputed Facts filed concurrently with this Memorandum of Law.

### A. SFR PROPERLY CALCULATED THE EARN OUT BASED ON VAP'S REVENUE ALONE UNDER THE PLAIN LANGUAGE OF THE MIPA

The MIPA provides, at Section 6.4, that its terms are governed by Illinois law. Illinois law provides that the meaning of a written contract is ordinarily a question of law and not one of fact. *Hufford v. Balk*, 113 Ill. 2d 168, 172 (1986). The court's "primary objective in construing a contract is to ascertain the intent of the parties and to give effect to that intent." *United Airlines, Inc. v. Chicago*, 116 Ill. 2d 311, 318, (1987)

It is well established under Illinois law that, "where parties formally include an integration clause in their contract (such as the one found at Section 6.1 of the MIPA), they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007) (*quoting Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882 (Ill. 1999)). Furthermore, if a "contract is facially unambiguous and contains an integration clause, the 'four corners rule' applies, barring the consideration of extrinsic evidence." *Id.* (*citing Air*

*Safety*, 185 Ill. 2d at 462). *See also Benedict v. Fed. Kemper Life Assurance Co.*, 325 Ill. App. 3d 820, 823 (2001) ("In Illinois, contract interpretation follows the four corners doctrine so that we look only to the language of the contract to determine if it is susceptible to more than one meaning."). Because the MIPA contains an integration clause, the four-corners rule of Illinois applies to this contract dispute.

According to the four corners rule, the very first thing the Court must do is to look at the language of the contract and decide whether it contains, on its face, any ambiguity. As stated above, this is a question of law for the court. *Gillespie Cmty. Unit Sch. Dist. No. 7 v. Union Pac. R.R. Co.*, 2015 IL App (4th) 140877, ¶ 93 (*citing Air Safety*, 185 Ill. 2d at 462). If a contract is determined to be unambiguous, like the MIPA, no extrinsic evidence can be considered in interpreting the contract, and any dispute is to be resolved on the basis of the language of the contract itself. *Stouffer Corp. v. Itasca Hotel Co.*, No. 91 C 3984, 1991 U.S. Dist. LEXIS 18166, at *29 (N.D. Ill. Dec. 30, 1991) (*citing Air Line Stewards and Stewardesses Ass'n, Local 550 v. American Airlines, Inc.*, 763 F.2d 875, 878 (7th Cir. 1985) ("[I]f the language of the Settlement Agreement clearly and unambiguously determines an answer to the question at issue, then the inquiry is over")).

The language of Section 1.2(d) of the MIPA is clear and unambiguous, and therefore, under Illinois law and the plain reading of the language in the MIPA, SFR was only required to calculate VAP's "Revenue" as defined in the contract. The plain language of the MIPA did not prohibit members of VAP from creating new entities to provide services to the trusts or for any other purpose. Warren Hill expressly made VAP a party to the MIPA for certain clauses. However, nothing in the MIPA restricted VAP from conducting its business as it saw fit in any way. At all times during the negotiation of the MIPA Warren Hill was aware that VAP had an

affiliate, Healthcare Finance, LLC (also a party to the MIPA) but Warren Hill never bargained for a clause in the MIPA that would include the revenue of this, or any other affiliate, in the calculation earn out. The MIPA only refers to VAP's revenue.

In 2017, when VAP's Board of Managers decided to restructure VAP and to create BCM and BSF all actions were ratified by the managers of VAP or consisted of corporate action by BCM or BSF. None of the events related to this restructuring are attributable only to SFR. It is not disputed that with respect to these actions:

a. VAP is controlled by a six member board of managers; Undisputed Facts at ¶19;

b. SFR only controls one seat on the board; Undisputed Facts at ¶19;

c. VAP is governed by a written Operating Agreement, Undisputed Facts at ¶19 at Exh. "C", which mandates the VAP board of managers as the source of corporate governance;

d. VAP's Managers caused articles of formation to be filed for its two new affiliates in March, 2017 in Florida (BCM) and Puerto Rico (BSF); Undisputed Facts at ¶¶22 and 26, Exhs. "D" and G";

