IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
| Plaintiff, | : 2:18-01228-HB |
| v. | : |
| SFR EQUITIES, LLC, | : |
| Defendant. | : |

**DEFENDANT SFR EQUITIES, LLC'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant SFR Equities, LLC ("SFR") respectfully submits this Memorandum of Law in Reply to the brief filed by plaintiff Warren Hill, LLC ("Warren Hill") in opposition to SFR's Motion for Partial Summary Judgment.

SFR's Motion for Partial Summary Judgment is a straightforward motion, simply seeking to have this Court interpret a contract between two sophisticated parties, represented by counsel, containing an integration clause. Specifically, SFR's motion merely asks the court to interpret two separate provisions of the Membership Interest Purchase Agreement ("MIPA"), an agreement governing the acquisition of a partial interest in Vendor Assistance Program, LLC ("VAP") by and between Warren Hill and SFR, among others. First, SFR's motion asks this Court to interpret how "Revenue" is defined and calculated under the terms of the MIPA, for purposes of assessing how the MIPA's "Earnout" is calculated.[1]

---

[1] As a general matter, an earnout provision is a "contractual provision in a merger [or other acquisition] agreement that creates a contingent payment obligation for the acquirer. The contingency is payable upon the seller achieving certain targets, financial or nonfinancial, during the post-closing period. From the point of view of the buyer and seller, the goal of the earnout is to overcome significant valuation differences that may come between the parties during negotiations and prevent them from reaching agreement."  Brian J.M. Quinn, *Putting Your*

Second, SFR asks this Court to determine that a "cash basis" is the proper accounting method for performing calculations under the MIPA, in accordance with the MIPA's provisions. In opposition to this motion, Warren Hill attempts to confuse the issues by improperly interjecting extensive unrelated factual and legal material, and arguing facts and issues unrelated to this motion, in an attempt to dissuade the Court from deciding issues squarely within the Court's purview. As detailed in SFR's principal brief, and further supported herein, SFR is entitled to partial summary judgment on the definition of "revenue" and on the proper method of accounting under the agreement.

### A. The MIPA Does Not Include Fees Earned by the Bluestone Entities as part of the Earnout

The definition of "Revenue" under the MIPA does not include fees earned by other entities.

Section 1.2 of the MIPA defines the purchase price associated with SFR's purchase of VAP from Warren Hill. Included in this section is the earnout provision, which provides as follows:

> (d) Further, for each of the three years following the Closing Date, [SFR] shall . . . pay [Warren Hill] an amount equal to 50% of VAP's Net Income (as defined below allocable to the Interests for such year. "Net Income" is defined to mean (i) the sum of (A) any and all fees earned by VAP in its capacity as manager or administrator of (1) the vendor assistance trust and/or (2) any other trust or account maintained in the course of VAP's business . . . .

<u>Statement of Undisputed Material Facts</u>, at ¶8.

Under the terms of the MIPA, "earned" is undefined. However, Illinois courts have relied upon Black's Law Dictionary to define "earn" as "[t]o acquire by labor, service or performance . . . to merit or deserve . . . ." *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d

---

*Money Where Your Mouth Is: The Performance of Earnouts in Corporate Acquisitions*, 81 U. Cin. L. Rev. 127, 133 (2012).

-3-

614, 623 (1991) (citing Black's Law Dictionary 508 (6th ed. 1990)). Black's Law Dictionary also specifies that "earned" means "to merit or deserve, as for labor or service. To do that which entitles one to a reward, whether the reward is received or not; to acquire by labor, service or performance." Black's Law Dictionary 508 (6th ed. 1990). Within the context of taxation, income is "taxed to him who earns it . . . through his own labor and skill and the utilization of his own capital . . . ." *Comm'r v. Culbertson*, 337 U.S. 733, 740 (1949); *see also Comm'r v. Banks*, 543 U.S. 426, 433-34 (2005) (principle that gains should be taxed "to those who earned them" is "a maxim we have called 'the first principle of income taxation'"). Within the corporate context, "corporate earnings" have been defined as "[t]he book income as reported to the shareholders which is adjusted for distortions in the current and prior years created by nonrecurring-type gains and losses or by use or correction of inconsistent or erroneous accounting practices." *See, e.g.,* 61 Pa. Code § 155.22 (2018).



