IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN HILL, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SFR EQUITIES, LLC | : | NO. 18-1228 |

MEMORANDUM

Bartle, J.  January 8, 2019

Plaintiff Warren Hill, LLC has brought this diversity action against defendant SFR Equities, LLC, in which plaintiff seeks damages for breach of contract. Before the court is the motion of plaintiff for leave to amend its complaint under Rule 15(a) of the Federal Rules of Civil Procedure to supplement its claim for damages for an additional period and to add a claim for conversion.

In the Membership Interest Purchase Agreement at issue (hereinafter "contract"), attached to the original complaint, defendant agreed to purchase plaintiff's equity stake in a company named Vendor Assistance Program, LLC, ("VAP"). The State of Illinois has approved VAP to participate in its Vendor Payment Program in which VAP purchases receivables from vendors that are owed money by the State. VAP thereafter collects payments on the receivables directly from the State, along with penalties and interest.

Defendant, as part of its contract with plaintiff, agreed to make a series of payments to plaintiff, including up front and "earnout" payments, in exchange for plaintiff's ownership interest in VAP. The earnout payments are calculated based on a formula in the contract that entitles plaintiff to a percentage of VAP's "Net Income" for a period of years. The contract requires defendant to make earnout payments for three years following the execution of the agreement and also pay plaintiff a set percentage of money that is released over time from reserve accounts that VAP maintains. Plaintiff alleges that defendant improperly calculated the 2017 earnout payment thereby paying less than what was required under the contract and that defendant had not yet made any payments to plaintiff from VAP's reserve accounts.

Defendant does not challenge the proposed amended complaint insofar as it seeks to add a claim for the earnout payment due for 2018. However, it opposes plaintiff's motion, on the ground of futility, to amend its complaint to state a claim for conversion of money it deems to be owed.

I

Rule 15(a) allows a party to amend its pleadings before trial with leave of court, and the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Nonetheless, the court need not grant such leave in the presence

of "undue delay, bad faith or dilatory motive on the part of the movant," where amendment would cause "undue prejudice to the opposing party," or where amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).  Granting leave to amend would be futile where the plaintiff has failed to state a claim upon which relief can be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.  We must therefore determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

II

The basic issue before the court is whether money can be the subject of a conversion claim under the facts alleged in the proposed amended complaint.  The parties agree that the

court should apply the substantive law of Illinois.  We focus on the seminal decision of the Supreme Court of Illinois in In re Thebus, 483 N.E.2d 1258 (Ill. 1985), which dealt with the question of conversion of money.  There, the Administrator for the Attorney Registration and Disciplinary Commission filed a complaint before the Hearing Board seeking to disbar an attorney who had pleaded guilty to failing to pay to the Internal Revenue Service funds he withheld from his employees' paychecks for their federal income taxes.  The Administrator, not satisfied with the result at the Hearing Board level, thereafter appealed to the Supreme Court of Illinois.  The Administrator argued that the attorney's conduct constituted conversion and thus warranted disbarment.  Id. at 1259-60.

The Court adopted the Second Restatement of Torts' definition that "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Id. at 1260.  The Court acknowledged that money may be the subject of a conversion claim if it can be described as "specific chattel."  Id.  However, the Court explained that, "an action for a conversion of funds may not be maintained to satisfy a mere obligation to pay money."  Id.

The Court characterized the funds at issue as a general debt to the government and therefore "not a specified identifiable fund capable of being the subject of a conversion claim." Id. at 1261. The funds were not an identifiable sum of money because they merely accrued over time in defendant's general checking account rather than originating from a particular source or being held in a separate account. Id.

In Loman v. Freeman, 890 N.E.2d 446, 461 (Ill. 2008), a case involving a physical injury to a horse, the Supreme Court of Illinois explained that to prove conversion, a plaintiff must establish that "(1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the property without authorization."

III

Defendant argues that plaintiff has not stated a claim for conversion in its proposed amended complaint because the 2017 and 2018 earnout payments at issue: (1) "come from an obligation to pay money"; (2) are "not "specific and identifiable"; and (3) are "conditional and attenuated, not absolute and immediate."

What plaintiff seeks here is a payment of money due over several years under a formula set forth in its contract with defendant. The amount due is dependent on the receivables defendant has purchased from entities owed money by the State of Illinois and the money defendant recovers from the State of Illinois from time to time as a result of those receivables. The earnout payments represent a debt owed to plaintiff by defendant. Plaintiff and defendant created a debtor-creditor relationship under their contract when defendant agreed to pay plaintiff, including the earnout payments, as consideration for the sale to defendant of its ownership interest in VAP. The gravamen of this action involves a "mere obligation to pay money." The money here is not a "specific chattel" under Thebus and plaintiff may not maintain an action for conversion.

