# EXHIBIT 1

## PROPOSED SUR-REPLY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

WARREN HILL, LLC,

                              Plaintiff,

v.

SFR EQUITIES, LLC,

                              Defendant.

No. 2:18-01228-HB

---

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Warren Hill, LLC, through counsel, respectfully submits this Sur-Reply in further Opposition to Defendant SFR Equities, LLC's Motion for Partial Summary Judgment.

### I.      Only VAP Earns the Section 1.2(d) Management Fees at Issue.

SFR argues for the first time in its reply brief that VAP does not "earn" the management fees in dispute under Section 1.2(d) of the MIPA.  To do so, SFR claims that "VAP [is] no longer the entity responsible as 'manager or administrator' of these trusts" (Reply Br. at 4) and that Warren Hill did not "identify anywhere in th[e] record that VAP, itself, believes it has earned the fees at issue," (*id.* at 5).  These statements are not true. The record is summarized as follows:

- VAP's CEO testified that VAP is the only manager of the Trusts; that only VAP earns, and is entitled to, the management fees at issue; and that VAP has never sought to replace itself as manager (Ex. 3, Reape Dep. at 105:4-23, 113:12-16, 128:14-17, 154-55, 224:1-6, 180:6-181:20-182:22; Ex. 4, Wilson Dep. at 150:22-151:24, 224:19-225:8; Exs. 7-8, 11, 19 at 2);

- VAP receives the fees that it earns directly from the Trusts via wire transfer (Ex. 3, Reape Dep. at 152:3-153:13, 154:7-155:2), and each year, VAP's CEO, on behalf of VAP, requests that the Trustee (U.S. Bank) for each trust confirm the precise amount of fees that VAP

1

earned during the fiscal year, including origination fees (Exs. 7-8, 11);

- VAP remains the only manager of the trusts and VAP remains responsible for ensuring that the duties of manager are fulfilled. (*See* Ex. 12, at §§ 2.01, 2.10(a); Ex. 13, at §§ 2.01, 3.01, 6.01; Ex. 14, at §§ 2.01, 3.01, 6.01; Ex. 15, at §§ 2.01, 2.10(a); Ex. 16, at §§ 2.01, 2.10(a); Ex. 17, at §§ 2.01, 3.01, 6.01; Ex. 18, at §§ 2.01, 3.01, 6.01.)  In fact, the board resolutions describing VAP-Bluestone transactions provide that VAP retains responsibility as manager.  (*See* Hynes Decl., Exs. K-P, at 1 (stating that "(a) VAP retain[s] responsibility for the Trust").); and

- VAP holds itself out to the State of Illinois as earning the fees at issue,[1] and has neither informed the State of Illinois as to the existence of the Bluestone entities, nor obtained the Qualified Purchaser designation Bluestone would need to participate in the Program in place of VAP. (Ex. 3, Reape Dep. at 82:21-83:5, 198:1-3; Ex. 9, Program Terms at 4-6; Ex. 11).  Brian Hynes, a VAP founder, testified last year before the Illinois Commission on Government Forecasting and Accountability and did not mention Bluestone.[2]  Rather, Mr. Hynes testified about the receivables that *VAP* "purchased," the total amount of penalty fees that *VAP* had been paid, and the total amount still "owed to" *VAP*—VAP is "owed" this money because, as VAP's CEO testified, *VAP earned* it as manager.[3]

---

[1] *See* Illinois Comptroller Website, VAP Disclosures, *available at* https://illinoiscomptroller.gov/comptroller/assets/File/QualifiedPurchaserMonthlyReports/2018/October/VendorAssistanceProgramLLC_October%202018.pdf);

[2] The public testimony can be located via a "Meeting Audio" link at: http://cgfa.ilga.gov/MeetingInformation.aspx?id=108.  Mr. Hynes' testimony begins at minute 21:20 of the audio and concludes at approximately minute 44:00.

