



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | CIVIL ACTION |
| Plaintiff, | 2:18-01228-HB |
| v. | FILED |
| SFR EQUITIES, LLC, | FEB 2 2 2019 |
| Defendant. | KATE BARKMAN, Clerk |
| | By _____ Dep. Clerk |

## DEFENDANT SFR EQUITIES, LLC'S MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, FOR INTERLOCUTORY REVIEW

Defendant SFR Equities, LLC ("SFR") hereby moves this Court, pursuant to Local Rule 7.1(g), for reconsideration of its Order entered on February 8, 2019 Granting in part and Denying in part SFR's Motion for Partial Summary Judgment. Specifically, SFR requests that this Court revise its order of February 8, 2019 and enter an order granting partial summary judgment in favor of SFR determining that the plain meaning of the language of the MIPA requires the calculation and payment of the earnout based only on the revenue of Vendor Assistance Program, LLC, and not the revenues of its affiliates, Bluestone Capital Markets, LLC and Blue Stone Finance, LLC.

Alternatively, SFR moves that this Court certify its February 8, 2019 Order as involving a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from which may materially advance the ultimate termination of the litigation for such interlocutory appeal.

In support of this Motion for Reconsideration, SFR relies upon and respectfully refers the Court to the accompanying Memorandum of Law which is incorporated herein as though fully set forth at length.

WHITE AND WILLIAMS LLP

By: _____
Michael N. Onufrak
Thomas M. Pinney
1650 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 864-7174
Attorneys for Defendant
SFR Equities, LLC

Dated: February 22, 2019

22344378v 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN HILL, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | 2:18-01228-HB |
| v. | : | |
| SFR EQUITIES, LLC, | : | |
| Defendant. | : | |

**DEFENDANT SFR EQUITIES, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION, OR ALTERNATIVELY
FOR INTERLOCUTORY REVIEW**

SFR Equities, LLC ("SFR") respectfully submits this Memorandum of Law in Support of its Motion for Reconsideration.

## I.    SUMMARY OF ARGUMENT

SFR seeks reconsideration of this Court's February 8, 2018 Order Granting in part and Denying in part SFR's Motion for Partial Summary Judgment.  SFR seeks reconsideration of the Court's Order because the Court misconstrued the "Revenue" earned directly from the trusts by Vendor Assistance Program LLC's ("VAP") affiliates BlueStone Finance, LLC ("BSF") and Blue Stone Capital, LLC ("BCM") as "payments" made to BSF and BCM by VAP.  (Order at ¶2, ECF No. 62).

Abiding by the integration clause in the MIPA, SFR only submitted documents to the Court regarding the MIPA and various board resolutions and the like demonstrating the existence of BSF and BCM as affiliated companies separate from VAP.  Rather than limiting itself to arguing the terms of the MIPA as required by the integration clause and Illinois law, Warren Hill submitted voluminous extrinsic evidence plainly beyond the four corners of the MIPA.  Warren

Hill also submitted Services Agreements between VAP and its affiliates, BCM and BSF, to the Court.

The Services Agreements provide that VAP will act as the "collection agent" to receive revenue earned by BSF and BCM while they perform services for the trusts. The Services Agreements, which were effective as of November 1, 2017, contain an assignment of portions of VAP's trust management obligations to BSF and BCM. Consequently, BSF and BCM earned the revenues for providing those services to the trusts, not VAP. *See* (ECF No. 43, Exhs. 25-27 at Sec. 5).

The Court determined correctly that the Revenue for services provided by VAP's affiliates to the trusts arrived initially in VAP's bank account by wire transfer. (ECF No. 62, p. 4). However, the Court ignored the Services Agreements between the parties which provided that the obligation to provide the services that earned the Revenue were assigned to BCM and BSF, and therefore, the fees related to the provision of those services were assigned prior to arriving in VAP's bank account. (ECF No. 43, Exhs. 25-27 at Sec. 5). VAP served only as a collection agent for BCM and BSF. BCM and BSF earned the Revenue, declared the Revenue on their tax returns, and accounted for it on their books and records. VAP did not earn the Revenue, did not declare the Revenue on its tax return, and did not account for it on its books and records.

