# EXHIBIT 1

<u>**MEMBERSHIP INTEREST PURCHASE AGREEMENT**</u>

**THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT** (this "**Agreement**"), is made effective as of January 1, 2016, by and between SFR EQUITIES, LLC, a Florida limited liability company ("**Purchaser**"), WARREN HILL, LLC, a Delaware limited liability company ("**Seller**"), JACQUELINE DELANEY, an individual ("**Jacqueline**"), JASON CANNON, an individual ("**Jason**" and together with Jacqueline and Seller, collectively the "**Seller Parties**"), JAMES DELANEY, an individual ("**Jim**") (solely with respect to Sections 1.1, 4.1(a), 4.2, 4.3, 4.4(a) and 5.2), VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company ("**VAP**") (solely with respect to Sections 4.1(b), 4.4(b), 4.5, 4.7 and 5.4), HEALTHCARE FINANCE, LLC, an Illinois limited liability company ("**HCF**") (solely with respect to Sections 4.1(b) and 4.4(b)), and BRIAN HYNES, an individual ("**Hynes**") (solely with respect to Section 4.4(b)).

**WHEREAS**, Seller owns 33.246% of the membership interests of VAP (collectively, the "**Interests**"); and

**WHEREAS**, Seller desires to sell the Interests and Purchaser desires to purchase the Interests upon the terms and conditions hereinafter set forth.

**NOW THEREFORE**, in consideration of the mutual covenants, representations, warranties and agreements herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE 1
## PURCHASE AND SALE

**1.1**   **SALE OF INTERESTS.**   Subject to the terms and conditions of this Agreement, on the Closing Date (as defined below), Seller shall transfer to Purchaser all of Seller's right, title and interest in and to the Interests, free and clear of any liens or other encumbrances.  In addition, in the form attached hereto as Exhibit A, the Seller Parties and Jim shall tender their respective formal written resignation(s) of and from any and all position(s), if any, held with VAP and/or HCF (collectively, the "**Resignations**").  For the avoidance of doubt, as of the Closing Date, none of the Seller Parties nor Jim will have any right, power or authority to speak or act for or on behalf of VAP and/or HCF or bind VAP and/or HCF in any manner whatsoever.

**1.2**   **PURCHASE PRICE.**   The Purchase price for all of the Interests is $4,000,000.00 (the "**Purchase Price**").  Purchaser shall pay the Purchase Price as follows:

(a)   At Closing (as defined below), by wire transfer of immediately available funds to an account or accounts designated by Seller, Purchaser shall pay to Seller: (i) $3,000,000.00 of the Purchase Price and (ii) $47,342.47, which amount is separate from, and does not constitute a portion of, the Purchase Price and equals the amount of interest accruing between January 1, 2016 and February 17, 2016 pursuant to the Loan Documents (as defined below).

(b)   Purchaser shall pay $1,000,000.00 of the Purchase Price to Seller pursuant to the terms of (i) that certain promissory note dated as of the Closing Date, in the form attached hereto

as Exhibit B (the "**Promissory Note**"), and that certain guaranty agreement dated as of the Closing Date and made by Alan H. Ginsburg for the benefit of Seller, in the form attached hereto as Exhibit C (the "**Guaranty Agreement**").

(c)    At Closing, pursuant to the terms of that certain allonge dated as of the Closing Date, in the form attached hereto as Exhibit D (the "**Allonge**"), and pursuant to that certain General Assignment, in the form attached hereto as Exhibit E (the "**General Assignment**"), Purchaser shall assume all rights (except as otherwise stated herein) and obligations to (i) that certain $1,000,000.00 Loan Agreement, as amended, by and between Seller and VAP, (ii) that certain $1,000,000.00 Revolving Note, as amended, by and between Seller and VAP, (iii) that certain $2,000,000.00 Loan Agreement, as amended, by and between Seller and VAP, (iv) that certain $2,000,000 Revolving Note, as amended, by and between Seller and VAP, and (v) that certain Subordination Agreement, as amended, between Seller and NAI ARK FUNDING, LLC, a Delaware limited liability company (collectively, the "**Loan Documents**"), all with respect to (y) an original $1,000,000.00 loan to VAP by Seller; and (z) an original $2,000,000.00 loan to the VAP by Seller.

Any provisions of this Agreement to the contrary notwithstanding, Purchaser and Seller acknowledge and agree that: (i) interest in the amount of $331,685.27 has accrued as of January 1, 2016 pursuant to the Loan Documents but has not been paid to Seller (the "**Unpaid Interest**"), and Seller is claiming approved but unreimbursed expenses incurred by Seller on behalf of VAP in the amount of $297,000 (the "**Unreimbursed Expenses**"); (ii) Seller is not transferring to Purchaser, and Purchaser is not assuming from Seller, any rights with respect to the Unpaid Interest and/or the Unreimbursed Expenses; (iii) the Closing shall have no effect on Seller's rights to the Unpaid Interest and/or the Unreimbursed Expenses and, following the Closing Date, Seller is free to pursue any appropriate means to collect the Unpaid Interest and/or the Unreimbursed Expenses from VAP; and (iv) Purchaser will (A) execute, or procure the execution of, such further documents, (B) do such acts, and (C) provide Seller with such assistance, each as Seller may reasonably request, and each at Seller's sole cost and expense, in order to enforce Seller's rights to the Unpaid Interest.

(d)    Further, for each of the three years following the Closing Date, Purchaser shall, within 90 days of the end of such year, pay Seller an amount equal to 50% of VAP's Net Income (as defined below) allocable to the Interests for such year. "**Net Income**" is defined to mean (i) the sum of (A) any and all fees earned by VAP in its capacity as a manager or an administrator of (1) the Vendor Assistance Trust and/or (2) any other trust or account maintained in the course of VAP's business, (B) any and all interest income, (C) any and all fees earned from providing services to affiliates or third parties, and (D) any and all other revenues received by VAP other than the Reserve Amounts (as defined below), less (ii) the sum of (A) $50,000 per month for each month in which VAP's average outstanding receivables are greater than or equal to $50,000,000, (B) $25,000 per month for each month in which VAP's average outstanding receivables are less than $50,000,000, (C) interest paid by VAP on debt for which VAP is the debtor and any member of VAP is the lender solely to the extent that (1) such debt was outstanding as of the Closing Date, (2) the original principal of such debt, in the aggregate, does not exceed $4,000,000, and (3) the interest rate to which such debt is subject does not exceed 12% per annum, and (D) any consulting fees paid to any member of VAP or any third party in exchange for introducing any new business opportunity to VAP, provided that such new business opportunities exclude any business involving any vendor, payee, program or party which VAP

2

had previously investigated, transacted with or paid any consultant with respect to. Items (A) through (D) of clause (i) of the preceding sentence are herein defined as "**Revenue**", and items (A) through (D) of clause (ii) of the preceding sentence are herein defined as "**Expenses**". For purposes of this Agreement, all Revenues are recognized when they are received by VAP, and all Expenses are recognized when they are paid by VAP. For purposes of clarity, Schedule 1.2(d) illustrates examples of the calculation and payment of VAP's Net Income allocable to the Interests.

