```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WARREN HILL, LLC               :        CIVIL ACTION
                               :
     v.                        :
                               :
SFR EQUITIES, LLC              :        NO. 18-1228
```

MEMORANDUM

Bartle, J.                                        August 11, 2020

Plaintiff Warren Hill, LLC ("Warren Hill") brought this diversity action against defendant SFR Equities, LLC ("SFR") for breaching an agreement to sell to Warren Hill its membership interest in an Illinois limited liability company, Vendor Assistance Program, LLC ("VAP"). On December 3, 2019, the Court granted summary judgment on the issue of damages in favor of Warren Hill and entered judgement against SFR in the amount of $6.2 million. SFR filed a notice of appeal on January 2, 2020 but has not provided a bond to stay enforcement of the judgment. See Fed. R. Civ. P. 62(a).

Warren Hill is now seeking to collect on the judgment. In this connection, Warren Hill has pending a motion for sanctions against SFR and its lead manager, Gene Harris, who is responsible for SFR's day to day operation. Warren Hill relies on the Court's inherent authority to impose sanctions for bad faith conduct.[1]

---

1. Warren Hill appears to move also under Rule 37 of the Federal Rules of Civil Procedure. As noted below, Warren Hill seeks sanctions against SFR for allegedly transferring assets in

I

Federal courts have inherent power to sanction a party when it has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or where "fraud has been practiced upon it, or that the very temple of justice has been defiled." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). As stated more recently in Goodyear Tire & Rubber Co. v. Haeger: "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases . . . includ[ing] the ability to fashion an appropriate sanction for conduct which abuses the judicial process." 137 S. Ct. 1178, 1186 (2017) (citations and quotations omitted). The Court has inherent authority to exercise its discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S at 45-46. This includes the less severe sanction of an assessment of attorney's fees. Id.

The power to sanction fraudulent conduct is not limited to the parties to an action. See Chambers, 501 U.S. at 40 n. 5. The power to impose sanctions for the violation of an

---

contravention of the representations of its counsel to this Court as well as a stipulated restraining order issued by it. Rule 37 permits the Court to sanction parties for failure to make proper disclosures or cooperate in discovery. See Fed. R. Civ. P. 37. Warren Hill's motion is not properly brought under Rule 37.

order extends to nonparties.  Id.; see also Marshak v. Treadwell, 595 F.3d 478, 486 (3d Cir. 2009); Roe v. Operation Rescue, 54 F.3d 133, 139 (3d Cir. 1995); In re Intel Corp. Microprocessor Antitrust Litig., 562 F. Supp. 2d 606, 616 (D. Del. 2008).  The party moving for sanctions has the burden to demonstrate sanctionable conduct by clear and convincing evidence.  Marshak, 595 F.3d at 486; see also Gethers v. PNC Bank, Civil Action No. 15-1559, 2019 WL 2211117, at *7 (W.D. Pa. May 22, 2019).

II

On December 16, 2019, 13 days after the Court entered a $6.2 million judgment against SFR, Warren Hill filed two emergency motions.  The first motion sought to lift the 30-day automatic stay of execution of the Court's December 3, 2019 judgment imposed by Rule 62(a) of the Federal Rules of Civil Procedure and to secure a charging lien against SFR's bank accounts under Pennsylvania law.  The second motion sought a temporary restraining order enjoining SFR from dissipating assets "other than in the ordinary course of business."  In Warren Hill's briefs in support of the two emergency motions, its counsel represented to the Court that counsel for SFR informed him that SFR would not voluntarily pay the judgment and that Warren Hill would have to chase the money if it ever wanted

to collect. The Court ordered the parties to attend a conference in chambers the day Warren Hill filed the motions.

There is a dispute between counsel as to what was said at the December 16, 2019 conference. The Court finds that at the conference counsel for SFR told the Court that SFR intended to appeal the judgment but did not state at least on that occasion that Warren Hill would have to chase the money to satisfy the judgment. At the time of the conference, counsel for SFR had not spoken to his client about Warren Hill's emergency motions and did not know whether SFR intended to post a bond for its appeal. Arguing against the temporary restraining order and charging lien, SFR's counsel represented to the Court that SFR had not and would not dissipate its assets or transfer assets outside the ordinary course of business.[2]

On December 20, 2019, based on SFR's counsel's representation, the Court denied Warren Hill's emergency motions for a temporary order restraining SFR's transfer of assets and for a charging lien to the extent that Warren Hill sought to

---

2. The conference was not recorded. After receiving Warren Hill's pending motion for sanctions, the Court issued an order which required counsel for SFR to file of record a declaration of the statements and representations he made to the Court concerning SFR at the December 16, 2019 conference. SFR's counsel complied with the order on June 29, 2020. The facts stated herein accord with the Court's recollection. See Fed. R. App. P. 10(c).

