```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WARREN HILL, LLC.                 :         CIVIL ACTION
                                  :
         v.                       :
                                  :
SFR EQUITIES, LLC                 :         NO. 18-1228
```

MEMORANDUM

Bartle, J.                                        August 25, 2020

Chicago Public Media, Inc. ("Chicago Public Media"), a non-profit media company which operates NPR media station WBEZ, has moved to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure for the limited purpose of obtaining copies of all judicial records which are currently under seal.  Learning of Chicago Public Media's pending motion, Vendor Assistance Program LLC ("VAP"), Bluestone Capital Markets LLC ("BCM"), Bluestone Finance LLC ("BSF") and Bryan Hynes ("VAP intervenors") also move to intervene but to oppose the unsealing of the judicial records.  Plaintiff Warren Hill, LLC ("Warren Hill") and defendant SFR Equities, Inc. ("SFR") support the motion of the VAP intervenors and oppose the motion of Chicago Public Media.[1]

---

1. Warren Hill and SFR have in reality stood on the sidelines in what is a dispute between Chicago Public Media and the VAP intervenors.

Warren Hill sued SFR in this diversity action for breach of contract and for an accounting under Illinois law. Plaintiff's claim arose out of the sale to SFR of its interest in VAP and the failure of SFR to pay what was due pursuant to what was titled the Membership Interest Purchase Agreement ("MIPA").

During the course of this action, many of the documents, including deposition testimony, were filed under seal pursuant to a Confidentiality Order. On December 3, 2019, this court entered summary judgment in favor of Warren Hill in the amount of $6,226,688.19. SFR thereafter filed a notice of appeal, and the matter is now pending in the Court of Appeals. SFR has not filed a bond or security to stay the judgment under Rule 8(a)(1)(B) of the Federal Rules of Appellate Procedure. Consequently, Warren Hill is proceeding with its efforts to execute on the judgment. See also Warren Hill LLC v. Neptune Investors LLC, et al., Civil Action No. 20-0452 (E.D. Pa.).

VAP, Warren Hill's interest in which it sold to SFR, is in an unusual business. As a result of the fact that the state of Illinois cannot or does not pay its bills on time, the state has established what is known as the Vendor Payment Program ("VPP"). Under this program, it approved VAP as a Qualified Purchaser to purchase or take an assignment of the outstanding accounts receivable of vendors that provide the

state with goods and services. A Qualified Purchaser promptly pays the vendors 90% of the face value of the accounts receivable. The Qualified Purchaser makes its money when the state at some later point pays to it directly or indirectly the full value of the accounts receivable along with a substantial interest penalty. The remaining 10% due the vendors is then remitted.

The MIPA did not simply provide for a sum certain to be paid to Warren Hill as a result of the sale of its interest in VAP. In addition, the MIPA required payment to Warren Hill of 50% of VAP's net income for three ensuing years under a complicated formula set forth in the document. The court's rulings in this action involved not only the interpretation of the MIPA but also a review of the finances and financial arrangements of VAP. The court needed to understand the structure of VAP and its related entities and the interplay of their complex operations.

SFR and the VAP intervenors are all closely intertwined. SFR appoints one of the six managers of VAP. Bryan Hynes is a founder of VAP and one of its managers. VAP created BCM, another intervenor, as a vehicle allegedly to comply with new federal risk retention regulations. In 2017, VAP created BSF in Puerto Rico to conduct business there. It has an operating agreement with BCM, VAP, BSF, and BCM which

have a series of service agreements among themselves.  VAP has also transferred various trust certificates to BCM.  Finally, significant sums of money have been transferred from SFR to some of the VAP intervenors and vice versa.

The law in this circuit is well established that a court may grant a motion for permissive intervention under Rule 24(b) solely to allow the intervenor to challenge a protective or confidentiality order so as to obtain access to court documents under seal.  The entity seeking intervention for this limited purpose does not need to establish an independent basis for subject matter jurisdiction.  <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 777-80 (3d Cir. 1994).  Said motion is timely even if it is filed after an action is settled.  <u>Id.</u>  We see no reason why the same analysis should not also apply where a third party seeks to prevent disclosure.

Chicago Public Media argues that it is entitled to the sealed documents in this action under the common law right of public access to judicial records — a right that antedates the Constitution.  It includes the right to inspect and copy such records.  <u>In Re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001); <u>Leucadia, Inc. v. Applied Extrusion Techs., Inc.</u>, 998 F.2d 157, 161 (3d Cir. 1993).

A judicial record is a document filed with the court or "otherwise somehow incorporated or integrated into a district

-4-

court's adjudicatory proceedings." In Re Cendant, 260 F.3d at 192. A judicial record includes "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." Summary judgment motions and the exhibits related thereto of course are judicial records.[2] Leucadia, Inc., 998 F.2d at 164.

The common law right of public access to judicial records carries with it a strong presumption in its favor, although the right of public access is not absolute. In re Avandia Mktg., 924 F.3d at 672. The burden is on the opposing party or parties "to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." Leucadia, Inc., 998 F.2d at 165; In re Avandia Mktg., 924 F.3d at 672. Those seeking to overcome the presumption must "show that the material is the kind of information that courts will protect and that the disclosure will work a clearly defined and serious injury to the party seeking closure." Id. (internal quotations omitted). While the existence of trade secrets and confidential business information may be a basis to deny public access, embarrassment to a party does not suffice. In re Avandia Mktg., 924 F.3d at 679; Leucadia, Inc., 998 F.2d at 166.