e. The Boards of Managers approved and ratified articles of organization and separate Operating Agreements for BCM and BSF. Undisputed Facts at ¶28, Exhs. "I" and "J";

f. VAP and BCM through their respective Board of Managers each entered into written resolutions approving the transfer of trust certificates to BCM; Undisputed Facts at ¶¶29 - 30; Exhs. "K" – "P";

g. VAP, BCM and BSF, through their respective Board of Managers each approved services agreements compensating BCM and BSF for numerous services performed for the securitization trusts; Undisputed Facts at ¶31; Exhs. "Q" – "S";

h. As of today, BSF is a limited liability company in good standing, maintains office space in Puerto Rico, and employs several former VAP employees and one former AHG employee. It filed a 2017 tax return in Puerto Rico for income received in 2017; Undisputed Facts at ¶33;

i. Likewise, today, BCM is a limited liability company in good standing, it holds the trust certificates formerly held by VAP or the trust certificates created after its formation. It filed a 2017 United States federal tax return for income received in 2017. Undisputed Facts at ¶33.

As stated above, none of these transactions occurred due to action by SFR. All of these transactions occurred due to action of (1) VAP; (2) VAP's managers or (3) BSF or (4) BCM. All these transactions occurred because VAP's members and VAP, corporately, made sound business decisions to meet the challenge of new federal risk retention regulations and to take advantage of Puerto Rico tax law. The effect of these undisputed facts on the earn out language in the MIPA resulted in Warren Hill getting exactly what it bargained for: an earn out based on VAP's revenue and not on the revenue of its affiliates, BCM and BSF. Consequently, the Court should enter partial summary judgment against Warren Hill and in favor of SFR finding that the earn out need only be calculated based on the revenue of VAP, not BCM or BSF.

**B.   THE PLAIN LANGUAGE OF THE MIPA REQUIRED CALCULATING THE EARN-OUT ON THE CASH BASIS OF ACCOUNTING**

Warren Hill has implied throughout the case that the earn out under Section 1.2(d) should be calculated on an accrual basis, as opposed to a cash basis.[1] SFR requests that the Court read the plain language of the MIPA and hold that SFR was required to calculate Revenue on a cash basis under the plain language of section 1.2(d).

As discussed above, the existence of an integration clause means that the parties explicitly manifest their intention to protect themselves against misinterpretations which might arise from extrinsic evidence. The integration clause contained in the MIPA states unequivocally that the MIPA "represents the entire agreement of the parties," and that there are "no understandings or agreements other than those incorporated herein." MIPA, at Article 6.1. Thus, the language of the MIPA is intended to wholly incorporate the intention of the parties.

---

[1] Under an accrual basis of accounting, revenues and expenses are recorded when they are earned, regardless of whether money is actually received or paid. Under a cash basis of accounting, revenues are recognized when cash is received, and expenses deducted when they are paid. See IRS Publication 538 (Dec. 2016), available at https://www.irs.gov/publications/p538 (last visited November 9, 2018).

The plain language of the MIPA establishes that there is no ambiguity regarding whether the earn out should be calculated on a cash or accrual basis. After providing a list of the fees and revenues to be included and defined as "Revenue" for the purpose of calculating the earn out, the MIPA states explicitly, "[f]or purposes of this Agreement, **all Revenues are recognized when they are received by VAP.**" MIPA, at 1.2(d). (Emphasis added). By explicitly stating that the items defined as Revenue are "recognized when they are received by VAP," the parties made clear that the earn out would be calculated based on fees and revenue when they were received by VAP, and not when they were accrued.

Jim Delaney, representing Warren Hill also prepared a spread sheet attached to the MIPA as Schedule 1.2(d). This Schedule "…for purposes of clarity … illustrates an example of the calculation and payment of VAP's Net Income allocable to the Interests." Undisputed Facts, at ¶¶11 and 12. It also states: "Income when received"; "Expenses when paid" and is calculated on a cash, not an accrual basis. Undisputed Facts, at ¶13.