22098910v.2





As highlighted fully in SFR's Motion for Partial Summary Judgment, Warren Hill is a sophisticated party that was represented by counsel in the negotiation of the MIPA, resulting in a contract containing an integration clause. Under these circumstances, the "four corners" rule applies, and extrinsic evidence may not be considered in interpreting the contract. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007) (*quoting Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882 (Ill. 1999)). There is no provision of the MIPA that prevented VAP from establishing affiliated corporate entities to develop its business as it saw fit (indeed, VAP is not a party to the earnout provisions of the MIPA). There is not even a requirement in the MIPA that VAP continue to operate as a going concern. Further, there is no provision of the MIPA that provides that Warren Hill is entitled to earnings of companies other than VAP. Therefore, this Court should grant partial summary judgment in favor of SFR.

22098910v.2

B.  **The Illinois Vendor Payment Program Does Not Prohibit the Assignment of Fees or Transfer of Trust Certificates**

Although not relevant for purposes of evaluating Warren Hill's rights against SFR under the MIPA, Warren Hill misinterprets the terms of the State of Illinois vendor payment program which are applicable only to VAP.

The terms of the Vendor Payment Program (the "Program") govern the process by which the State of Illinois pays its vendors. (Pl. Opp., Ex. 9, p. 1). As a result of a cash flow deficit and an inability to pay vendors, the State of Illinois implemented a program to give qualified institutions the opportunity to purchase outstanding accounts receivable from vendors of the State. *Id.*

Section I defines "Assigned Receivable" as follows:

"[T]he Base Invoice Amount of a Qualified Account Receivable and any associated assigned penalties due, currently or in the future, in accordance with the Prompt Payment Act. An Assigned Receivable shall be subject to an Assignment Agreement where no prior assignment of the Account Receivable is reflected in the State Comptroller's payment system and where the Account Receivable for the Base Invoice Amount in the state Comptroller's payment system identifies the Qualified Purchaser."

(Pl. Opp., Ex. 9, p. 2). Thus, "Assigned Receivable" is concerned with the purchased receivable account from a vendor to the State of Illinois, subject to an "Assignment Agreement."

As noted by Warren Hill, under Section II.5 of the terms of the Program, "[a]n Assigned Receivable (or any interest therein) may not be subsequently assigned, sold or otherwise transferred . . . ." However, this provision does not apply to the use of a credit facility. Specifically, Section II.6 of the Program Terms states as follows:

"[n]otwithstanding the foregoing provisions of Section II . . . the Assigned Receivables may be pledged as collateral to a person or entity . . . for the purpose of securing a credit facility solely for the purpose of purchasing Qualified Accounts Receivable, and such collateralization as well as the exercise by such person or entity of its remedies with respect to the Assigned Receivables pledged to it as collateral under applicable law shall not be considered an assignment, sale

-6-

or transfer necessitating the prior execution and delivery to the State of a Qualified Purchaser Designation with respect to such person or entity. . . .

(Pl. Opp., Ex. 9, p. 10).

In the instant matter, VAP has not assigned any Accounts Receivable as defined by the Program. Instead, the Receivables were purchased through the trusts utilizing loans from various financial institutions secured by the trust assets in compliance with Section II.6 of the Program Terms.

Furthermore, VAP has not been deemed to be out of compliance by the State of Illinois Comptroller or the Department of Central Management Services. The Program Terms specifically require the submission of monthly written reports to the State Comptroller, and the Program Terms subject Qualified Purchasers (including VAP) to review by the Department of Central Management Services. (Pl. Opp., Ex. 9, p. 12). There is no allegation that VAP failed to comply with its reporting requirements, or otherwise was deemed out of compliance with the Program by either the State Comptroller or the Department of Central Management Services, nor can there be.

Finally, even if VAP were somehow out of compliance with the terms of the program, this is not the appropriate forum to determine VAP's compliance. The requirements of prudential standing normally prohibit a plaintiff from asserting the legal claims of third parties. *See, e.g., Rawoof v. Texor Petrolium Co.*, 521 F.3d 750, 756 (7th Cir. 2008) ("every action shall be prosecuted by the real party in interest"); *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (a plaintiff ordinarily "cannot rest his claim to relief on the legal rights or interests of third parties"); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977) ("In the ordinary case, a party is denied standing to assert the rights of third persons"); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (expressing a "reluctance to exert

judicial power when a plaintiff's claim to relief rests on the legal rights of third parties"). Neither VAP nor the State of Illinois are a party to this lawsuit. VAP is not controlled by SFR, who only controls one of the six seats on VAP's board. Warren Hill is also not a vendor who was impacted by VAP's participation in the Program. If Warren Hill seeks to challenge the propriety of VAP's participation in the Program, it should appropriately seek relief against VAP or the State of Illinois, not SFR. Warren Hill's attempt to have this Court declare VAP out of compliance with the State of Illinois's Program is a violation of the prudential standing requirements by attempting to litigate VAP's rights *vis a vis* the State of Illinois, without having either party present.