Virtually every case cited by the parties has articulated that a debtor-creditor relationship under a contract precludes a claim for conversion of money. Where a claim for conversion of money has been allowed to proceed, the relationships between the parties did not involve breach of contract as exists here.

In Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater, 668 N.E.2d 1129 (Ill. App. Ct. 1996), the plaintiff sought to recover funds that the defendant Bank had refused to distribute to it. Plaintiff was a third part beneficiary of an agreement

<mark>-6-</mark>

between a Trust and the Bank. The Trust made periodic payments to the Bank to repay a debt to the Bank, and the Bank thereafter sent plaintiff a percentage of the payments. Plaintiff alleged the Bank committed conversion when the Bank refused to distribute to plaintiff a percentage of the final payment from the Trust. The Bank defended on the basis of a later agreement between the Trust and the Bank to reduce the outstanding balance of the debt. Id. at 1131-32. The Appellate Court of Illinois, distinguishing this case from Thebus, held that the funds could be the subject of a conversion claim. The Court explicitly noted that the relationship between the plaintiff and the Bank was not one of a debtor and creditor. Instead, plaintiff was a beneficiary of the Trust and was not a party to the agreement between the Bank and the Trust. Id. at 1131.

In Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc., 806 N.E.2d 280 (Ill. App. Ct. 2004), the Appellate Court of Illinois upheld the trial court's grant of plaintiff's motion for summary judgment on its claim for conversion. There, a third party owed plaintiff sales commissions but had mistakenly paid them to defendant who refused to transfer the funds to plaintiff. The company owing the commission was now insolvent. Id. at 282-83. Citing Roderick and distinguishing Thebus, the Court held that the funds were an appropriate subject of a conversion claim. The

Court also distinguished the case from Thebus on the ground that the funds at issue did not represent a debt the defendant owed to plaintiff under a contract between them. Instead, the commissions constituted a specific fund owed to plaintiff by a third party which was now wrongfully in the possession of the defendant. Id.

In Chicago Dist. Council of Carpenters Welfare Fund v. Gleason & Fritzshall, 693 N.E.2d 412, (Ill. App. Ct. 1998), plaintiff alleged that defendants had converted a check made payable to both plaintiff and defendants. Plaintiff was a self-funded employee welfare benefit plan and defendants were a law firm and attorneys retained by a member of plaintiff Welfare Fund. The Welfare Fund provided money to its member while he was litigating a personal injury case, and the member had agreed to reimburse the Welfare Fund after the matter was decided. Id. at 412-13. When the member's case against the tortfeasor settled, the tortfeasor's insurance company sent a check to defendants for payment made out to the member, his attorneys, the Welfare Fund, and the Welfare Fund's insurance company. Defendants subsequently forged the signature of the Welfare Fund's coordinator and deposited the check in their account. Id. The Appellate Court of Illinois overturned the lower court's grant of summary judgment for defendants because the funds at issue were specific and identifiable as a portion of

the check.  Id. at 417.  Like in Roderick and Bill Marek's, the funds due to plaintiff were not the result of a debtor-creditor relationship between plaintiff and defendants.

Fonda v. Gen. Cas. Co. of Illinois, 665 N.E.2d 439, (Ill. App. Ct. 1996), also does not help plaintiff.  In this case the plaintiff, who was assigned the rights to a security agreement, had sued defendant to recover insurance proceeds.  The trial court entered judgment for the defendant, finding that plaintiff's action for conversion could not lie under Illinois law.  Id. at 441.  On appeal, the Appellate Court of Illinois reversed the trial court and remanded for entry of judgment in favor of plaintiff because plaintiff had proven his immediate right to the insurance proceeds.  Id. at 443-446.  In doing so, the Court acknowledged that "there is no debtor-creditor relationship between [plaintiff] and [defendant]."  Id. at 443.

In an unreported opinion, the United States District Court in Thompson v. Fajerstein, No. 08 C 3240, 2008 WL 4279983, at *2 (N.D. Ill. Sept. 17, 2008) denied defendant's motion to dismiss the conversion claim under Rule 12(b)(6).  Plaintiff had wired defendant money to purchase a diamond on plaintiff's behalf from a third party.  Defendant did not transfer the money to the owner of the diamond to complete the transaction and refused to return the money.  Id.  Again, there was no debtor-creditor relationship between plaintiff and defendant.