[3] Warren Hill contends that the record clearly demonstrates that VAP earned the fees at issue—VAP's own CEO agrees with Warren Hill's position and even SFR for a second time admits that VAP "earns fees for managing trusts[.]"  (Reply Br. at 3; *see* SFR St. of Alleged Facts ¶ 4.)  By contending

Simply put, VAP represents to U.S. Bank, the State of Illinois, VAP's auditors, state

vendors, and others that VAP is the qualified entity responsible for managing the trusts, that

VAP is earning the management fees in question, and that VAP is still owed outstanding

amounts by the State.  The contrary, litigation-driven narrative that SFR has delivered to this

Court is flatly refuted by the record.[4]

## II.     SFR's New Assignment Argument Is Contrary to the Law and the Record.

In sworn testimony, VAP/Bluestone executives described Bluestone as VAP's

subcontractor, (Ex. 3, Reape Dep. at 195:14; Ex. 4, Wilson Dep. at 252:5-10), establishing that

VAP earned and received fees, and then paid its downstream subcontractor.  SFR is attempting

to distance itself from this undisputed testimony by attempting, in its reply, to couch the

VAP/Bluestone relationship as involving some sort of "assignment." This argument fails.

*First*, SFR argues that the assignment does not violate the Program Terms because

Assigned Receivables may be pledged as collateral to secure an applicable credit facility under

Program Term § II.6.  (SFR Reply at 6-7.)   But, Warren Hill does not challenge the pledging of

Assigned Receivables as collateral to secure credit; instead, Warren Hill contends that the

subsequent, purported assignment of *VAP's interest in* the Assigned Receivables (*i.e.*, the right to

earn fees off of the Assigned Receivables) *to the Bluestone entities* violates Program Term § II.5.

*Second*, SFR contends that VAP has not "been deemed to be out of compliance by the

---

that Bluestone earns the fees for the first time in its reply, SFR undermines its motion by injecting new factual arguments that it claimed in its moving papers are not necessary for resolution of its motion.

[4] SFR contends that VAP has not reported a significant portion of the fees it earned on its tax returns and that this is somehow evidence that VAP did not earn the fees.  (SFR Reply Br. at 5.)  Not so. Warren Hill disputes that VAP's tax returns accurately accounted for the income VAP received from the trusts.  By way of example, BSF's CFO claimed that payments from VAP to BSF were an expense to VAP, yet VAP failed to report as income the money that went to pay such expense.  (Ex. 4, Wilson Dep. at 261:14-262:7.) Warren Hill's experts will address this at the time set forth in the Scheduling Order.

State of Illinois" and that any challenge to VAP's compliance with the Program Terms violates principles of prudential standing. (*Id.* at 7.) VAP, however, has never disclosed the existence of the Bluestone entities or the purported "assignment" to the State of Illinois—in fact, in recent disclosures to the State, VAP held itself out as receiving all of the fees at issue and distributing its earnings to its owners, not "assigning" the funds to an undisclosed company. (*See* Ex. 28; Ex. 5, Harris Dep. at 96:22-97:18; 98:2-99:8; *see also supra* Notes 1-2.)

In addition, Warren Hill is not seeking to "assert[] the legal claims of third parties." (SFR Reply Br. at 7.) Warren Hill is asserting its own rights under the MIPA. The legal and contractual problems implicated by SFR's proffered narrative are, *inter alia*, further proof of SFR's wrongful attempt to deflate the earnout payments and of Warren Hill's entitlement to funds that SFR sought to shelter in BSF and BCM. Moreover, these purported assignments in the Services Agreements would violate the Program Terms, and this Court cannot credit contracts that would violate the law. *Ill. Police v. FOP Troopers Lodge No. 41*, 323 Ill. App. 3d 322, 328, 256 Ill. Dec. 424, 429, 751 N.E.2d 1261, 1266 (2001) ("a court may refuse to enforce contracts that violate law or public policy."); *Chi. Food Mgmt., Inc. v. Chicago*, 163 Ill. App. 3d 638, 645, 114 Ill. Dec. 725, 729, 516 N.E.2d 880, 884 (1987) (same).

***Third***, SFR also claims, without a record citation, that VAP does not perform work and therefore it is permissible to allocate fees that VAP earns under the management agreements to the Bluestone entities. SFR's statement is inconsistent with VAP's disclosures to Illinois. (*See supra* Notes 1-2; Ex. 28.) In any event, it does not help SFR because the description is, if anything, consistent with the testimony of Mr. Reape and Mr. Wilson, who characterized Bluestone as VAP's subcontractor—VAP is the manager, it subcontracts various tasks to Bluestone, and it then pays Bluestone a fee for the alleged services.