Once the Court decided to rely on extrinsic evidence, it should not have ignored the Services Agreements. If the Court considers the Services Agreements it can only conclude that the Revenue "paid" by VAP to BSF and BCM was actually "earned" by BSF and BCM in the first instance and should not properly be considered VAP's Revenue under the MIPA. At the

least, the Court should conclude there is ambiguity in the MIPA, and therefore a triable issue of fact, not properly resolvable on a motion for partial summary judgment.

SFR moved for partial summary judgment and asked the Court to determine that only Revenue earned by VAP was subject to the MIPA under its terms. There was no cross-motion for summary judgment seeking a contrary finding. The Court should have concluded that the Revenue of the affiliates must not be included in the earnout calculation based on the unambiguous language of the MIPA. Alternatively, if the Court determined that the MIPA was ambiguous and extrinsic evidence was necessary, the issue should still be resolved in favor of SFR according to the undisputed terms of the Services Agreements. Finally, at the very least, the issue should be reserved for trial, in the event that the Court is not persuaded by the terms of the Services Agreement.

## II.   ISSUES BEFORE THE COURT

A.   Did the Court commit a manifest error of fact and law by concluding based upon extrinsic evidence that VAP made "payments" to is affiliates while ignoring the Services Agreements which provided that VAP's affiliates earned their own Revenues?

*Suggested Answer*  Yes.

B.   Did the Court commit a manifest error of law by interpreting the MIPA against SFR and not reserving the issue for trial after the Court considered extrinsic evidence and the plaintiff did not cross move for summary judgment?

*Suggested Answer:* Yes.

C.   In the alternative, does the Court's February 8, 2019 order involve a controlling question of law where there is substantial ground for difference of opinion and where an immediate interlocutory appeal may materially advance the ultimate termination of the lawsuit?

*Suggested Answer.* Yes.

22344378v 2

III.    **ANALYSIS**

Local Rule 7.1(g) allows parties to file for reconsideration of a Court's order as long as it is "served and filed within fourteen (14) days after the entry of the order concerned, other than orders governed by Federal Rule of Civil Procedure 59(e)." E.D. Pa. Local R. 7.1(g). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Accordingly, a judgment or order may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: … (3) the need to correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through -- rightly or wrongly." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 236 (quoting *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted).

> A.    **THE COURT MADE A MANIFEST ERROR OF FACT AND LAW BY CONSIDERING EXTRINSIC EVIDENCE, BUT IF EXTRINSIC EVIDENCE IS TO BE CONSIDERED, THE COURT SHOULD NOT IGNORE THE SERVICES AGREEMENTS WHICH DICTATE THAT BSF AND BCM EARNED THEIR OWN REVENUE, NOT VAP**

If the Court is to purely examine the four corners of the MIPA, the only reasonable interpretation of "Revenue" is to include revenue earned by VAP, and to exclude revenue earned by other entities. BSF and BCM were not yet in existence when the MIPA was signed and no provision was made for including revenue earned by affiliates of VAP in the Revenue calculation.

It is well established under Illinois law that, "where parties formally include an integration clause in their contract (such as the one found at Section 6.1 of the MIPA), they are

-4-

explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *TAS Distrib Co. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007) (*quoting Air Safety, Inc v Teachers Realty Corp*, 706 N.E.2d 882 (Ill. 1999)). Furthermore, if a "contract is facially unambiguous and contains an integration clause, the 'four corners rule' applies, barring the consideration of extrinsic evidence." *Id.* (*citing Air Safety*, 185 Ill. 2d at 462). *See also Benedict v Fed Kemper Life Assurance Co*, 325 Ill. App. 3d 820, 823 (2001) ("In Illinois, contract interpretation follows the four corners doctrine so that we look only to the language of the contract to determine if it is susceptible to more than one meaning."). Because the MIPA contains an integration clause, the four-corners rule applies to this contract dispute.