(e)    For purposes of this Agreement, "**Reserve Amounts**" are defined to mean any and all amounts (i) deposited in VAP's series 2012-1 Reserve Account, (ii) deposited in any other reserve account held by, on behalf of, or for the benefit of, VAP, and/or (iii) held in the form of any financial instrument, in each case as may be required pursuant to the terms of any financing arrangement among VAP and any of its lender(s). The accounts and financial instruments described in clauses (i), (ii), and (iii) of the preceding sentence are herein defined as the "**Reserve Accounts**". The balance of the 2012-1 Reserve Account as of the Closing Date is herein defined as the "**Excluded Reserve Amount**", and all other Reserve Amounts that are or become Reserve Amounts (other than any amounts that are re-deposited into any Reserve Account in satisfaction of an advance made previously from such Reserve Account) during the three year period following the Closing Date are herein defined as the "**Included Reserve Amounts**". In addition to the Purchase Price, within five days of the release of any Included Reserve Amount from any Reserve Account, Purchaser shall pay Seller an amount equal to 16.623% of such released Included Reserve Amount (each such amount, a "**Seller Included Reserve Amount**").

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF THE SELLER PARTIES

The Seller Parties, jointly and severally, hereby represent and warrant to Purchaser as follows:

### 2.1  OWNERSHIP.

(a)    Seller is the equitable and legal owner of the Interests, free and clear of any lien or other encumbrance except for the rights of Purchaser created hereunder. Except for the Interests, none of the Seller Parties nor Jim owns, directly or indirectly, any other securities of VAP and/or HCF. There are no outstanding subscriptions, contracts, conversion privileges, options, warrants, calls or other rights obligating VAP and/or HCF to issue, sell or otherwise transfer any securities of VAP and/or HCF to any of the Seller Parties or Jim, and none of the Seller Parties nor Jim are a party to any subscription, contract, conversion privilege, option, warrant, call or other right relating to the issuance, sale or transfer of any securities of VAP and/or HCF.

(b)    Except with respect to the Unpaid Interest and the Unreimbursed Expenses, the Loan Documents constitute all evidence of any indebtedness of VAP and/or HCF to any of the Seller Parties and/or Jim. All Loan Documents are correct in amount and are genuine as to signatures of every Seller Party and/or Jim thereto. None of the obligations represented by the Loan Documents have been modified, altered, forgiven, discharged or otherwise disposed of.

3

Seller's interest in the indebtedness evidenced by the Loan Documents is free and clear of any security interest, lien, encumbrance or other charge. Except for the indebtedness evidenced by the Loan Documents, the Unpaid Interest and the Unreimbursed Expenses, none of the Seller Parties nor Jim is a party to any loan to VAP and/or HCF.

**2.2 ORGANIZATION AND GOOD STANDING.** Seller (a) is a duly organized and validly existing limited liability company in good standing under the laws of the State of Delaware; and (b) has full corporate power and authority to own and lease its properties and assets and conduct its business and to consummate the transactions contemplated by this Agreement.

**2.3 AUTHORITY AND AUTHORIZATION.** Each of the Seller Parties and Jim has the capacity to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement has been duly executed and delivered by each of the Seller Parties and Jim, constitutes a legal, valid and binding obligation of each of the Seller Parties and Jim and is enforceable against the Seller Parties and Jim. The execution, delivery and performance of this Agreement has been duly authorized and approved by all necessary corporate action with respect to Seller and such authorization and approval remains in full force and effect.

**2.4 CONFLICTS.** Neither the execution nor delivery by the Seller Parties and Jim of this Agreement nor consummation by the Seller Parties and Jim of the transactions contemplated herein does or will (with or without the passage of time or giving of notice): (a) constitute a breach of, violate, conflict with or give rise to or create any right or obligation under any agreement applicable to the Seller Parties and/or Jim or (b) violate any applicable law.

**2.5 CONSENTS.** Other than as required by the Second Amended and Restated Operating Agreement of VAP, dated as of September 21, 2012, no consent or approval by, notification to or filing with any person is required in connection with the Seller Parties' and/or Jim's execution, delivery or performance of this Agreement or the Seller Parties' and/or Jim's consummation of the transactions contemplated herein.

**2.6 NO CORPORATE RECORDS OR PROPERTY.** None of the Seller Parties nor Jim has any corporate property of VAP and/or HCF or originals or copies of corporate documentation and/or records of VAP and/or HCF in their possession, including but not limited to all computer equipment, keys, passwords, tangible proprietary information, documents, books, records, reports, contracts, customer and contact lists, computer files and data, which exist in any medium, and in the event any such property or records are discovered by any of the Seller Parties and/or Jim following the Closing Date, each of the Seller Parties and Jim agrees to promptly deliver the same to VAP and/or HCF, as applicable, without demand.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to each of the Seller Parties as follows:

**3.1 ORGANIZATION AND GOOD STANDING.** Purchaser (a) is a duly organized and validly existing limited liability company in good standing under the laws of the State of

4

Florida; and (b) has full corporate power and authority to own and lease its properties and assets and conduct its business and to consummate the transactions contemplated by this Agreement.

**3.2  AUTHORITY AND AUTHORIZATION.**  The execution, delivery and performance of this Agreement has been duly authorized and approved by all necessary corporate action with respect to Purchaser and such authorization and approval remains in full force and effect.

**3.3  CONFLICTS.**  Neither the execution nor delivery by Purchaser of this Agreement nor consummation by Purchaser of the transactions contemplated herein does or will (with or without the passage of time or giving of notice):  (a) constitute a breach of, violate, conflict with or give rise to or create any right or obligation under any organizational document of Purchaser; or (b) subject to receipt by Purchaser of the regulatory approvals contemplated hereby, violate any applicable law.

**3.4  CONSENTS.**  No consent or approval by, notification to or filing with any person is required in connection with Purchaser's execution, delivery or performance of this Agreement or Purchaser's consummation of the transactions contemplated herein.

**3.5  DUE DILIGENCE.**  Purchaser has had full opportunity to conduct due diligence of VAP and to ask questions regarding VAP, VAP's business, and Seller.  Purchaser has reviewed all of VAP's organizational documents (including its operating agreement) and all minutes in VAP's records.  Purchaser has completed its due diligence review to its satisfaction prior to the Closing.  Notwithstanding the foregoing, or anything contained herein to the contrary, no investigation by Purchaser shall affect the representations, warranties and covenants made by Seller Parties and Jim in this Agreement.

**ARTICLE 4**
**CERTAIN OTHER COVENANTS**

**4.1  WAIVER AND RELEASE.**

(a)  Except for a breach of Purchaser's obligations hereunder, a breach of Alan H. Ginsburg's obligations under the Guaranty Agreement, the Unpaid Interest and the Unreimbursed Expenses, each of the Seller Parties and Jim, on behalf of itself and each of its and its affiliates successors, predecessors, assigns, current and/or former employees, agents, managers, members, officers, directors, shareholders, representatives, principals, trustees, beneficiaries, administrators, insurers, attorneys, auditors and accountants (collectively, the **"Seller Releasing Parties"**), hereby fully, finally and forever releases, remises, acquits, and forever discharges each of Purchaser, VAP and HCF, and each of its and its affiliates' successors, predecessors, assigns, current and/or former employees, agents, managers, members, officers, directors, shareholders, representatives, principals, successors, predecessors, assigns, trustees, beneficiaries, administrators, insurers, attorneys, auditors and accountants (collectively, the **"Purchaser Released Parties"**), from any and all claims, demands, suits, actions, causes of action, obligations, damages, punitive damages, penalties, costs, losses, interest, expenses and liabilities of any kind or nature whatsoever, whether legal, equitable or statutory, liquidated or un-liquidated, known or unknown, suspected or unsuspected, reasonably discoverable or not,

5

present, fixed or contingent (collectively, "**Claims**"), which the Seller Releasing Parties ever had, now has or could have had from the beginning of the world to the Closing Date, regardless of when such Claims accrues or ripens, including all Claims that any of the Seller Releasing Parties has asserted or could have asserted against the Purchaser Released Parties.