-4-

lift the Rule 62 stay. The Court scheduled a hearing on the motions for January 9, 2020.

On January 8, 2020, the Court signed an order stipulated by the parties. It continued the hearing and enjoined SFR and several of its affiliates, until final resolution of Warren Hill's emergency motions, from "making <u>any</u> assignments, transfers, or distributions of their assets, and from otherwise disposing of any assets." (emphasis added). After the hearing, held on January 16, 2020, the Court issued an order "via consent of the parties" which, among other things, enjoined SFR from "disguising, concealing, transferring, conveying, assigning, spending, pledging, encumbering, distributing, dispersing, dissipating, or otherwise disposing of <u>any</u> assets." (emphasis added).

In March 2020, in connection with post-judgment discovery, SFR produced to Warren Hill its Bank of America account records for December 2019 and January 2020. The records revealed eight transactions, totaling $340,647.78, which Warren Hill contends occurred in contravention of SFR's counsel's representation to this Court on December 16, 2019 and/or the January 8, 2020 stipulated order.[3] Warren Hill identifies the

---

3. It is undisputed that all eight transactions occurred prior to entry of the January 16, 2020 stipulated order. That order is not at issue.

following transactions which reduced SFR's Bank of America account to nearly zero:

> On December 19, 2019, just three days after SFR's counsel represented that SFR would not dispose of any assets, SFR transferred $179,038.00 out of its bank account and sent it to the bank account of its parent company, Neptune Investors, LLC ("Neptune").
>
> On December 23, 2019, SFR sent a check to its affiliate AHG Group Holdings, LLC for $102.00.
>
> On December 30, 2019, SFR sent a check to its attorneys for $15,285.00.[4]
>
> On December 31, 2019, SFR transferred $34,715.00 to its attorneys.
>
> On January 3, 2020, SFR transferred $100,000.00 to its attorneys, as a "retainer" for future work.
>
> On January 6, 2020, SFR sent a check to an unknown recipient for $3,649.05.
>
> On January 10, 2020, SFR sent a check to an unknown recipient for $4,858.73.
>
> On January 15, 2020, SFR transferred $3,000 to its attorneys.

On March 18, 2020, shortly after receiving SFR's bank records, Warren Hill filed the instant motion for sanctions against SFR and its lead manager Gene Harris.[5] As noted above,

---

4. The record Warren Hill submits with its motion shows this check was either dated or cleared on December 19, 2019.

5. Warren Hill cites to the declaration of Gene Harris in which he states he manages the operations of SFR, as well as its books and financial records. His conduct as it related to SFR

Warren Hill requests the Court impose sanctions under its inherent authority to address what it contends is the bad faith conduct of SFR. Warren Hill seeks an order which jointly and severally obligates SFR and Gene Harris to pay to it the $340,647.78 that SFR transferred out of its Bank of America bank account after December 16, 2019, as well as attorney fees and costs linked to the motion. Warren Hill further seeks per diem fines should these amounts not be paid within ten days.

It was not until this Court's January 8, 2020 order that SFR was under the obligation to refrain from transferring assets altogether. Prior to that date, SFR was free to transfer assets in the ordinary course of its business. Therefore, the inquiries before this Court are whether any of the six transactions which occurred between the representation of SFR's counsel on December 16, 2019 and the issuance of the Court's January 8, 2020 order not to transfer <u>any</u> assets were outside the ordinary course of SFR's business and whether the two transactions made after entry of the order violated it.[6]

---

may be sanctioned by this Court. <u>See</u> <u>Chambers</u>, 501 U.S. at 40 n. 5.