---

2. Protection of discovery materials is subject to a different analysis. See In Re Avandia Mktg., 924 F.3d 662, 670-72 (3d Cir. 2019). Documents of this nature are not involved here.

If the court rules in favor of those seeking to maintain secrecy, it must articulate "the compelling, countervailing interests to be protected," "make specific findings on the record concerning the effects of disclosure," and "provide an opportunity for interested third parties to be heard." In re Avandia Mktg., 924 F.3d at 678. Before deciding that the presumption has been surmounted, the court must make a document-by-document review. Id.

Chicago Public Media seeks access to documents identified by docket entry numbers 38, 43, 44, 45, 46, 47, 52, 57, 66, 73, 74, 76, 78, 79, 80, 81, 83, and 84. These documents have all been filed under seal pursuant to a Confidentiality Stipulation between the parties and approved as an order by the court. Under the order, "Confidential Information shall be limited to information that the source reasonably and in good faith believes is of a proprietary or commercially sensitive nature, or should otherwise be subject to confidential information." (internal quotations omitted). The order further provides that "[t]he court reserves the right to rescind, modify or alter the terms of this Stipulation at any time upon the motion of any party or upon its own motion."

The documents sought by Chicago Public Media consist of motions for summary judgment or for reconsideration, together with supporting and opposing briefs as well as related exhibits.

All of the court's orders and memoranda disposing of the motions are available to the public on the docket. Thus some of what is contained in the sealed documents has already been unsealed.

The VAP intervenors, as entities or persons who have an interest in SFR, provided discovery in this litigation. They maintain at least some of the documents supplied, as well as deposition testimony, contain "Client Marketing Information and CRM [Customer Resource Management] . . . Information Concerning VAP Members or Employee Bonus and Compensation Structure," their "Rationale for Their Business Restructuring and Compliance with Program Terms and Risk Retention Laws," and their "Interactions and Agreements with their Lenders and Bankers." The VAP intervenors argue that this information is "highly confidential, competitively sensitive, and amount[s] to business secrets that are protected from disclosure." They further contend that there is "no countervailing public interest." Finally, they assert that they only provided the information in issue because of reliance on the Confidentiality Stipulation.

At the request of the VAP intervenors, and with the concurrence of all the parties, the court directed SFR to provide to the VAP intervenors for review copies of all documents under seal which they supplied as well as copies of deposition transcripts of their employees under seal. After

review, they submitted a supplemental brief detailing their opposition to the unsealing of each of these records.

The VAP intervenors rely heavily on our Court of Appeals decision in Leap Sys., Inc. v. Moneytrax, Inc., 638 F.3d 216 (3d Cir. 2011) to prevent disclosure.  This case is inapposite.  There, the parties were involved in a contentious business dispute involving misappropriation of proprietary and confidential information and breach of contract.  They ultimately entered into a settlement agreement which counsel placed on the record in the courtroom while the district judge presided.  The judge placed the settlement agreement under seal.  Thereafter, a third party moved to intervene and unseal.  The Court of Appeals affirmed the district court's refusal to do so.  It emphasized that the judge had assured the parties of confidentiality and had specifically found that the parties would not have entered into the settlement agreement absent the judge's assurance in this regard.  Under these circumstances, the Court of Appeals held that this assurance outweighed the common law right of access.  The Court added that the case did not involve "matters of legitimate public concern" as the parties were private entities whose dispute had "no impact on the safety or health of the community."  Id. at 222.

In this case, the court did not assure any party of confidentiality.  On the contrary, the parties and non-parties

were on notice from the outset that the court reserved "the right to rescind, modify, or alter the terms of the [Confidentiality] Stipulation any time upon the motion of any party or upon its own motion." In addition, this case is imbued with public interest. While it is true that VAP enters into private agreements with the vendors of the state of Illinois, it does so under a statutory scheme for the payment of the state's debts and under the watchful eye of the state and its residents as a result of the various public filing requirements. This contrasts sharply with the purely private dispute involved in Leap.

The records in issue do reveal much about the governance, structure, contractual arrangements, finances, and dealings with clients, lenders, and banks of the VAP intervenors. While it is understandable that they would want to keep confidential as much of this information as possible, the standard to maintain confidentiality is stringent.

After making a document-by-document review, the court finds that the VAP intervenors have not overcome the presumption of public accessibility to judicial records and have not shown that "disclosure will work a clearly defined and serious injury" to them. In re Avandia Mktg., 924 F.3d at 672. None of the information rises to the level of highly sensitive business secrets entitled to protection.

The documents at issue explain the workings of the VPP established by the state of Illinois as well as the workings of VAP as a Qualified Purchaser which buys the state's accounts receivable and later receives vast sums of money including interest penalties from the state. VAP is owned in part by SFR and is clearly intertwined with the other VAP intervenors as it conducts its business with the state. Significant money and things of value have moved from some of these entities to other of these entities. The sealed documents were necessary for the court to be able to understand and determine what SFR owed to Warren Hill, that is, to determine the amount that constituted 50% of VAP's net income for the three-year period under the MIPA. The public clearly has a valid interest in the records at issue. The VAP intervenors' interest in secrecy is clearly subordinate.

Accordingly, the motion of Chicago Public Media to intervene and to obtain access to the judicial records in issue will be granted. The motion of the VAP intervenors to intervene will be granted but the motion to the extent that it seeks to block disclosure of judicial records will be denied. The Clerk will be directed to unseal the records at issue.