In 2017 when Delaney and Gene Harris calculated the earn out, they worked with a similar schedule prepared by Delaney, Undisputed Facts, 15; Ex. "B." The plain language of Sec. 1.2(d) itself and Schedule 1.2(d) which is part of the MIPA prove that SFR is entitled to partial summary judgment requiring the Court to find that the earn out payments are to be calculated on a cash, not an accrual basis.

C. **THE PARTIES PAST COURSE OF DEALING WHEN CALCULATING THE EARN OUT FOR 2016 PROVES THE PARTIES AGREED TO CALCULATE THE EARN OUT ON A CASH, NOT AN ACCRUAL BASIS OF ACCOUNTING.**

Warren Hill cannot now claim that the earn out should be calculated on an accrual basis after accepting the 2016 earn out payment, about which it "corresponded extensively" (Complaint, ¶19) with SFR before accepting, on a cash basis. A court may consider the parties'

-8-

"course of performance. . . to explain or supplement the terms of an agreement even without a determination that the agreement is ambiguous." *K's Merch. Mart, Inc. v. Northgate Ltd. P'ship*, 359 Ill. App. 3d 1137, 1144 (2005); *see also Kinesoft Dev. Corp. v. Softbank Holdings*, 139 F. Supp. 2d 869, 890 n.9 (N.D. Ill. 2001) ("[T]he course of performance may be used to interpret the intent of the parties, since such evidence likely reflects the parties' understanding of their agreement"). A course of performance refers to a "sequence of conduct between the parties" that exists if the parties' agreement "involves repeated occasions for performance by a party" and "the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection." *Gillespie Cmty. Unit Sch. Dist. No. 7 v. Union Pac. R.R. Co.*, 2012 IL App (4th) 110142-U, ¶103 (*citing* 810 ILCS 5/1-303(a) (West 2010)).

Under the MIPA, SFR was to pay Warren Hill an earn out in years 2016, 2017 and 2018, which required repeated performance of payment by SFR. Statement of Undisputed Facts, at ¶8. When the parties calculated the earn out for 2016, it was calculated based on cash income received by VAP in calendar year 2016, not on an accrual basis. Statement of Undisputed Facts, at ¶14. Further, Warren Hill took affirmative steps to indicate its acceptance of the calculation of the earn out on a cash basis. For example, Jim Delaney, representing Warren Hill, sent SFR a spreadsheet calculating the 2016 earn out on a cash basis. Statement of Undisputed Facts, at ¶15. SFR paid the 2016 earn out to Warren Hill on a cash basis based on "revenues received" and "expenses paid" during calendar year 2016. Statement of Undisputed Facts, at ¶16. Warren Hill accepted the 2016 earn out payments and did not question the cash basis of the payments until after this litigation began. Statement of Undisputed Facts, at ¶16. In accepting the 2016 earn out

payment calculated on a cash basis without objection, Warren Hill demonstrated that the intent of the parties was to require calculation of the earn out on a cash basis and not an accrual basis.

## III. REQUESTED RELIEF

For the foregoing reasons, SFR respectfully requests that this Court grant partial summary judgment in its favor determining that Section 1.2(d) of the MIPA required the earn out payments to be calculated on the cash basis of accounting, and the earn out payments shall be calculated solely on VAP's revenue, and not the revenue of its affiliates, BSF or BCM.

WHITE AND WILLIAMS LLP

BY: _____
Michael N. Onufrak
Thomas M. Pinney
1650 Market Street | One Liberty Place,
Suite 1800 |
Philadelphia, PA 19103-7395
Phone: 215.864.7174
Attorneys for Defendant,
SFR Equities, LLC

Dated: November 20, 2018

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing documents

1)     Motion for Partial Summary Judgment;

2)     Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment;

3)     Declaration of Gene Harris; and

4)     Declaration of Brian F. Hynes

were filed under seal with the Court and served on the following counsel of record by email and U.S. Mail:

> Gregory S. Voshell, Esquire
> Elliott Greenleaf
> 925 Harvest Drive
> P.O. Box 3010
> Blue Bell, PA 19422

**WHITE AND WILLIAMS LLP**

BY: _____
Michael N. Onufrak
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
Phone: 215.864.7174
Attorney for Defendant,
SFR Equities, LLC

Dated: November 20, 2018