### C. Warren Hill's Argument about Valid Assignments Has No Bearing on the MIPA

Warren Hill's argument that the assignment of management duties to BSF and/or BCM has no bearing on the MIPA's Earnout provision is also without merit. Warren Hill seems to argue that, by virtue of being in a position where it is able assign management duties to BSF and/or BCM, VAP must have, in effect, earned those fees itself despite not actually providing any of the services.

In addition to running contrary to the legal definition of "earn," discussed *supra*, there is also no support for this position in the case law cited by Warren Hill. An assignment "is a transfer of some identifiable property, *claim, or right* from the assignor to the assignee . . . ." *Litwin v. Timbercrest Estates, Inc.*, 37 Ill. App. 3d 956, 958 (1976) (emphasis added). While VAP may have had the *right* to *earn* certain fees through administration of the trusts, VAP assigned that right to BSF, who undertook the work required to earn various trust fees by actually doing the administration. By assigning these duties to BSF, VAP was not in a position to earn income itself from these assigned duties.

Furthermore, the transfer of various trust certificates and related management duties to BCM also cannot be found to be income earned by VAP. The trust certificates entitle the holder to various payouts. As VAP was not the holder, it had no right to any income or fees related to those certificates.

Warren Hill's reliance on the "assignment of income" doctrine, which is a doctrine of tax law, is further misplaced. Under this doctrine, "taxpayers may not shift their tax liability by merely assigning income *that the taxpayer earned* to someone else." *Cole v. Comm'r*, 637 F.3d 767, 777 (7th Cir. 2011) (emphasis added). *Cole* involved the case of a *pro se* litigant who, *inter alia*, was a partner in a partnership group that earned over $1 million in taxable deposits in 2001 alone. In that matter, the Coles argued both that they had divested from the partnership and, in the alternative, that they had assigned the partnership's earned income to another entity. *See id.* at 772. However, *Cole* involved a matter where the partnership had *earned* its income by performing legal services *itself*, and sought to assign the proceeds that had been earned through performance of services. *See id.* at 769-70. In its opinion, the court held that the Coles had not divested from the partnership, and the partnership had earned the income at issue, thereby subjecting the Coles to tax liability. *See id.* at 776, 782. The Coles were prohibited from assigning their income because they had earned the income themselves. *See id.* at 772, 777 (discussing the tax consequences of the earned income assignment).

In the instant matter, VAP performed no actual work to earn the various income earned by BCM and BSF. As discussed extensively *supra*, various management duties were assigned to BSF as a result of its administration of the Program trusts, and revenue was earned by BCM via its position as the certificate holder. All the actions required to earn this income were performed

-9-

by BSF and BCM. VAP did nothing to earn this revenue, whether from a tax perspective or otherwise.

Therefore, because VAP did not earn the income at issue in this matter, VAP's position as an assignor has no bearing on the calculation of the Earnout under the MIPA.

### D. Warren Hill's Provides No Support for its Conclusion Regarding the Relationship between VAP and BSF/BCM

Warren Hill's argument that BCM and BSF can be characterized as subcontractors is belied by its own argument about assignments, and is made without any legal support.

Warren Hill argues that BCM and BSF are analogous to a subcontractor, whereby VAP earns a fee itself, and then pays an expense to BSF or BCM. This is belied by the assignment arrangement, discussed *supra*. As extensively covered herein, VAP has done nothing to earn the fees in dispute. VAP assigned management responsibilities to BSF or BCM. BSF or BCM is then the entity responsible for taking the requisite action to earn the fees by virtue of the assignment. This is unlike the *Cole* decision, cited by plaintiffs, where the Coles earned fees by providing legal services through a partnership, and after earning the fees for services rendered, attempted to transfer those fees to another entity which had no part in earning the fees. *See id.* at 770. Here, VAP did not earn the fees, and the right to the fees earned by the work of BSF or BSM was transferred to those respective entities. Consequently, as previously explained, VAP has not earned the fees at issue itself, and Warren Hill is not entitled to those fees as part of the MIPA Earnout.

### E. The Phrase "Allocable to the Interests" Has No Bearing on Net Income

The phrase "allocable to the Interests" has no bearing on the calculation of Net Income, which is specifically prescribed by the MIPA. Instead, the plain reading of this clause only serves to limit the amount of VAP's net income which is subject to the Earnout.