The Appellate Court of Illinois' recent decision in <u>Wei Quan v. Arcotech Uniexpat, Inc.</u>, 2018 IL App (1st) 180227 is consistent with these cases. Plaintiff had paid the defendant corporation to secure him an internship, which the corporation failed to do. Plaintiff thereafter requested a refund on his payment, other than his nonrefundable security deposit. The corporation, at the direction of its president, did not make the refund and was later involuntarily dissolved by the Illinois Secretary of State. <u>Id.</u> at ¶ 4-6. Plaintiff then sued the corporation and its president. The Court, reversing the lower court, held that the plaintiff's claim for conversion against the president was actionable. The Court based its ruling in part on the fact that the funds were "not merely a debt or general obligation [of the president] to pay money." The court stated that defendant

> never had any individual debt or obligation
> to plaintiff, and thus no debtor-creditor
> relationship existed between plaintiff and
> [defendant]. The thrust of plaintiff's
> complaint is that [defendant] exercised
> unauthorized control over money legally due
> plaintiff and kept that money for himself
> when he refused to authorize [the company]
> to refund the money due plaintiff.

2018 IL App (1st) 180227, ¶ 15.

All of these cases on which plaintiff relies are distinguishable from the claim for conversion asserted here. In contrast to those cases, the relationship between plaintiff and

-10-

defendant before this court is one of debtor-creditor under a contract between them.

IV

Plaintiff's conversion claim also fails because the right to the earnout payments under the contract between the parties is "conditional and attenuated" and not "absolute and immediate." DeGeer v. Gillis, 707 F. Supp. 2d 784, 791 (N.D. Ill. 2010). The alleged facts here are similar to those in DeGeer. There, plaintiff asserted a claim for conversion alleging that defendants, partners of the managing consulting firm that he had recently joined, were withholding bonus money owed to him pursuant to their employment agreement. Id. at 788. The court held that plaintiff had not stated a claim for conversion and dismissed the count under Rule 12(b)(6) because receipt of the bonus was contingent upon the company's financial performance, and the amount of the bonus was dependent on a specific formula. The funds therefore did not belong to plaintiff at all times, and his right to the bonus was "conditional and attenuated, not absolute and immediate." Id. at 791.

We agree with defendant's characterization that the earnout payments in this case are "conditional and attenuated" as in DeGeer. Although plaintiff in the present action is entitled to payment of a percentage of VAP's "Net Income" under

the purchase agreement, plaintiff will receive money only if VAP is successful enough such that the revenues are greater than the expenses in the given year. VAP's entire business is premised on the fact that it provides funds to companies who are creditors of the State of Illinois because the State does not pay its debts quickly enough to meet the creditors' needs. VAP earns revenue when Illinois pays VAP on the receivables VAP has purchased, along with penalties and interest. It is therefore impossible to know what if any profit VAP may make on its business in any given year, thus rendering plaintiff's entitlement under the contract "conditional and attenuated."

V

We further agree with defendant that plaintiff's claim for conversion is precluded because the funds at issue are not alleged to be a "specific and identifiable" chattel. See Thebus, 483 N.E.2d at 1260. While plaintiff correctly points out that funds need not be segregated or kept in a separate account in order to be identifiable, this argument does not carry the day here. Bill Marek's, 806 N.E.2d at 287. In support of its claim, plaintiff relies on DeGeer, Bill Marek's, Roderick and Wei Quan.

Each of these cases, however, is distinguishable from the present case because those plaintiffs identified not only the specific amount due but also the sources or locations of the

funds at issue.  The funds plaintiffs sought to recover in both
Roderick and Bill Marek's were identifiable as a specific sum
transferred to defendants by third parties.  668 N.E.2d at 1135;
806 N.E.2d at 286.  The money in Wei Quan was an exact amount
paid to the company defendant by plaintiff and converted by its
president.  2018 IL App (1st) 180227, ¶ 15.  The courts in these
cases therefore all held that the funds could be the subject of
conversion claims.

In DeGeer, the court, holding that the plaintiff had
not stated a claim for conversion for other reasons,
acknowledged that the plaintiff had described the funds at issue
as a "specific chattel."  707 F. Supp. 2d at 790.  The court
agreed that "[d]efendants [were] correct in maintaining that
[plaintiff] must do more than assert a right to recover a
specific sum of money," but held that plaintiff had done so
because "he allege[d] that his bonus [was] included along with
other funds in a particular bank account."  Id. at 790.

By contrast, plaintiff here has not done "more than
assert a right to recover a specific sum of money" that
defendant allegedly owes plaintiff.  Plaintiff does not identify
these funds beyond an unknown amount to be calculated by a
contractual formula in part depending on VAP's profits.

VI

Plaintiff has not stated a claim for conversion under Illinois law. Accordingly, its motion to amend the complaint in this regard will be denied as futile under Rule 15(a).