### III.     The Section 1.2(d) Dispute is Distinct from the Section 1.2(e) Dispute.

Finally, the parties have a serious dispute concerning the trust certificates that SFR mentions, without context, throughout its reply. SFR attempts to shoehorn the trust certificate dispute into the parties' dispute over management fees in Section 1.2(d). But, the trust certificate dispute implicates a different pool of money—"Reserve Amounts"—that are covered by Section 1.2(e). (Supp. Ex. 3, Reape Dep. at 242:24-243:5 (differentiating between management fees (*i.e.*, senior and junior fees) and certificate fees).)[5] In general, the value of the trust certificates includes funds that, under the terms of the applicable trust, are not released until the Assigned Receivables held by the trust are fully paid off by the State of Illinois. Warren Hill contends that these trust certificates are "financial instruments," as contemplated by Section 1.2(e), and that the circumstances of their transfer to BCM were fraudulent. Warren Hill argues that SFR owes, or will owe, Warren Hill money under the terms of Section 1.2(e). SFR does not cite Section 1.2(e), nor does it seek judgment relating to that provision. The Court should deny as premature any attempt by SFR to obtain a judgment of any kind relating to the trust certificates.

### CONCLUSION

For these reasons, Warren Hill respectfully requests that this Court deny SFR's Motion.

                                        Respectfully submitted,

                                        */s/ Gregory S. Voshell*
                                        Gregory S. Voshell
                                        Thomas B. Helbig
                                        Elliott Greenleaf, P.C.
                                        925 Harvest Drive, Suite 300
                                        Blue Bell, PA 19422
                                        (215) 977-1000

Dated: January 10, 2019                 *Counsel for Plaintiff Warren Hill, LLC*

---

[5] Warren Hill submits these additional pages of Mr. Reape's testimony to clarify for the Court the distinction between management fees (referred to as senior/junior fees) and the trust certificates.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this date, I have caused a true and correct copy of the forgoing to be served upon each attorney of record via electronic mail, the Court's ECF system, email and U.S. mail.

/s/ Gregory S. Voshell
GREGORY S. VOSHELL

Dated: January 10, 2018

# SUPPLEMENTAL EXHIBIT 3

Page 242

1          Q     A few lines down from the senior fee, you

2     get to junior management fee, do you see that, 134,000

3     every month?

4          MR. LEVIN:   Three lines down.

5          A     It actually looks like these may be

6     calculations of some numbers.  Unfortunately this

7     document is practically unreadable.

8                    I think all of the numbers you're

9     showing us here are actually calculations off of

10    numbers that are listed in the top left.  I can't read

11    what those headings are.

12         MR. VOSHELL:  Q  I think it's an outstanding

13    monthly average of more than a $120 million, and that

14    wouldn't be payments certainly; right?

15         A     No.  That would be an outstanding

16    receivable balance or in the case of Citi where we

17    were paid off loan balance.

18         Q     Then under the junior fee you can see it

19    reads excess cash, and it says depends on timing of

20    state payments; correct?

21         A     Correct.

22         Q     So there is a cash line in this waterfall

23    schedule; right?

24         A     Just to be clear on that excess cash,



Page 243

1    under this particular facility, there is a senior fee,

2    there is a junior fee and potentially depending on the

3    mechanics and performance there can be cash above

4    that.  That would be a certificate fee.

5                    So I'm guessing that's what -- Again,

6    unfortunately this is barely legible, so it's hard for

7    me to figure out what all of the calculations are

8    here.

9         Q    You can put both of those aside.

10                        (W.H. Deposition Exhibit No. 36

11                         was marked for identification.)

12                    Mr. Reape, we placed in front of you a

13    document marked as Warren Hill 36.  Have you had a

14    chance to review the document

15        A    I have.

16        Q    Are you familiar with the document that's

17    in front of you as Exhibit 36?

18        A    It appears to be a printout of our CRM

19    system.

20        Q    What's the CRM stand for?

21        A    Client and Management is the CM.  Somebody

22    help we me.  Client Resource Management.

23        Q    Maybe customer?

24        A    Customer, yeah.  Client, Customer, it's