The language of Section 1.2(d) of the MIPA is clear and unambiguous. Therefore, under Illinois law and the plain reading of the language in the MIPA, SFR was only required to calculate VAP's "Revenue" as expressly defined in the contract. The relevant provision of the MIPA is as follows:

> (d) Further, for each of the three years following the Closing Date, Purchaser shall, within 90 days of the end of such year, pay Seller an amount equal to 50% of VAP's Net Income (as defined below) allocable to the Interest for such year. "Net Income" is defined to mean (i) the sum of (A) any and all fees earned by VAP in its capacity as a manager or an administrator of (1) the Vendor Assistance Trust and/or (2) any other trust or account maintained in the course of VAP's business, (B) any and all interest income, (C) any and all fees earned from providing services to affiliates or third parties, and (D) any and all other revenues received by VAP other than the Reserve Amounts (as defined below), less (ii) the sum of (A) $50,000 per month for each month in which VAP's average outstanding receivables are greater than or equal to $50,000,000, (B) $25,000 per month for each month in which VAP's average outstanding receivables are less than $50,000,000, (C) interest paid by VAP on debt for which VAP is the debtor and any member of VAP is the lender solely to the extent that (1) such debt was outstanding as of the Closing Date, (2) the original

-5-

principal of such debt, in the aggregate, does not exceed $4,000,000, and (3) the interest rate to which such debt is subject does not exceed 12% per annum, and (D) any consulting fees paid to any member of VAP or any third party in exchange for introducing any new business opportunity to VAP, provided that such new business opportunities exclude any business involving any vendor, payee, program or party which VAP had previously investigated, transacted with or paid any consultant with respect to. Items (A) through (D) of clause (i) of the preceding sentence are herein defined as "Revenue", and items (A) through (D) of clause (ii) of the preceding sentence are herein defined as "Expenses".

(ECF No. 39, Statement of Undisputed Material Facts, ¶8).

Given the four corners rule, the above-quoted language is the sole basis for interpreting the MIPA, and extrinsic information, such as the flow of money between the State of Illinois, the various trusts, VAP and its affiliates, should not be considered in interpreting this language. The plain language of the MIPA did not prohibit members of VAP from creating new affiliates to provide services to the trusts or for any other purpose.[1] The MIPA did not entitle Warren Hill to be paid based on Revenue that VAP itself did not earn. Warren Hill expressly made VAP a party to the MIPA for certain clauses. However, nothing in the MIPA restricted VAP from conducting its business in any way that it saw fit. Once the MIPA was signed, VAP and its affiliates were free to determine the accounting of the Revenue each earned subject to the advice of their professional advisors.

In its opinion the Court agreed with SFR that, under Illinois law, a court may only look to the four corners of a contract when interpreting an integrated agreement. (ECF No. 62, p. 7). Nevertheless, the Court considered extrinsic evidence in coming to its interpretation of the relevant MIPA terms. The Court's construction of the MIPA relied on the flow of funds between VAP, the State of Illinois, the trusts, and BSF/BCM. (ECF No. 62, pp. 6, 10). The Court took

---

[1] VAP had one affiliate, Health Care Financial, LLC ("HCF") in existence prior to the parties' execution of the MIPA   HCF was party to some of the provisions of the MIPA   Yet, the parties did not include a provision in the MIPA mandating inclusion of revenue earned by affiliates within the earnout calculation

note of VAP's status as a "qualified purchaser" under Illinois law. But the vast majority of the complicated transactions between VAP, the State of Illinois, the trusts and VAP's affiliates have little to do with the Vendor Payment Program. The regulations of the Vendor Payment program cited by plaintiff do not purport to govern the trusts' relationship with VAP or its affiliates.

In its February 8, 2019 Order, while the Court correctly stated the law on the subject of contract interpretation, its factual conclusion that VAP made "payments" to its affiliates was a manifest error. Under Illinois law, "the meaning of a written contract is ordinarily a question of law and not one of fact." *Hufford v. Balk*, 497 N.E.2d 742, 744 (Ill. 1986). A court's "primary objective in construing a contract is to ascertain the intent of the parties and to give effect to that intent." *United Airlines, Inc. v Chicago*, 116 Ill. 2d 311, 318, (1987).

In its opinion, this Court concluded that "the MIPA contains an integration clause [and] we will not look beyond the MIPA's four corners to interpret its meaning." (ECF No. 62, p. 9).

Notwithstanding that statement, the Court found the following facts in its February 8, 2019 Opinion:

"The trust thereafter pays VAP via wire transfer the management fees VAP earned under the management agreements." (ECF No. 62, p.4). "VAP created the Bluestone entities to assist in its business operations." (ECF No. 62 at p. 6). "VAP compensates the Bluestone entities for certain services they provide to VAP and the trusts holding the accounts receivable." Id.