(b)        Except for a breach of Seller Parties' and/or Jim's obligations hereunder, each of Purchaser, VAP and HCF, on behalf of itself and each of its and its affiliates successors, predecessors, assigns, current and/or former employees, agents, managers, members, officers, directors, shareholders, representatives, principals, trustees, beneficiaries, administrators, insurers, attorneys, auditors and accountants (collectively, the "**Purchaser Releasing Parties**"), hereby fully, finally and forever releases, remises, acquits, and forever discharges each of the Seller Parties and Jim, and each of its and its affiliates' successors, predecessors, assigns, current and/or former employees, agents, managers, members, officers, directors, shareholders, representatives, principals, successors, predecessors, assigns, trustees, beneficiaries, administrators, insurers, attorneys, auditors and accountants (collectively, the "**Seller Released Parties**"), from any and all Claims which the Purchaser Releasing Parties ever had, now has or could have had from the beginning of the world to the Closing Date, regardless of when such Claims accrues or ripens, including all Claims that any of the Purchaser Releasing Parties has asserted or could have asserted against the Seller Released Parties.

     **4.2  NON-DISCLOSURE.** Each of the Seller Parties and Jim acknowledges that the value of the nonpublic and proprietary information developed and maintained by VAP and/or HCF, disclosed to any of the Seller Parties and/or Jim and relating to VAP and/or HCF's information technologies, trade secrets, "technical know-how", patents, licenses, customer lists, pricing policies, operational methods, programs, and other business information of VAP and/or HCF, including but not limited to the terms of this Agreement, financial statements and meeting minutes (collectively, the "**Confidential Information**") is attributable substantially to the fact that the Confidential Information is maintained by VAP and/or HCF in confidentiality and secrecy and is not available to others without the expenditure of substantial time, effort and money. Each of the Seller Parties and Jim acknowledges that Purchaser, VAP and HCF would be irreparably damaged if the Confidential Information was disclosed to or utilized on behalf of any person or entity which competes with the business of VAP and/or HCF in the States of Illinois and/or Florida. Therefore, each of the Seller Parties and Jim agrees that it will not, for a period of twelve (12) months following the Closing Date, directly or indirectly, at any time, without the prior written consent of VAP and/or HCF, as applicable, disclose the Confidential Information to any person or entity which competes with the business of VAP and/or HCF in the States of Illinois and/or Florida. For the avoidance of doubt, the term Confidential Information does not include information that (i) becomes generally available to the public other than as a result of disclosure by any of the Seller Parties or Jim in violation of this Agreement; (ii) was legally available to any of the Seller Parties or Jim on a non-confidential basis prior to being made available to any of the Seller Parties or Jim by VAP and/or HCF; (iii) becomes legally available to any of the Seller Parties or Jim on a non-confidential basis from a source other than VAP and/or HCF or its directors, officers, employees, affiliates, agents, independent contractors, advisors or representatives, so long as such source is not known to be bound by a confidentiality agreement with any of the foregoing prohibiting such disclosure; (iv) is or was developed independently by any of the Seller Parties or Jim without reference to Confidential Information; or (v) is required to be disclosed pursuant to judicial order, regulation or law (in which case the

Seller Parties and Jim shall give VAP and HCF reasonable prior notice of such compelled disclosure and reasonable assistance, at VAP and/or HCF's expense, should VAP and/or HCF wish to contest the disclosure or seek a protective order).

**4.3  NON-COMPETE; NON-SOLICIT.** Each of the Seller Parties and Jim acknowledges that it was exposed to VAP and HCF's most sensitive and proprietary information. Each of the Seller Parties and Jim also recognizes and acknowledges that by virtue of its position(s) with VAP and/or HCF, if any, it has come to be identified with VAP and/or HCF. Each of the Seller Parties and Jim further acknowledges that VAP and HCF's interest in protecting their Confidential Information and their relationships are both significant and difficult to quantify. Therefore, each of the Seller Parties and Jim agrees for a period of twelve (12) months following the Closing Date, it will not, without the prior written consent of VAP and/or HCF, as applicable, either directly or indirectly, for itself or on behalf of or in conjunction with any other person or entity, (a) own, manage, operate, control, be employed by, participate in, render services to, or be associated in any manner with the ownership, management, operation or control of, any business which competes with the business of VAP and/or HCF in the States of Illinois and/or Florida; (b) solicit any employee of VAP and/or HCF, or endeavor or attempt in any way to interfere with or induce a termination or breach of any relationship that VAP and/or HCF may have with any such employee; or (c) solicit any customer, client, sponsor, vendor, supplier or distributor of VAP and/or HCF with respect to any business which competes with the business of VAP and/or HCF in the States of Illinois and/or Florida, or endeavor or attempt in any way to interfere with or induce a termination or breach of any relationship that VAP and/or HCF may have with any contractor, customer, client, sponsor, vendor, supplier, representative or distributor. Each of the Seller Parties and Jim agrees that the restrictive covenants in this Section 4.4 impose a fair and reasonable restraint on it, are reasonably required to protect the interest of Purchaser, VAP and HCF, and that the provisions would not unduly restrict its ability to make an adequate living. In the event of the violation by any of the Seller Parties and/or Jim of any one or more covenants contained in this Section 4.4, it is agreed that the terms of such covenant so violated will automatically be extended for a period of twelve (12) months from the date on which it permanently ceases such violation, or for a period of twelve (12) months from the date of the entry by a court of competent jurisdiction of a final order or judgment enforcing such covenant(s), whichever is later.

**4.4  NON-DISPARAGEMENT.**

(a)    Each of the Seller Parties and Jim agrees that it will not in any way disparage any of the Purchaser Released Parties, and will not, at any time, make or solicit comments, statements or the like to the media or others that may be considered derogatory or detrimental to the good name or business reputation of same.

(b)    Each of Purchaser, Hynes, VAP and HCF agrees that it will not in any way disparage any of the Seller Released Parties, and will not, at any time, make or solicit comments, statements or the like to the media or others that may be considered derogatory or detrimental to the good name or business reputation of same.

**4.5  INDEMNIFICATION.** VAP, at its sole expense, shall defend, indemnify and hold harmless each of the Seller Parties and Jim, and each of their directors, officers, employees and

7

agents (collectively, the "**Indemnitees**") against any and all claims, charges, demands, proceedings, suits, liabilities, costs, expenses, orders, decrees, attorneys' fees, court costs, trials, appeals, judgments, arbitrations, alternative dispute resolution mechanisms, investigations, inquiries and administrative hearings, whether threatened, pending, completed or arising prior to, contemporaneously with or following Closing, in each case including damages of any kind relating thereto or in connection therewith (each, a "**Claim**") relating to or arising out of: (a) the capitalization of VAP; (b) the proportion of the membership interests of VAP that are represented by the Interests; (c) any terms or requirements of VAP's operating agreement; (d) any person or entity who claims, or has at any time claimed, to be a member of VAP; (e) whether JRB CA, LLC ("**JRB**") or North Fork Capital, LLC ("**North Fork**") are, or were at any time, members of VAP; (f) whether JRB or North Fork have any direct or indirect ownership of, interest in, or control over VAP; and (g) whether any notices to, consents from, or waivers by JRB or North Fork are required for the consummation of the transactions contemplated by this Agreement.  VAP must not settle any such Claim without the prior written approval of the Seller Parties and Jim unless such settlement: (x) includes a complete release of all Indemnitees; (y) does not require any Indemnitee to pay any amount or deliver any other consideration; and (z) places no restriction on the conduct of any Indemnitee.