6.  In a declaration submitted in opposition to Warren Hill's motion for sanctions, Gene Harris states "I do not believe that any payment or transfer of assets made by SFR at any time was without reasonably equivalent value or otherwise outside the ordinary course of SFR's business." The Court disregards these statements as vague and conclusory. <u>See</u> <u>Lowe v. Phila. Newspapers, Inc.</u>, 594 F. Supp. 123, 126 (E.D. Pa. 1984).

III

Warren Hill argues that the check for $15,285 and the $34,715 and $100,000 transfers that SFR sent to its counsel on December 19, 2019, December 31, 2019, and January 3, 2020 were outside of the ordinary course of SFR's business.[7]

The Court has reviewed the record Warren Hill submitted in support of its motion as well as SFR's response. SFR issued checks or sent transfers to its counsel on 11 occasions in 2019. These transactions totaled over $1.4 million exclusive of the December 19 and December 31 payments for $15,285 and $34,715. SFR represents, and its counsel declares, that the $100,000 payment SFR made on January 3, 2020 was "to support the fees incurred prosecuting the appeal and in defending Warren Hill's collection efforts." On January 3, 2020, SFR had filed its notice of appeal and clearly had ahead of it substantial legal fees in connection with the appeal.

Warren Hill has not established by clear and convincing evidence that SFR's payments to its counsel occurred outside the ordinary course of its business as the frequency and

---

7. Warren Hill requests in its motion for sanctions for this Court to order SFR to produce its retention agreements "[t]o the extent the Court has any doubt about these divergent payment arrangements." It is not the role of this Court to seek the production of documents on its own accord. If Warren Hill thought these documents were pertinent to its motion for sanctions, it should have sought them and made them a part of the record presently before the Court.

size of these payments do not appear to deviate in any material way from the payment history between SFR and its counsel.  See In re First Jersey Sec., Inc., 180 F.3d 504, 513 (3d Cir. 1999).

IV

Warren Hill contends in its motion for sanctions that the December 23, 2019 check SFR wrote to its affiliate AHG Group Holdings, LLC for $102.00, the January 6, 2020 and January 10, 2020 checks SFR wrote to unknown recipients for $3,649.05 and $4,858.73, and the $3,000 SFR transferred to its attorneys on January 15, 2020 were all part of the alleged scheme of SFR and Gene Harris to dissipate assets.

SFR states in its response that the January 10, 2020 check for $4,858.73 was issued prior to the Court's January 8, 2020 order not to transfer any assets and cleared on January 9, 2020.  SFR also represents that the $3,000 transferred to its counsel on January 15, 2020 was inadvertent and was returned to SFR as of April 1, 2020.  Warren Hill does not provide a reason for its conclusion that the December 23, 2019 and January 6, 2020 transactions occurred outside of the ordinary course of SFR's business.  Warren Hill also fails to respond to SFR's explanation of the January 10, 2020 and January 15, 2020 transactions in its reply.

Warren Hill has not established by clear and convincing evidence that any of these transactions was in

contravention of SFR's representation to the Court on December 16, 2019, violated this Court's January 8, 2020 order, or warrants sanctions.

V

Finally, Warren Hill argues that SFR's transfer of an administrative fee of $179,038.00 to its parent company, Neptune Investors, LLC ("Neptune") just three days after the Court's December 16, 2019 conference was outside of the ordinary course of SFR's business.  In support of this conclusion, Warren Hill notes that SFR's payment of administrative fees to its parent company stopped at the end of 2018.  Warren Hill cites to SFR's general ledger of administrative fees for the period of January 1, 2016 to January 31, 2020.

The general ledger Warren Hill references shows that from March to August 2018 SFR transferred $540,000 to Neptune in six monthly $90,000 payments labelled "administrative fee." SFR's payment of administrative fees to Neptune thereafter stopped until December 19, 2019 when it transferred the $179,038.00 at issue here.  Warren Hill also cites to an SFR check registrar for 2018.  The check registrar not only shows payment of the administrative fees but also identifies six other payments SFR made to Neptune in 2018 for a total of $6.2 million.

This is the only record the Court has before it with respect to Warren Hill's position that the $179,038.00 was transferred outside the ordinary course of SFR's business. Warren Hill did not depose Gene Harris who is responsible for the day to day operations and financial books and records of SFR or seek further discovery on this issue.  While SFR's December 19, 2019 payment of the $179,038.00 administrative fee to Neptune is troubling on the surface, Warren Hill has failed to meet its burden for sanctions by clear and convincing evidence.