In Illinois, contracts are to "be interpreted as a whole, in a way that gives effect to all terms, in the light of their ordinary and natural meanings." *Lasalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996) (citing *In re Halas*, 470 N.E.2d 960, 965 (Ill. 1984)). "When the terms of the contract are clear, the court must ascertain that intent solely from the language of the agreement." *Id.* (citing *Lathrop v. Bell Federal Savings & Loan Ass'n*, 68 Ill. 2d 375 (1977)); *see also Travelers Home & Marine Ins. Co. v. Walsh*, 2017 U.S. Dist. LEXIS 35841, at *4 (N.D. Ill. March 14, 2017).

The MIPA preamble defines "Interests" as the "33.246% of the membership interests" owned by Warren Hill prior to the execution of the MIPA, which was purchased by SFR. Statement of Material Facts, Exhibit "A," at 1. The Earnout clause provides that "for each of the three years following the Closing Date, Purchaser shall . . . pay Seller an amount equal to 50% of VAP's Net Income (as defined below) *allocable to the Interests* for such year." *Id.* at 2. (emphasis added). This "allocable to the Interests" clause serves to provide a basis for the allocation of a percentage of Net Income that is subject to the Earnout calculation. Specifically, this clause requires that the Earnout provide "50% of VAP's Net Income . . . allocable to the [33.246% of the membership interests transferred to SFR]." *Id.* Therefore, this clause provides that the calculation of the Earnout is as follows: Earnout = 50% of VAP Net Income (as defined by the MIPA) * 33.246%. Accordingly, SFR is correct to exclude revenue earned by BCM and BSF from the Earnout calculation.

This clause has no bearing on the definition of "earn," as provided in the MIPA. It only relates to the interests sold by Warren Hill to SFR. SFR's decision to hold a membership interest in BCM or BSF has no bearing on the amount of Net Income allocable to its membership interests in VAP, as both Net Income and Interests are specifically defined by the MIPA and

22098910v.2

relating solely to VAP. Neither term addresses any income earned by other companies whatsoever in its definition. Under these circumstances, this clause has no bearing on VAP's earnings.

### F. The Instant Motion Is Timely under Federal Rule 56(b) and (d)

The instant motion is not premature under Federal Rules of Civil Procedure 56(b) and (d). Rule 56(b) provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery." F.R.Civ.P. 56(b). Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." F.R.Civ.P. 56(d).

"A partial summary judgment order entered in accordance with Rule 56(d) is not a final judgment but is merely a pretrial adjudication that certain issues are established for trial of a case." *FDIC v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994). A motion may be made at any time for summary judgment, and is not premature because discovery has not been completed and pretrial statements are not yet due. *See Alholm v. American S.S. Co.*, 144 F.3d 1172, 1998 AMC 2352, 2358 (8th Cir. 1998); *Groover v. Magnavox Co.*, 71 F.R.D. 638, 639 (W.D. Pa. 1976). In the event that additional time is required to secure evidentiary material, the Rules of Civil Procedure provide for an allowance of time to secure the required materials. *See Groover,* 71 F.R.D. at 639.

In the instant matter, Warren Hill seems to argue that this Motion is premature because it is attempting to engage in further discovery in an effort to pierce the corporate veil among VAP, BSF, and BCM. However, Warren Hill fails to explain how a decision piercing the corporate

veil will affect the calculation of the Earnout, or to even assert that such a decision would affect the Earnout whatsoever.  It further does not assert that a decision piercing the corporate veil would affect the appropriate accounting method to be employed under the MIPA.  Finally, it is not even clear that piercing the corporate veil would be proper among companies that have not been named as parties to this lawsuit, and Warren Hill has not briefed such issue.  *Cf. Rawoof v. Texor Petrolium Co.*, 521 F.3d 750, 756 (7th Cir. 2008) ("every action shall be prosecuted by the real party in interest"); *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (a plaintiff ordinarily "cannot rest his claim to relief on the legal rights or interests of third parties"); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977) ("In the ordinary case, a party is denied standing to assert the rights of third persons"); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (expressing a "reluctance to exert judicial power when a plaintiff's claim to relief rests on the legal rights of third parties").  Consequently, the discovery necessary for Warren Hill to complete its piercing the corporate veil claim has no apparent bearing on the instant motion, and Warren Hill's assertion that discovery is necessary on this issue should be disregarded by the Court for purposes of this Motion.

### G. The Plain Language of the MIPA Requires Calculating the Earnout on A Cash Basis of Accounting

Finally, Warren Hill's argument that a "hybrid" interpretation of accounting completely belies the natural language of the MIPA.  Instead, a plain reading of the MIPA requires that a cash basis be employed.