"The record is undisputed that VAP is the only manager of trusts holding the accounts receivable. The trusts continue to send fees to VAP as manager via wire transfer and the State of Illinois pays its debts. It is only thereafter that VAP compensates the Bluestone entities from these fees." (ECF No. 62, at 9-10).

The facts recited above are material and disputed to the extent they served as a basis for the Court's conclusion that VAP, not the affiliates, earned the Revenue and that VAP made "payments" of its Revenue to the affiliates. Based on the Court's analysis of extrinsic evidence of the flow of money between the trusts, VAP and its affiliates, as set forth above, the Court erroneously concluded as set forth in its Order at ¶(2) that VAP made "payments" to its affiliates and those payments constituted Revenues of VAP.

The Court ignored the Integration Clause in the MIPA when it concluded based on extrinsic evidence the flow of money between the State of Illinois, the trusts, VAP and VAP's affiliates that VAP made "payments" of VAP's Revenue to its affiliates after VAP earned the revenue in the first place.

The Court then invoked the integration clause to avoid considering the Services Agreements. Had the Court considered the Services Agreements, the Court's conclusion would be the opposite since the Services Agreements assigned the management services and the related right to earn the Revenues to its affiliates.

The Court made a manifest error of law by not applying the plain and ordinary meaning of the definition of "Revenue" set forth in Section 1.2(d) of the MIPA. The Court compounded the error by, at once considering extrinsic evidence but not the key Services Agreements between VAP and its affiliates which, if there was any ambiguity in the first place, clarify how Revenue was earned as between VAP and its affiliates in managing the trusts. The Court's conclusion that VAP made "payments" to its affiliate was a resulting manifest error of law or fact.

**B.    THE COURT COMMITTED A MANIFEST ERROR OF LAW BY DECIDING THE REVENUE ISSUE AGAINST SFR WHEN, AT MOST, THE COURT SHOULD HAVE RESERVED THE ISSUE FOR TRIAL.**

SFR's Motion for Partial Summary Judgment asked this Court to construe the term "Revenue" under the four corners of the MIPA, serving to narrow the issues for trial. Warren Hill did not cross move for summary judgment. The Court considered extrinsic evidence in making its decision. The Court should have concluded that the earnout language was clear, and Revenue earned by entities other than VAP was excluded from the earnout calculation. Alternatively, if the Court found that the earnout language contained ambiguity (i.e., the definition of "earned"), the Motion for Partial Summary Judgment should have been denied, and the issue should have been reserved for trial or a future summary judgment motion by Warren Hill.

Crucial to the question was the definition of the term "earned." Rather than rely on the MIPA's terms, the Court relied on its analysis of the flow of money between the State of Illinois, VAP, the trusts, and VAP's affiliates to justify its decision to include non-VAP earned Revenue in the earnout calculation. It follows that the Court must have found the definition of Revenue to be ambiguous in order to resort to extrinsic evidence to reach a decision. Normally a dispute over an ambiguous contract can only be decided by the finder of fact. *See Praxair, Inc v. Hinshaw & Culbertson*, 2000 U.S. Dist. LEXIS 3236, at *8-9 (N.D. Ill. March 9, 2000) (assessing whether contract ambiguity existed because such ambiguity would have created a triable issue of fact). Warren Hill's own opposition conceded that extrinsic evidence is only relevant in this matter if ambiguity was found in the MIPA. (ECF No. 43, p. 30) (stating that extrinsic evidence is only admissible upon a finding of ambiguity). Therefore, only if the Court first found the existence of ambiguity in the MIPA could the Court have considered extrinsic

-9-

evidence.  However, if an ambiguity is found, the interpretation of the contract terms then becomes a triable issue of fact.

Summary judgment is proper if pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).  In its motion, SFR sought an Order of Partial Summary Judgment on the construction of the term "Revenue" under the MIPA.  SFR's motion argued that the term "Revenue" itself created no ambiguity since it was grounded in the receipt of money in return for labor or services.  Such a definition is consistent with the various definitions under the Internal Revenue Code, and could be easily applied to non-party VAP's books and records to calculate the proper earnout owed by SFR to Warren Hill under the MIPA.

However, in the event that an ambiguity exists, SFR is in possession of extensive additional records which it is prepared to submit at trial or in response to a future summary judgment motion in support of its interpretation of the MIPA, such as books and accounting records that support its construction.  However, these materials were not submitted with its Motion for Partial Summary Judgment because such extrinsic evidence cannot be considered, but for a finding of ambiguity, and once an ambiguity is found, this matter is not appropriate for summary judgment.