**4.6 FORWARDED PAYMENTS.**  For so long as any portion of the Unpaid Interest has not been paid to Seller, Purchaser agrees that it shall pay to Seller any payments that Purchaser may receive pursuant to the Loan Documents (such payments, "**Forwarded Payments**").  To the extent that there remains an outstanding balance on the Promissory Note at the time of a Forwarded Payment, such Forwarded Payment shall be treated as an Additional Payment (as defined in the Promissory Note).  To the extent that all outstanding principal and accrued interest under the Promissory Note has been paid in full at the time of a Forwarded Payment, such Forwarded Payment shall be credited toward the Unpaid Interest.

**4.7 UNREIMBURSED EXPENSES**.  Any other provision of this Agreement notwithstanding, VAP shall reimburse Seller for the full amount of the Unreimbursed Expenses no later than December 31, 2016 (the "**Reimbursement Deadline**"); provided that, if VAP fails to reimburse Seller for any portion of the Unreimbursed Expenses by the Reimbursement Deadline, such outstanding unreimbursed portion: (i) shall be immediately increased by 12% and (ii) shall thereafter accrue interest at a rate of 12% per annum, compounded monthly, until paid in full (together with all accrued interest) to Seller.

### ARTICLE 5
### CLOSING, CLOSING DELIVERIES

**5.1 CLOSING.**  The closing (the "**Closing**") of the transactions contemplated hereby shall occur contemporaneously with the execution hereof (the "**Closing Date**").  All actions to be taken and all documents to be executed or delivered at Closing will be deemed to have been taken, executed and delivered simultaneously, and no action will be deemed taken and no document will be deemed executed or delivered until all have been taken, delivered and executed, except in each case to the extent otherwise stated in this Agreement or any such other document.

**5.2 CLOSING DELIVERIES BY THE SELLER PARTIES AND JIM.**  At Closing,

8

the Seller Parties and Jim, as applicable, will deliver, or cause to be delivered, to (a) Purchaser, VAP and HCF, the Resignations, executed by the Seller Parties and Jim, as applicable, (b) to Purchaser, (i) the Allonge, (ii) the General Assignment, (iii) the assignment separate from certificate in the form attached hereto as Exhibit F, and (c) to each of Purchaser, VAP and HCF, such other documents and items required by this Agreement to be delivered by the Seller Parties and/or Jim or reasonably requested by Purchaser, VAP, HCF and/or their respective counsel, to effectuate the transactions contemplated by this Agreement.

**5.3  CLOSING DELIVERIES BY PURCHASER.**  At Closing, Purchaser will deliver, or cause to be delivered, to the Seller Parties and Jim, as applicable, (a) $3,000,000.00 of the Purchase Price via wire transfer or immediately available funds, (b) the Promissory Note, (c) the Guaranty Agreement and (d) such other documents and items required by this Agreement to be delivered by Purchaser or reasonably requested by the Seller Parties, Jim and/or their respective counsel, to effectuate the transactions contemplated by this Agreement.

**5.4  CLOSING DELIVERIES BY VAP.**  At Closing, VAP will deliver, or cause to be delivered, to the Seller Parties and Jim a certificate, executed by an officer of VAP, in the form attached hereto as Exhibit G.

### ARTICLE 6
### MISCELLANEOUS

**6.1  COMPLETE AGREEMENT.**  This Agreement, including the exhibits hereto, represents the entire agreement of the parties with respect to the subject matter hereof.  All prior negotiations between the parties are merged into this Agreement and there are no understandings or agreements other than those incorporated herein.

**6.2  MODIFICATIONS AND WAIVERS.**  This Agreement may not be modified except in a writing duly executed by the Seller Parties, Jim, Purchaser, VAP and HCF.  Any waiver must be in writing.

**6.3  COUNTERPARTS.**  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

**6.4  GOVERNING LAW.**  This Agreement shall be governed by and construed in accordance with the internal law of the State of Illinois without regard to its principles of conflicts of laws.

**6.5  SPECIFIC PERFORMANCE.**  Each of the parties hereto acknowledges that the other party would be irreparably damaged and would not have an adequate remedy at law for money damages in the event of a breach of this Agreement.  Accordingly, each of the parties hereto agrees that, without the necessity of proving actual damages or posting bond or other security, the other party shall be entitled to temporary or permanent injunction or injunctions to prevent breaches of such performance and to specific enforcement of this Agreement in addition to any other remedy to which they may be entitled, at law or in equity.

**6.6** SUCCESSION AND ASSIGNMENT. This Agreement will be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted assigns. No party may assign or delegate either this Agreement or any of the rights, interests or obligations hereunder without the prior written approval of the other party. This Agreement is not for the benefit of, and may not be enforced by, any third party; provided, however, VAP, HCF and Jim are expressly recognized as, and shall be third party beneficiaries to this Agreement.

**6.7** ATTORNEY'S FEES. In the event either party files lawsuit regarding this Agreement or the respective rights of the parties hereunder, the prevailing party will be entitled to recover attorney's fees and court costs from the other party.

**6.8** SEVERABILITY. If any provision of this Agreement is held to be unenforceable under any present or future law in any jurisdiction, then (a) such provision will be fully severable in such jurisdiction, (b) this Agreement will be construed and enforced as if such unenforceable provision had never comprised a part of this Agreement, (c) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the unenforceable provision, and (d) in lieu of such unenforceable provision, there will be added automatically an enforceable provision as similar in terms to such unenforceable provision as may be possible to the maximum extent allowable by law.

[remainder of page intentionally left blank; signature page to follow]

10

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PURCHASER:**

SFR EQUITIES, LLC,
a Florida limited liability company

By: _____
Name: ALAN H. FINSBURG
Title: MANAGER

**SELLER:**

WARREN HILL, LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**JACQUELINE:**

_____
Jacqueline Delaney, individually

**JASON:**

_____
Jason Cannon, individually

Solely with respect to Sections 1.1, 4.1(a),
4.2, 4.3, 4.4(a) and 5.2:

**JIM:**

_____
James Delaney, individually

Solely with respect to Sections 4.1(b),
4.4(b), 4.5, 4.7 and 5.4:

**VAP:**

VENDOR ASSISTANCE PROGRAM,
LLC,
An Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Sections 4.1(b) and
4.4(b):

**HCF:**

HEALTHCARE FINANCE, LLC,
an Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Section 4.4(b):

**HYNES:**

_____
Brian Hynes, individually

[signature page to the Membership Interest Purchase Agreement]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PURCHASER:**

SFR EQUITIES, LLC,
a Florida limited liability company

By:_____
Name:_____
Title:_____

**SELLER:**

WARREN HILL, LLC,
a Delaware limited liability company

By: _Jason Cannon_
Name: _____
Title: _President_

**JACQUELINE:**

_____
Jacqueline Delaney, individually

**JASON:**

_____
Jason Cannon, individually

Solely with respect to Sections 1.1, 4.1(a),
4.2, 4.3, 4.4(a) and 5.2:

**JIM:**

_____
James Delaney, individually

Solely with respect to Sections 4.1(b),
4.4(b), 4.5, 4.7 and 5.4:

**VAP:**

VENDOR ASSISTANCE PROGRAM,
LLC,
An Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Sections 4.1(b) and
4.4(b):

**HCF:**

HEALTHCARE FINANCE, LLC,
an Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Section 4.4(b):