In the interpretation of a contract, a court is to presume that language of the contract is purposeful.  In Illinois, a Court is to interpret a contract "in a way that gives effect to all terms, in light of their ordinary and natural meanings."  *Lasalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996), *see also Sunstar, Inc. v. Alberto-Culver Co.*, 2003 U.S. Dist.

LEXIS 17431, at *9 (N.D. Ill. September 29, 2003) ("a contract must be interpreted to give effect to all terms of the contract"). "The Court must give effect, to the extent possible, to all contractual provisions, reviewing each in light of all of the others." *Super Stop Petroleum, Inc. v. Clark Retail Enters.*, 308 B.R. 869, 887 (N.D. Ill. Bankr. 2004) (citing *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996)). Courts "are not free to cast aside the agreed upon terms of a contract . . . ." *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 421-22 (7th Cir. 1998).

Warren Hill argues that the language "fees earned" in the MIPA is itself an accrual concept, requiring at that an accrual or hybrid accounting concept be employed. In effect, Warren Hill is arguing that, any time earnings are ever at issue in a contract, an accrual basis of accounting must be employed, at least as to the earnings.

Warren Hill provides no support in law for this interpretation. More importantly, in this instance, Warren Hill's interpretation runs contrary to the plain language of the MIPA, as it asks the Court to disregard the plain application of certain MIPA terms. As explained in SFR's principal brief, Section 1.2(d) of the MIPA (the provision specifically governing the calculation of the Earnout) provides that, "[f]or purposes of [the MIPA], all Revenues are recognized when they are **received** by VAP, and all Expenses are recognized when they are **paid** by VAP." Statement of Material Facts, Exhibit "A," at p. 3 (emphasis added). "Revenue" is capitalized in the MIPA, reflecting that it is a defined term.

Section 1.2(d) further defines "Revenue" as "Items (A) through (D) of clause (i) of the preceding sentence." *Id.* The language specifically cited by Warren Hill in support of its argument for the application of accrual concepts ("fees earned") is included in items (A) and (C) of that preceding sentence that defines "Revenue." Therefore, the MIPA states that "Revenues"

are "recognized when received," and specifically defines "fees earned" as "Revenue." The only natural reading of this clause is that fees earned, as Revenue, are to be recognized under Section 1.2(d) when they are received. Any alternate reading would require the Court to either disregard the clause "Revenues are recognized when they are received," or else disregard that "fees earned" are specifically included within the definition of "Revenue." Such a construction cannot be supported by the MIPA under the principles of Illinois contract interpretation, and thus should be rejected by the Court.

When "the terms of a contract are clear, the court must ascertain that intent solely from the language of the agreement." *Lasalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996). Here, Warren Hill also asks the Court to infer ambiguity from Schedule 1.2(d) of the MIPA, which is identified as an illustration of "examples of the calculation and payment of VAP's Net Income allocable to the Interests." This schedule; however, provides no information about the appropriate method of accounting. Instead, it is a potential illustration of the calculation of the Earnout, discussed *supra* (Earnout = 50% of VAP Net Income (as defined by the MIPA) * 33.246%). As an example calculation, it provides no information about how the numbers included in the example were reached, or even if the numbers relate to any real world figures whatsoever. This schedule injects no ambiguity into the contract itself, and provides no basis for examining extrinsic evidence to muddle what are otherwise clear contractual provisions.

Therefore, this Court should grant partial summary judgment to SFR and determine that the MIPA requires the Earnout to be paid according to a cash basis of accounting.

### H. Conclusion

For the reasons stated above, SFR Equities, LLC respectfully requests that this Court grant its Motion for Partial Summary Judgment.

-15-

        Respectfully submitted,

        WHITE AND WILLIAMS LLP

BY:   /s/ Michael N. Onufrak
       Michael N. Onufrak
       Thomas Pinney
       1650 Market Street
       One Liberty Place | Suite 1800
       Philadelphia, PA 19103-7395
       215-864-7000
       onufrakm@whiteandwilliams.com
       pinneyt@whiteandwilliams.com
       *Attorneys for Defendant,*
       *SFR Equities, LLC*

Dated: January 7, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
| Plaintiff, | : 2:18-01228-HB |
| v. | : |
| SFR EQUITIES, LLC, | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Michael N. Onufrak, hereby certify that on this 7th day of January, 2019, I caused the foregoing Reply Brief in Further Support of Defendant's Motion to Dismiss to be filed and served upon the following electronically by the Court's ECF system.

> Gregory S. Voshell
> Thomas B. Helbig, Jr.
> Elliot Greenleaf, P.C.
> 925 Harvest Drive, Suite 300
> Blue Bell, PA 19422

                                                                            /s/Michael N. Onufrak
                                                                              Michael N. Onufrak