Ultimately the construction of the MIPA reached by the Court cannot be supported by the plain language of the MIPA.  If the Court disagrees with SFR's construction of the MIPA, it necessarily must come to the conclusion that the MIPA earnout is ambiguous, which requires that the issue of the earnout's construction be resolved at trial.  As a result, it is apparent the

-10-

Court's opinion on this matter contains a manifest error of law. Therefore, SFR respectfully requests that this Court reconsider its February 8, 2019 order.

## IV.   ALTERNATIVELY, THIS ISSUE SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL

Alternatively, if this Court does not grant reconsideration for the reasons discussed above, the Court should certify this issue for interlocutory appeal. "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).

In this case, Warren Hill is a single purpose entity established for purposes of investing in VAP. *See* Excerpt from Deposition of James Delaney, a true and correct copy of which is attached hereto as **Exhibit "A"** ("Q. What is the business of Warren Hill? A. Warren Hill basically, invests . . . . Q. Has it invested in ventures other than VAP? A. To my knowledge, no"). Warren Hill conducts no other business aside from prosecuting this lawsuit. This Court's order effectively issued an interpretation of the MIPA which, while not final, may serve as the basis for the parties' ongoing performance under the MIPA, particularly with regard to the earnout payment due by March 31, 2019. However, if SFR is to make payment under the MIPA in accordance with the Court's interpretation of the MIPA earnout, and the Court's order ultimately is reversed on final appeal, it will serve to further complicate this lawsuit. Specifically, in that event, SFR will be required to pursue reimbursement of an overpayment from a company which may have no assets since it could distribute its assets to its members in the meantime. Thus, there is a substantial likelihood that any such overpayment will be

-11-

distributed pending final appeal, requiring extensive and protracted additional litigation to have

such funds returned, if those funds may be recovered at all.  If the Court instead certifies this

issue for appeal and stay the Order, it will allow this important issue to be expeditiously resolved

for the remaining future performance between the parties.  Thus, certification of the Court's

February 8, 2019 order for interlocutory appeal is appropriate under 28 U.S.C. § 1292(b).  If this

Court is not inclined to grant reconsideration of its decision on the merits, SFR requests that the

Court grant reconsideration by certifying its order for interlocutory appeal.

## V.    CONCLUSION

For the foregoing reasons, SFR respectfully requests that this Court grant reconsideration

of its February 8, 2019 order and opinion to the extent that it determined revenue earned by

Bluestone Capital Markets , LLC and Blue Stone Finance, LLC could not be excluded under the

terms of the parties' Membership Interest Purchase Agreement.  Alternatively, SFR respectfully

requests that the Court reconsider its opinion, and allow the issue of the definition of Revenue in

the MIPA to be decided at trial or certify the order for interlocutory appeal.


                                   WHITE AND WILLIAMS LLP


                          BY:    _____
                                   Michael N. Onufrak
                                   Thomas M. Pinney
                                   1650 Market Street ' One Liberty Place,
                                   Suite 1800 |
                                   Philadelphia, PA 19103-7395
                                   Phone: 215.864.7174
                                   Attorneys for Defendant
                                   SFR Equities, LLC


Dated:  February 22, 2019

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion for

Reconsideration, or Alternative for Interlocutory Appeal was electronically filed with the Court

via the CM/ECF Systems of the United States District Court for the Eastern District of

Pennsylvania and served electronically on all counsel of record.

**WHITE AND WILLIAMS LLP**

BY: _____

Michael N. Onufrak
Thomas M. Pinney
1650 Market Street ｜ One Liberty Place,
Suite 1800 '
Philadelphia, PA 19103-7395
Phone: 215.864.7174
Attorneys for Defendant,
SFR Equities, LLC

DATE: February 22, 2019

# EXHIBIT "A"

James Delaney
January 29, 2019

Page 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

— — — — — — — — — — — — —

WARREN HILL, LLC,                  :   CIVIL ACTION NO.
                                   :   01228-HB
            Plaintiff              :
                                   :
      vs.                          :
                                   :
SFR EQUITIES, LLC,                 :
                                   :
            Defendant              :

— — — — — — — — — — — — —

- - -

Tuesday, January 29, 2019

- - -

            Oral deposition of JAMES DELANEY was
taken pursuant to notice at Elliott Greenleaf, 925
Harvest Drive, Suite 300, Blue Bell, Pennsylvania,
before Nancy Carides, RPR, CRR and Notary Public, on
the above date, and commencing at 9:30 a.m.