**HYNES:**

_____
Brian Hynes, individually

[signature page to the Membership Interest Purchase Agreement]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PURCHASER:**

SFR EQUITIES, LLC,
a Florida limited liability company

By:_____
Name:_____
Title:_____

**SELLER:**

WARREN HILL, LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

**JACQUELINE:**

_____
Jacqueline Delaney, individually

**JASON:**

_____
Jason Cannon, individually

Solely with respect to Sections 1.1, 4.1(a),
4.2, 4.3, 4.4(a) and 5.2:

**JIM:**

_____
James Delaney, individually

Solely with respect to Sections 4.1(b),
4.4(b), 4.5, 4.7 and 5.4:

**VAP:**

VENDOR ASSISTANCE PROGRAM,
LLC,
An Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Sections 4.1(b) and
4.4(b):

**HCF:**

HEALTHCARE FINANCE, LLC,
an Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Section 4.4(b):

**HYNES:**

_____
Brian Hynes, individually

[signature page to the Membership Interest Purchase Agreement]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PURCHASER:**

SFR EQUITIES, LLC,
a Florida limited liability company

By:_____
Name: _____
Title: _____

**SELLER:**

WARREN HILL, LLC,
a Delaware limited liability company

By:_____
Name: _____
Title: _____

**JACQUELINE:**

_____
Jacqueline Delaney, individually

**JASON:**

_____
Jason Cannon, individually

Solely with respect to Sections 1.1, 4.1(a),
4.2, 4.3, 4.4(a) and 5.2:

**JIM:**

_____
James Delaney, individually

Solely with respect to Sections 4.1(b),
4.4(b), 4.5, 4.7 and 5.4:

**VAP:**

VENDOR ASSISTANCE PROGRAM,
LLC,
An Illinois limited liability company

By:_____
Name: _DAVID Regone_____
Title: _CEO_____

Solely with respect to Sections 4.1(b) and
4.4(b):

**HCF:**

HEALTHCARE FINANCE, LLC,
an Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Section 4.4(b):

**HYNES:**

_____
Brian Hynes, individually

[signature page to the Membership Interest Purchase Agreement]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PURCHASER:**

SFR EQUITIES, LLC,
a Florida limited liability company

By: _____
Name: _____
Title: _____

**SELLER:**

WARREN HILL, LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**JACQUELINE:**

_____
Jacqueline Delaney, individually

**JASON:**

_____
Jason Cannon, individually

Solely with respect to Sections 1.1, 4.1(a),
4.2, 4.3, 4.4(a) and 5.2:

**JIM:**

_____
James Delaney, individually

Solely with respect to Sections 4.1(b),
4.4(b), 4.5, 4.7 and 5.4:

**VAP:**

VENDOR ASSISTANCE PROGRAM,
LLC,
An Illinois limited liability company

By: _____
Name: _____
Title: _____

Solely with respect to Sections 4.1(b) and
4.4(b):

HCF:

HEALTHCARE FINANCE, LLC,
an Illinois limited liability company

By: _____
Name: _____Patti Solis Doyle_____
Title: _____CEO_____

Solely with respect to Section 4.4(b):

**HYNES:**

_____
Brian Hynes, individually

[signature page to the Membership Interest Purchase Agreement]

SCHEDULE 1.2(D)

## CALCULATION AND PAYMENT OF VAP'S NET INCOME ALLOCABLE TO THE INTERESTS

Vendor Assistance Program ("Vendor's Support Initiative")
Schedule 1.2 (d?)
Overview of Calculation and Interest on VAP's Net Income Allocable to the Interest

| Assumptions/Inputs | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Total for Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoices Outstanding Mo Avg | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | $143,516,408 | |
| Line Utilization Mo Avg | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | $129,164,767 | |
| Senior Fee | 1.50% | | | | | | | | | | | | |
| Senior Interest | 4.17% | | | | | | | | | | | | |
| Mezz Interest | 3.33% | | | | | | | | | | | | |
| Junior Fee | 1.25% | | | | | | | | | | | | |
| Excess (deposit to reserve) | 2.58% | | | | | | | | | | | | |
| Total Return | 13.33% | | | | | | | | | | | | |

| Waterfall Schedule: | Fees | Fees | Fees | Fees | Fees | Fees | Fees | Fees | Fees | Fees | Fees | Fees | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Senior Fees | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $161,456 | $1,937,472 |
| Senior Interest Paid | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | $502,307 | |
| Mezzanine Interest Paid | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | $358,791 | |
| Junior Management Fee | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $134,547 | $1,614,565 |
| Excess Cash deposited into reserve | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $278,009 | $3,336,115 |
| Total PPP | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | $1,435,569 | |

INVOICE
$28,850,000.00

| Real Cost and Other VSP Service Contracts | $115,400,000 | $115,400,000 | $115,400,000 | | | $230,800,000.00 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoices Outstanding Mo Avg | 1% | | | | | | | | | | | | |
| Senior Fee | 3% | | | | | | | | | | | | |
| Junior Fee | | | | | | | | | | | | | |

| Invoice Outstanding per Month | $115,400,000 | $115,400,000 | $115,400,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | $346,200,000 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Waterfall Schedule: | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Senior Fee | $96,167 | $96,167 | $96,167 | 288,500 | 288,500 | 288,500 | 288,500 | 288,500 | 288,500 | 288,500 | 288,500 | 288,500 | |
| Junior Management Fee | $288,500 | $288,500 | $288,500 | 865,500 | 865,500 | 865,500 | 865,500 | 865,500 | 865,500 | 865,500 | 865,500 | 865,500 | |
| Total PPP | $384,667 | $384,667 | $384,667 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | 1,154,000 | $11,540,000 |

| Income "when received" | $904,729.71 | $904,729.71 | $904,729.71 | $1,729,262.04 | $1,729,262.04 | $1,729,262.04 | $1,729,262.04 | $1,729,262.04 | $1,729,262.04 | $1,729,262.04 | $1,779,762.04 | $1,779,762.04 | $16,478,745 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Expenses "when paid" | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Member Interest Expense ($4,000,000 of debt) | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $480,000.00 |
| VAP Operating Expense | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $600,000.00 |

| Net Income (MIPA 1.2 (d)) | $ 868,728.71 | $ 868,728.71 | $ 868,728.71 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 1,638,062.04 | $ 12,248,744.54 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VAP's Net Income allocable to the Interest (33.246%) | $ 288,817.55 | $ 288,817.55 | $ 288,817.55 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $ 544,590.11 | $5,767,763.61 |
| 50% of VAP's Net Income allocable to the Interest | $ 144,408.77 | $ 144,408.77 | $ 144,408.77 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 272,295.05 | $ 2,883,881.80 |

Note: If all income was received during the year and expenses paid 50% of VAP's
Net income allocable to the Interest for the year would equal $2,883,881.80
payable within 90 days of year end.

EXHIBIT A

## RESIGNATIONS

The undersigned hereby resigns on the __17th__ day of February, 2016, effective as of the foregoing date, from any and all position(s), if any, held with respect to VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company, and/or HEALTHCARE FINANCE, LLC, an Illinois limited liability company.

WARREN HILL, LLC,
a Delaware limited liability company

By: _____
Print Name: _____
Title: _____


_____
JACQUELINE DELANEY, individually


_____
JASON CANNON, individually


_____
JAMES DELANEY, individually

A-1

EXHIBIT A

**RESIGNATIONS**

The undersigned hereby resigns on the __17th__ day of February , 2016, effective as of the foregoing date, from any and all position(s), if any, held with respect to VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company, and/or HEALTHCARE FINANCE, LLC, an Illinois limited liability company.