- - -

STREHLOW & ASSOCIATES
FULL SERVICE COURT REPORTING AGENCY
54 Friends Lane - Suite 116
Newtown, Pennsylvania 18940
WWW.STREHLOWCOURTREPORTING.COM
(215) 504-4622

James Delaney
January 29, 2019

Page 8

1    and some consulting.

2            Q.      What is the business of J.D. Capital?

3            A.      Investing.

4            Q.      What is your relationship to Warren

5    Hill?

6            A.      Warren Hill, I work for my wife.

7    Warren Hill is a company that is owned by my wife and

8    Jason Cannon.

9            Q.      Does the name Warren Hill have any

10   particular meaning?

11           A.      Yes.

12           Q.      What is that?

13           A.      I mentioned earlier I live on Sorrell

14   Hill Road.  Jason lives on Warren Road.

15           Q.      So, it's a combination of the --

16           A.      Street names.

17           Q.      I see.  Are you a member or a manager

18   of Warren Hill, LLC?

19           A.      No.

20           Q.      Do you have any consulting agreement or

21   anything with Warren Hill?

22           A.      No.  I just do what my wife says.

23           Q.      What is the business of Warren Hill?

24           A.      Warren Hill, basically, invests.  It's

25   the same thing as J.D. Capital.  It invests.

James Delaney
January 29, 2019

Page 9

1          Q.      Has it invested in ventures other than
2     VAP?
3          A.      To my knowledge, no.
4          Q.      Is it conducting any business now,
5     other than this litigation?
6          A.      To my knowledge, no.
7          Q.      Do you have a financial stake in the
8     outcome of this litigation?
9          A.      If my wife allows me.
10         Q.      If there is a financial recovery from
11    the litigation, would it go to the members, which
12    would be Mr. Cannon and your wife?
13         A.      Yes.
14         Q.      So, your wife has a financial stake?
15         A.      Yeah.  And just to clarify, my wife is
16    not a direct owner.  A company called JESJAC,
17    J-E-S-J-A-C, is the owner of Warren Hill, with Jason
18    Cannon, and JESJAC is owned by my wife.
19         Q.      All right.  Well, I'll hand you what
20    we'll mark for identification purposes only as the
21    operating agreement for Warren Hill, which was
22    produced yesterday by Mr. Voshell.
23               MR. ONUFRAK:  We'll mark that for
24          identification as SFR-1.
25               (Document marked as Exhibit SFR-1 for

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | : CIVIL ACTION |
|   | : |
| Plaintiff, | : 2:18-01228-HB |
|   | : |
| v. | : |
|   | : |
| SFR EQUITIES, LLC, | : |
|   | : |
| Defendant. | : |
| | : |

### ORDER

**AND NOW**, this ___ day of _____, 2019, upon consideration of SFR Equities, LLC's Motion for Reconsideration of the Court's Order Granting in part and Denying in part SFR Equities, LLC's Motion for Partial Summary Judgment (ECF. No. 62), and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is therefore **ORDERED** that:

The earnout is based only on the Revenue earned by Vendor Assistance Program, LLC, not Revenue earned by Bluestone Capital Markets, LLC or Blue Stone Finance, LLC.

**IT IS SO ORDERED**.

**BY THE COURT:**

_____
                              **Bartle,      J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN HILL, LLC, | CIVIL ACTION |
| Plaintiff, | 2:18-01228-HB |
| v. | |
| SFR EQUITIES, LLC, | |
| Defendant. | |

## ALTERNATIVE ORDER

**AND NOW**, this ___ day of _____, 2019, upon consideration of SFR Equities, LLC's Motion for Reconsideration of the Court's Order Granting in part and Denying in part SFR Equities, LLC's Motion for Partial Summary Judgment (ECF. No. 62), and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED-IN-PART**.  It is therefore **ORDERED** that:

The Court's February 8, 2019 Order is certified for appeal as involving a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from which will materially advance the ultimate termination of the litigation.

**IT IS SO ORDERED**.

BY THE COURT:

_____

**Bartle,      J.**