WARREN HILL, LLC,
a Delaware limited liability company


By: _____
Print Name: _____
Title: _____


_____
JACQUELINE DELANEY, individually


_____
JASON CANNON, individually


_____
JAMES DELANEY, individually

A-1

EXHIBIT B

**PROMISSORY NOTE**

[see attached]

# PROMISSORY NOTE

$1,000,000.00                                                    Winter Park, Florida

January 1, 2016

FOR VALUE RECEIVED, SFR EQUITIES LLC, a Florida limited liability company (together with its successors and assigns, the "Maker"), hereby promises to pay to the order of WARREN HILL, LLC, a Delaware limited liability company (together with its successors and assigns, the "Holder"), at the Holder's offices at 914 Sorrell Hill Drive, Malvern, PA 19355 (or such other place as the Holder may designate in writing to Maker), the aggregate principal sum of ONE MILLION AND 00/100 DOLLARS ($1,000,000.00), in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

1.   <u>INTEREST RATE</u>

This Note shall bear interest compounded monthly at the rate of seven percent (7%) per annum.

2.   <u>TERM</u>

This Note shall mature on January 1, 2017 (hereinafter, the "Maturity Date") at which time all outstanding principal and interest shall be due and payable in full.

3.   <u>PAYMENTS OF PRINCIPAL AND INTEREST</u>

a.   Maker shall pay all outstanding principal and accrued interest in accordance with the following schedule: 1) a principal payment of $250,000.00, plus all accrued interest on April 1, 2016; 2) a principal payment of $250,000.00, plus all accrued interest, on July 1, 2016; 3) a principal payment of $250,000.00, plus all accrued interest, on October 1, 2016; and 4) a final payment of all outstanding principal and interest on or prior to the Maturity Date.

b.   Additionally, in the event that there remains an outstanding balance on this Note and Maker receives any payments on either of the Vendor Assistance Program, LLC notes assigned to Maker by Holder by an assignment and allonge executed contemporaneously with this Note, then Maker will pay those amounts to Holder ("Additional Payments").   Any Additional Payments shall not alter the payment schedule set forth above in section 3(a), but such Additional Payments shall be credited toward the repayment of this Note.

c.   All payments shall first be applied to all accrued and unpaid interest due, and the balance shall be applied to principal.

d.   The Maker may prepay this Note, in whole or in part, at any time without any prepayment premium, penalty or fee whatsoever.

4.    EVENTS OF DEFAULT

The occurrence of any of the following shall constitute an "Event of Default" under this Note:

a.    The failure to pay when due any principal, interest, fees or other charges hereunder.

b.    Any default in the performance of or compliance with any obligation, agreement or other provision of this Note (other than those specifically described as an "Event of Default" in this section), and with respect to any such default which by its nature can be cured, such default shall continue for a period of twenty (20) days from its occurrence.

c.    Maker or any Guarantor shall become insolvent, or shall suffer or consent to or apply for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or shall generally fail to pay its debts as they become due, or shall make a general assignment for the benefit of creditors; Maker or any Guarantor shall file a voluntary petition in bankruptcy, or seeking reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Reform Act, Title 11 of the United States Code, as amended or recodified from time to time ("Bankruptcy Code"), or under any state or federal law granting relief to debtors, whether now or hereafter in effect; or Maker or any Guarantor shall file an answer admitting the jurisdiction of the court and the material allegations of any involuntary petition; or Maker or any Guarantor shall be adjudicated bankrupt, or an order for relief shall be entered against Maker or any Guarantor by any court of competent jurisdiction under the Bankruptcy Code or any other applicable state or federal law relating to bankruptcy, reorganization or other relief for debtors.

d.    The filing of a notice of judgment lien against Maker or any Guarantor; or the recording of any abstract of judgment against Maker or any Guarantor in any county in which Maker or such Guarantor has an interest in real property; or the service of a notice of levy and/or of a writ of attachment or execution, or other like process, against the assets of Maker or any Guarantor; or the entry of a judgment (which is not satisfied within 30 days) against Maker or any Guarantor; or any involuntary petition or proceeding pursuant to the Bankruptcy Code or any other applicable state or federal law relating to bankruptcy, reorganization or other relief for debtors is filed or commenced against Maker or any Guarantor.

e.    The death or incapacity of Maker or any Guarantor if an individual, or the dissolution or liquidation of Maker or any Guarantor if a corporation, partnership, joint venture or other type of entity; or Maker or any such Guarantor, or any of its directors, stockholders or members, shall take action seeking to effect the dissolution or liquidation of Maker or such Guarantor.

f.    Any change in control of Maker or any entity or combination of entities that directly or indirectly control Maker, with "control" defined as ownership of an aggregate of twenty-five percent (25%) or more of the common stock, members' equity or other ownership

interest (other than a limited partnership interest); or if Maker is a partnership, any withdrawal, resignation or expulsion of any of the general partners in Maker.

5.    DEFAULT REMEDIES

Upon the occurrence of any Event of Default, the holder of this Note, at the holder's option, may declare all sums of principal and interest outstanding hereunder to be immediately due and payable without presentment, demand, notice of nonperformance, notice of protest, protest or notice of dishonor, all of which are expressly waived by Maker.  Maker shall pay to the holder immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of the holder's in-house counsel), expended or incurred by the holder in connection with the enforcement of the holder's rights and/or the collection of any amounts which become due to the holder under this Note, and the prosecution or defense of any action in any way related to this Note, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Lender or any other person) relating to Maker or any other person or entity.

6.    DEFAULT INTEREST

From and after the Maturity Date of this Note, or such earlier date as all principal owing hereunder becomes due and payable by acceleration or otherwise, or at Lender's option upon the occurrence, and during the continuance, of an Event of Default, the outstanding principal balance of this Note shall bear interest at the highest rate allowable by law.

7.    MISCELLANEOUS

a.    This Note is payable in the lawful money of the United States at the principal office of the Holder, or at such other place as the Holder shall designate in writing to the Maker.

b.    In the event of any dispute between the parties regarding the terms and conditions of this Note, the prevailing party shall be entitled to an award of its attorney's fees and court costs actually incurred in connection with such dispute.

c.    This Note shall be construed and enforced in accordance with the laws of the State of Florida.  Jurisdiction and venue for any dispute arising out of this Note shall be Orange County, Florida.

d.    This Note shall be binding on successors and assigns.

e.    Maker hereby expressly waives presentment, demand for payment, notice of dishonor, protest, notice of nonpayment or protest, and diligence in collection.

f.      Maker consents that the time of all payments or any part thereof may be extended, rearranged, renewed, or postponed by Holder hereof from time to time as often as Holder may desire without otherwise modifying, altering, releasing, affecting, or limiting Maker's liability under this Note.

g.      Maker agrees that Holder, in order to enforce payment of this Note, shall not be required first to institute any suit or to exhaust any of its remedies against Maker or any person or party to become liable hereunder or against any Third Party Obligor.

h.      Maker acknowledges that the loan (the "Loan") evidenced by this Note is solely for business or commercial purposes, and not for personal, family or household purposes, and in reliance upon the statements herein contained, Lender is making the Loan to Maker without giving to Maker any disclosures that may be otherwise required under various residential, consumer protection and truth in lending laws, or together with various similar regulations.

8.      <u>WAIVER OF JURY TRIAL</u>

MAKER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED UPON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, RELATED THERETO, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THE LOAN EVIDENCED BY THIS NOTE.

IN WITNESS WHEREOF, the Maker has executed this Note on the date first written above.

"Maker"

**SFR EQUITIES, LLC**, a Florida limited
liability company

By: AHG Manager, LLC, a Florida limited
liability company, its Manager

By: _____
Gene Harris, its Manager

4

EXHIBIT C

**GUARANTY AGREEMENT**

[see attached]

## CONTINUING GUARANTY

TO:     WARREN HILL, LLC, a Delaware limited liability company

1.      GUARANTY; DEFINITIONS.  In consideration of the credit extended or made to SFR EQUITIES, LLC ("Borrower"), by WARREN HILL, LLC, a Delaware limited liability company ("Lender"), and for other valuable consideration, the undersigned ALAN H. GINSBURG ("Guarantor"), jointly and severally unconditionally guarantees and promises to pay to Lender, or order, on demand in lawful money of the United States of America and in immediately available funds, any and all Indebtedness of the Borrower to Lender.  The term "Indebtedness" as used herein shall mean that certain Promissory Note dated January 1, 2016, in the original principal amount of ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) executed by Borrower in favor of Lender, and any renewals, modifications or extensions thereof (the "Note").

2.      OBLIGATIONS JOINT AND SEVERAL; SEPARATE ACTIONS; WAIVER OF STATUTE OF LIMITATIONS; REINSTATEMENT OF LIABILITY.  The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against the Borrower or any other person, or whether the Borrower or any other person is joined in any such action or actions.  Guarantor acknowledges that this Guaranty is absolute and unconditional, there are no conditions precedent to the effectiveness of this Guaranty, and this Guaranty is in full force and effect and is binding on Guarantor as of the date written below, regardless of whether Lender obtains collateral or any guaranties from others or takes any other action contemplated by Guarantor.  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.  The liability of Guarantor hereunder shall be reinstated and revived and the rights of Lender shall continue if and to the extent for any reason any amount at any time paid on account of any Indebtedness guaranteed hereby is rescinded or must otherwise be restored by Lender, whether as a result of any proceedings in Bankruptcy or reorganization or otherwise, all as though such amount had not been paid.  The determination as to whether any amount so paid must be rescinded or restored shall be made by Lender in its reasonable discretion; provided however, that if Lender chooses to contest any such matter at the request of Guarantor, Guarantor agrees to indemnify and hold Lender harmless from and against all costs and expenses, including reasonable attorneys' fees, expended or incurred by Lender in connection therewith, including without limitation, in any litigation with respect thereto.

3.      AUTHORIZATIONS TO LENDER.  Guarantor authorizes Lender either before or after revocation hereof, without notice to or demand on Guarantor, and without affecting

1

Guarantor's liability hereunder, from time to time to: (i) renew, modify, extend or otherwise change the time for payment of, or otherwise change the terms of the Indebtedness or any portion thereof, provided that any such renewal, modification, extension or change does not increase the principal amount of the Note and (ii) apply payments received by Lender from the Borrower to any indebtedness of the Borrower to Lender, in such order as Lender shall determine in its sole discretion, whether or not such indebtedness is covered by this Guaranty, and Guarantor hereby waives any provision of law regarding application of payments which specifies otherwise. Lender may without notice assign this Guaranty in whole or in part.

4.      REPRESENTATIONS AND WARRANTIES.  Guarantor represents and warrants to Lender that: (i) this Guaranty is executed at Borrower's request; (ii) Guarantor shall not, without Lender's prior written consent, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or a substantial or material part of Guarantor's assets other than in the ordinary course of Guarantor's business; and (iii) Lender has made no representation to Guarantor as to the creditworthiness of the Borrower. Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or material about the Borrower which is acquired by Lender in any manner. Guarantor further warrants and represents that the Indebtedness guaranteed by Guarantor is solely of a business or commercial nature, and not for personal, family or household purposes.

5.      GUARANTOR'S WAIVERS.

(a)      Guarantor waives any right to require Lender to: (i) proceed against the Borrower or any other person; (ii) marshal assets or proceed against or exhaust any security held from the Borrower or any other person; (iii) give notice of the terms, time and place of any public or private sale or other disposition of personal property security held from the Borrower or any other person; (iv) take any other action or pursue any other remedy in Lender's power; or (v) make any presentment or demand for performance, or give any notice of nonperformance, protest, notice of protest or notice of dishonor hereunder or in connection with any obligations or evidences of indebtedness held by Lender as security for or which constitute in whole or in part the Indebtedness guaranteed hereunder, or in connection with the creation of new or additional Indebtedness.

(b)      Guarantor waives any defense to its obligations hereunder based upon or arising by reason of: (i) any disability or other defense of the Borrower or any other person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Indebtedness of the Borrower or any other person; (iii) any lack of authority of any officer, director, partner, agent or any other person acting or purporting to act on behalf of the Borrower which is a corporation, partnership or other type of entity, or any defect in the formation of any such Borrower; (iv) the application by the Borrower of the proceeds of any Indebtedness for

2

purposes other than the purposes represented by Borrower to, or intended or understood by, Lender or Guarantor; (v) any act or omission by Lender which directly or indirectly results in or aids the discharge of the Borrower or any portion of the Indebtedness by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of Lender against the Borrower; (vi) any impairment of the value of any interest in any security for the Indebtedness or any portion thereof, including without limitation, the failure to obtain or maintain perfection or recordation of any interest in any such security, the release of any such security without substitution, and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any such security; (vii) any modification of the Indebtedness, in any form whatsoever, including any modification made after revocation hereof to any Indebtedness incurred prior to such revocation, and including without limitation the renewal, extension or other change in the terms of the Indebtedness or any portion thereof, provided that any such modification, renewal, extension or change does not increase the principal amount of the Note; or (viii) any requirement that Lender give any notice of acceptance of this Guaranty.   Until all Indebtedness shall have been paid in full, Guarantor shall have no right of subrogation, and Guarantor waives any right to enforce any remedy which Lender now has or may hereafter have against the Borrower or any other person, and waives any benefit of, or any right to participate in, any security now or hereafter held by Lender.   Guarantor further waives all rights and defenses Guarantor may have arising out of any election of remedies by Lender.

(c)     Guarantor hereby waives any right he may have to exempt his wages from garnishment pursuant to Florida Statute 222.11 as evidenced by the waiver attached hereto as Exhibit "A."

6.     SUBORDINATION.  Any Indebtedness of the Borrower now or hereafter held by Guarantor is hereby subordinated to the Indebtedness of Borrower to Lender.

7.     REMEDIES; NO WAIVER.   All rights, powers and remedies of Lender hereunder are cumulative.  No delay, failure or discontinuance of Lender in exercising any right, power or remedy hereunder shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power or remedy.  Any waiver, permit, consent or approval of any kind by Lender of any breach of this Guaranty, or any such waiver of any provisions or conditions hereof, must be in writing and shall be effective only to the extent set forth in writing.

8.     COSTS, EXPENSES AND ATTORNEYS' FEES.  Guarantor shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Lender's in-house counsel), expended or incurred by Lender in connection with the enforcement of any of Lender's rights, powers or remedies and/or the collection of any amounts which become due to Lender under this Guaranty, and the prosecution or defense of any action

in any way related to this Guaranty, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including the foregoing incurred in connection with any Bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Lender or any other person) relating to Guarantor or any other person or entity.

9. SUCCESSORS; ASSIGNMENT. This Guaranty shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties; provided however, that Guarantor may not assign or transfer any of its interests or rights hereunder without Lender's prior written consent. Guarantor acknowledges that Lender has the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, any Indebtedness of Borrower to Lender and any obligations with respect thereto, including this Guaranty. In connection therewith, Lender may disclose all documents and information which Lender now has or hereafter acquires relating to Guarantor and/or this Guaranty, whether furnished by Borrower, Guarantor or otherwise. Guarantor further agrees that Lender may disclose such documents and information to Borrower.

10. AMENDMENT. This Guaranty may be amended or modified only in writing signed by Lender and Guarantor.

11. APPLICATION OF SINGULAR AND PLURAL. In all cases where there is but a single Borrower, then all words used herein in the plural shall be deemed to have been used in the singular where the context and construction so require; and when there is more than one Borrower named herein, or when this Guaranty is executed by more than one Guarantor, the word "Borrower" and the word "Guarantor" respectively shall mean all or any one or more of them as the context requires.

12. UNDERSTANDING WITH RESPECT TO WAIVERS; SEVERABILITY OF PROVISIONS. Guarantor warrants and agrees that each of the waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any waiver or other provision of this Guaranty shall be held to be prohibited by or invalid under applicable public policy or law, such waiver or other provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such waiver or other provision or any remaining provisions of this Guaranty.

13. GOVERNING LAW. This Guaranty shall be governed by and construed in accordance with the laws of the State of Florida.

14.    WAIVER OF RIGHT TO A TRIAL BY JURY. GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES THE RIGHT HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED THEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, RELATED THERETO, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF GUARANTOR OR LENDER.    THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER'S EXTENDING THE CREDIT TO BORROWER GUARANTEED BY GUARANTOR.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty as of January 1, 2016.

"Guarantor"

ALAN H. GINSBURG, individually

Exhibit "A"

IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A
CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS
EXEMPT FROM GARNISHMENT UNDER FLORIDA LAW. YOU CAN
WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY
SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM
GARNISHMENT.

_____

ALAN H. GINSBURG, individually

Dated Signed: January 1, 2016


I have fully explained this document to Alan H. Ginsburg.

WARREN HILL, LLC, a Delaware limited liability company

By:_____

Name:_____

Title_____

Dated Signed: January 1, 2016

Exhibit "A"

IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS EXEMPT FROM GARNISHMENT UNDER FLORIDA LAW. YOU CAN WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM GARNISHMENT.

_____

ALAN H. GINSBURG, individually

Dated Signed: January 1, 2016

I have fully explained this document to Alan H. Ginsburg.

WARREN HILL, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

Dated Signed: January 1, 2016

EXHIBIT D

## **ALLONGE**

The undersigned, WARREN HILL, LLC, a Delaware limited liability company ("**Assignor**"), for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, hereby assigns, endorses and directs to pay to the order of SFR EQUITIES, LLC, a Florida limited liability company ("**Assignee**"), all amounts due and owing to Assignor (excluding all interest in the amount of $316,438.36 that, as of the date hereof, has accrued but has not yet been paid to Assignor) pursuant to (i) that certain Revolving Note dated on or about December 31, 2011 (as amended from time to time, the "**$1,000,000.00 Note**") made by VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company ("**Borrower**"), in favor of Assignor and assigned to Assignee in the original principal amount of $1,000,000.00; and (ii) that certain Revolving Note dated on or about November 21, 2012 (as amended from time to time, the "**$2,000,000.00 Note**", and together with the $1,000,000.00 Note, collectively the "**Notes**"), in favor of Assignor and assigned to Assignee in the original principal amount of $2,000,000.00.

The foregoing endorsement shall have the same effect as though it were written directly on the Notes themselves.

Dated: as of January 1, 2016.

**WARREN HILL, LLC,**
**a Delaware limited liability company**

By: _____
Print Name: _____
Title: _____

D-1

EXHIBIT E

## GENERAL ASSIGNMENT

For valuable consideration, this 1st day of January, 2016, WARREN HILL, LLC, a Delaware limited liability company ("**Assignor**"), by this General Assignment does hereby transfer and assign to SFR EQUITIES, LLC, a Florida limited liability company, all of Assignor's right, title and interest as collateral assignee (excluding Assignor's right, title and interest to all interest in the amount of $316,438.36 that, as of the date hereof, has accrued but has not yet been paid to Assignor) under (i) that certain $1,000,000.00 Loan Agreement, as amended, by and between Assignor and VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company ("**Borrower**"), (ii) that certain $1,000,000.00 Revolving Note, as amended, by and between Assignor and Borrower, (iii) that certain $2,000,000.00 Loan Agreement, as amended, by and between Assignor and Borrower, (iv) that certain $2,000,000 Revolving Note, as amended, by and between Assignor and Borrower, and (v) that certain Subordination Agreement, as amended, between Assignor and NAI ARK FUNDING, LLC, a Delaware limited liability company, all with respect to (a) an original $1,000,000.00 loan to Borrower by Assignor; and (b) an original $2,000,000.00 loan to the Borrower by Assignor.

This Assignment shall act as delivery of said interest and shall be without any exception, limitation or reservation of any kind.

WARREN HILL, LLC,
a Delaware limited liability company

By: _____

Print Name: _Jason Cannon_

Title: _President_

EXHIBIT F

**IRREVOCABLE MEMBERSHIP INTEREST POWER**

FOR VALUE RECEIVED, the undersigned does hereby assign and transfer unto SFR EQUITIES, LLC, a Florida limited liability company ("**Purchaser**"), a 33.246% Membership Interest, representing one hundred percent (100%) of its membership interest of VENDOR ASSISTANCE PROGRAM, LLC, an Illinois limited liability company (the "**Company**"), standing in the name of the undersigned on the books of the Company. The undersigned does hereby irrevocably constitute and appoint Howard & Howard Attorneys PLLC to transfer said membership interest on the books of the Company with full power of substitution in the premises. This Irrevocable Membership Interest Power is given by the undersigned pursuant to that certain Membership Interest Purchase Agreement dated as of even date herewith among the undersigned, Purchaser and the other parties thereto.

Dated: January 1, 2016

WARREN HILL, LLC,
a Delaware limited liability company

By: _____
Print Name: _____
Title: _____

F-1

EXHIBIT G

## CERTIFICATE OF OFFICER OF VENDOR ASSISTANCE PROGRAM, LLC

The undersigned certifies that:

1.  The undersigned is the duly elected and acting Chief Executive Officer of Vendor Assistance Program, LLC, an Illinois limited liability company (the "Company"); and

2.  Set forth below is a full, accurate, and complete list of all of the members of the Company, together with the respective membership interest in the Company held by each member, as of January 1, 2016 and as of the date hereof:

| Member Name | Membership Interest |
|---|---|
| Howard & Howard Attorneys PLLC | 5.277% |
| Warren Hill, LLC | 33.246% |
| Solis Strategies, LLC | 5.277% |
| DAM Investments LLC | 7.916% |
| CHGO Real Estate Consulting Group, LLC | 27.440% |
| NAI Ark Funding LLC | 14.249% |
| Drew Delaney | 1.056% |
| The Eleven Corporation, Ltd. | 0.527% |
| Elliott Management Corp. | 4% |
| BlackRock Co-Investment Fund III, L.P. – Z US Taxable Series and BlackRock Co-Investment Fund III, L.P. – US Taxable Series | 1% |

; and

3.  No person or entity, other than the members listed above, holds any membership, or ownership of equity, in the Company.

IN WITNESS WHEREOF, I have hereunto subscribed my name as of this 17th day of February, 2016.

David Reape
Chief Executive Officer

G-1